**LEECH TISHMAN ROBINSON BROG, PLLC**      Hearing Date: January 18, 2022 at 10am
875 Third Avenue, 9th Floor                                   Objection Deadline: January 11, 2022 at 10 am
New York, New York 10022
Tel. No.: (212) 603-6300
**Fred B. Ringel, Esq.**
**Steven B. Eichel, Esq.**
*Attorneys for 960 Franklin LLC and Daryl Hagler*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
z--------------------------------------------------X

In re:                                                          Chapter 11
                                                                 Case No. 22-42760-jmm
**960 FRANKLIN OWNER LLC,**

                                   Debtor.
--------------------------------------------------X

### MOTION OF 960 FRANKLIN LLC AND DARYL HAGLER FOR ENTRY OF AN ORDER (I) DISMISSING CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, (II) EITHER (A) DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY TO AGREEMENT OF SALE OF MEMBERSHIP INTERESTS OR (B) VACATING STAY WITH <u>RESPECT TO AGREEMENT OF SALE OF MEMBERSHIP INTERESTS</u>

960 Franklin LLC ("960 Franklin") and Daryl Hagler ("Hagler" together with 960 Franklin, the "Movants") respectfully submit this motion (the "Motion") for entry of an order (I) dismissing the above-captioned Chapter 11 case of 960 Franklin Owner LLC (the "Debtor") pursuant to 11 U.S.C. §1112(b), or in the alternative (II) either (A) determining that the automatic stay provisions of 11 U.S.C. §362 do not apply to the Agreement of Sale of Membership Interests ("Agreement") between Hagler and the Debtor, or (B) vacating the automatic stay as to Hagler to permit him to, *inter alia*, terminate the Agreement.  In support of the Motion, Hagler and 960 Franklin respectfully

represent as follows:

## PRELIMINARY STATEMENT

1.     This Chapter 11 case should be dismissed as a bad faith filing because it constitutes an abuse of the bankruptcy process. The Debtor did not file this case in a legitimate effort to overcome financial distress and reorganize. Rather, the Debtor filed this case solely as a blatant attempt to extend its time to close under a contract for the purchase of Hagler's Membership Interests (defined below) in 960 Franklin, which owns the Premises (defined below) at issue after the time of the essence deadline had already expired before the case was filed.

2.     The Debtor is merely a shell entity. It has no operations, no employees, no income, no assets, and initially listed three purported unsecured creditors in the aggregate amount of $124,000, whose claims all relate to the failed membership interest acquisition.[1] There is no existing business to rehabilitate or reorganize.  The Debtor was not the subject of a pending or threatened lawsuit when this case was filed. In short, this case does not belong in bankruptcy. To permit the Debtor to use this Court solely to escape its pre-petition failure to comply with a time of the essence closing deadline would condone a serious misuse of the bankruptcy system.

---

[1]     On November 18, 2022, the Debtor filed Schedules of Assets and Liabilities without schedule attaching Schedule E/F, a copy of which was filed with the initial bankruptcy petition.

2

3.      Even if the Court were to permit the Chapter 11 case to proceed, the automatic stay provisions of section 362 of the Bankruptcy Code do not apply to the Agreement. The Debtor's ability to enforce its rights under the Agreement terminated under New York law before this case was commenced because the Debtor failed to close before the time of the essence deadline under the Agreement (as modified by emails between counsel on November 1, 2022). Accordingly, the Agreement and any rights flowing from that Agreement are not property of the Debtor's estate.  Furthermore, the filing of the Debtor's Chapter 11 case cannot resuscitate the Debtor's right to close under the Agreement which had been automatically rescinded prior to the Petition Date.

4.      Lastly, should the Court determine that the Agreement is subject to the automatic stay, the stay should be vacated for cause to permit Hagler to exercise all of his rights and remedies with respect to the Agreement (including terminating it), because under well-established New York state and bankruptcy caselaw, the Debtor's failure to close by the time of the essence closing deadline is a material, incurable non- monetary default.  Furthermore, the automatic stay should be vacated as to Hagler because the Debtor cannot avail itself of any extension of time under section 108(b) of the Bankruptcy Code. Having filed the chapter 11 case *after* the expiration of the time of the essence deadline and the automatic, self-executing rescission of the Membership Acquisition Agreement, there is no existing period in which to extend to close under the statute.

## BACKGROUND

5.    The Debtor is a New York limited liability company, which was recently formed on July 11, 2022.   *See* Agreement at p. 1, attached as Exhibit A to the Declaration of Daryl Hagler (the "Hagler Decl.") filed contemporaneously herewith in support to the Motion.

6.    Upon information and belief, the Debtor does not have any business operations, income, employees, assets or liabilities, and has no secured creditors, and has only a few purported creditors (other than Hagler).

7.    On July 11, 2022, Hagler formed 960 Franklin as a single purpose entity and was the sole owner of 100% of the issued and outstanding membership interests (the "Membership Interests") in 960 Franklin.  Hagler Decl. at ¶5.

8.    Subsequently, 960 Franklin entered into two contracts, as amended, for the purchase of the following two properties:

A.  **Premises 1 - Block 1192, Lots 41 and 46:**  960 Franklin executed a contract of sale dated July 19, 2022, as amended by First Amended to Contract of Sale on or about August 9, 2022 (as amended, "Contract 1") with HPG Associates, Inc. ("Underlying Seller 1"), whereby 960 Franklin had the right to purchase the premises designated as Block 1192, Lots 41 and 46, in Kings County, New York ("Premises 1"); and

B.  **Premises 2 - Block 1192, Lot 40:**  960 Franklin executed a contract of sale dated July 19, 2022, as amended by First Amendment to Contract of Sale dated on or about August 9, 2022 (as amended, Contract 2", together with Contract 1, collectively referred to herein as the "Contracts") with Brooklyn 122A Montgomery LLC ("Underlying Seller 2", together with Underlying Seller 1, collectively referred to herein as the "Underlying Sellers"), whereby 960 Franklin had the right to purchase the premises designated as block 1192, Lot 40, in Kings County, New York ("Premises 2"; together with Premises 1, collectively

referred to herein as the "Premises").  Hagler Decl. at ¶6.

9.         On August 10, 2022, Hagler, as assignor ("Assignor")[2], and the

Debtor, as assignee ("Assignee"), entered into the Agreement pursuant to which

Assignee was to acquire from Assignor all his right, title and interest in the

Membership Interests in 960 Franklin on the terms set forth in the Agreement.

The parties also entered into an Assignment and Assumption of Membership

Interest Agreement ("51% Assignment Agreement")[3], pursuant to which Hagler (as

Assignor), agreed to convey to the Debtor, as Assignee, 51% of the Membership

Interests in 960 Franklin on the Effective Date of the Agreement However, as

plainly and expressly set forth in Section 3(B) of the Agreement, the 51%

Assignment Agreement <u>was subject to Section 3(B)</u> -- as was subsequently amended

by agreement between counsel for the Assignor and Assignee. Section 3(B) provided,

in relevant part that "**as a material inducement for Assignor to enter into this**

**Agreement, Assignee shall wire $10,000,000.00 to Escrowee on or before November**

**1, 2022, to be held in escrow and applied toward the balance of the Purchase Price**

**at Closing. . . In the event Assignee fails or refuses to wire such additional**

**$10,000,000.00 to Escrowee on or before November 1, 2022, Assignee shall be**

**deemed to have defaulted, Assignor's Reversionary Right shall be deemed exercised,**

**Assignee shall have no further right in the Membership Interests, any prior**

**assignment of the Membership Interests shall be deemed null and void. . ."**

Agreement at ¶3(B)(emphasis added). When the Debtor did not wire the funds on

---

[2] The Agreement refers to Hagler as Assignor and the Debtor 960 Franklin Owner LLC as Assignee.
[3] A copy of the 51% Assignment Agreement is attached as Exhibit B to the Hagler Decl.

November 1, 2022, counsel for the Assignor and the Debtor exchanged a series of email which unequivocally established new contractual deadline ("November 1st Extension Agreement) for the $10 million payment, extending the time for performance from a date certain, November 1, 2022, to a **time certain**, 11:00 a.m. on November 2, 2022, with 11:00 a.m. payments being a time of the essence ("TOE") obligation of the Debtor. Hagler Decl.at ¶¶7,8; Declaration of Anthony Carone ("Carone Decl.") at ¶3.

10.      Sections 3(B) and 8 of the Agreement, as modified by the November 1st Extension Agreement between counsel,  are the provisions of the Agreement that are dispositive for this Motion. When the Debtor failed to make the payment by sending an email on November 2, 2022 stating that the closing would not take place,  the Agreement between the Assignor and the Debtor was at an end at 11:01 a.m.by virtue of the Debtor's immediate default in failing to make the payment, the automatic, self-executing exercise of the Reversionary Right transferring the 51% of 960 Franklin back to the Assignor and the automatic voiding of the Debtor's interest.   Carone Decl. at ¶4.

11.      Specifically, Section 3 of this Agreement provides, in relevant part, as follows:

(A)    ***

(B)    . . .If the closing of title to Purchaser fails to occur at the Closing as a result of Assignee's default in the performance of its obligations under this Assignment Agreement, and provided Underlying Sellers are not in default of the Contracts, and further provided Assignor is not in default of this Agreement, then Assignor may at is sole option elect to rescind ("Reversionary Right") the 51% Assignment of Membership Interests and

6

the 49% Assignment of Membership and retain the Down Payment (as hereinafter defined) as liquidated damages. **Notwithstanding anything to the contrary set forth in this Assignment Agreement, and as a material inducement for Assignor to enter into this Agreement, Assignee shall wire $10,000,000.00 to Escrowee on or before November 1, 2022, to be held in escrow and applied toward the balance of the Purchase Price at Closing. In the event Assignee fails or refuses to wire such additional $10,000,000.00 to Escrowee[4] on or before November 1, 2022, Assignee shall be deemed to have defaulted, Assignor's Reversionary Right shall be deemed Assignor shall be entitled to return the Down Payment as liquidated damages and Assignor shall be permitted to close with the Underlying Sellers.** (Emphasis added)

Carone Decl. at ¶5.

12.    Section 3(B) of the Agreement is self-executing, with the reversionary right deemed exercised upon the Assignee's failure to tender the $10 million payment to Escrowee by 11:00 a.m. on November 2, 2022, the extended time of the essence transfer deadline.  Carone Decl. at ¶6.

13.    Section 8 of the Agreement  also contained a second time of the essence closing deadline, relating to the closing of the Underlying Contracts. It provides, in relevant part, as follows:

> The Closing shall be held on November 2, 2022, which is the same day that the closing is held with the Underlying Sellers pursuant to the Contracts. . .. **TIME IS OF THE ESSENCE AS TO ASSIGNEE'S OBLIGATION TO CLOSE UNDER THE CONTRACTS AND THIS ASSIGNMENT AGREEMENT.**

Carone Decl. at ¶7.

14.    Thus, under the Agreement, if Assignee failed to wire the additional $10 million to Escrowee on or before November 1, 2022 (which it did not), Assignee shall be deemed to have defaulted, and Assignor's self-executing reversionary right in the Membership Interests shall be deemed executed and

---

[4]Under the Agreement, the Escrowee is Abrams Festerman LLP.  See Agreement at §9.

Assignee shall have no further rights in the Membership Interests, the prior assignment (i.e., the "51% Assignment Agreement") shall be null and void, and 960 Franklin shall be entitled to retain the $4.5 million down payment as liquidated damages, and shall be permitted to close with the Underlying Sellers.  See Agreement §§ 3(B), 5 and 6.  Hagler Decl. at ¶9.

15.     On November 1, 2022, at 4:27 p.m., David Feit counsel to Assignee, sent an email to Anthony Carone, counsel to Hagler and 960 Franklin, that he was "advised the deadline to wire the $10 million <u>has been extended to 11:00 a.m. on November 2</u>.  Please confirm the contract is thereby amended and send me an email and contract amendment to that effect."  Carone Decl. at ¶8, Exhibit A (emphasis added).

16.     In response to another email by David Feit on November 1, 2022, at 4:36 pm. requesting confirmation that his email is binding on both the assignor and assignee without any need for a written assignment agreement executed by the assignor and assignee, Mr. Carone responded by email at 4:37 p.m.:

> I can confirm that my client authorized the extension of time until tomorrow at 11:00 a.m. TOE for receipt of the wire and no written amendment is needed.

Carone Decl. at ¶9, Exhibit A.

17.     By these emails, the TOE deadline for the payment of the $10 million, which was required to close on the sale of the Membership Interests, became November 2, 2022, at 11:00 a.m.  The Assignee neither paid the $10 million before the 11:00 a.m. TOE deadline nor at any time thereafter .  Carone Decl. at

¶10.

18.      On November 2, 2022, Eli Lefkowitz, Assignee's other counsel, sent

an email at 2:17 p.m., more than three hours after the TOE deadline expired, which

email provided, in pertinent part, as follows:

> All – I have just been advised that this is not closing today.  I
> don't have a further update at this time.

Carone Decl, at ¶11, Exhibit B.

19.      Not only did the Assignee fail to pay $10 million by 11:00 a.m. on

November 2, 2022, Mr. Lefkowitz's email confirmed that Assignee breached the

Agreement. Carone Decl. at ¶12.

20.      At 3:44 p.m. on the same day, Mr. Carone, counsel for Assignee,

sent the following email to Mr. David Feit:

> David – as you know, today is a TOE closing date.  The wire for
> the 10 mil additional deposit has never been received, and the
> balance of the purchase price has never been received.  As a
> result of these defaults and pursuant to paragraph 3(B) of the
> agreement of sale of membership interests, the revisionary [sic]
> right has been deemed exercised, Assignee has no further right
> in the Membership Interests, the prior assignment of the
> membership interests is null, and void and Assignor is
> permitted to close with the underlying Sellers.  This letter is
> without prejudice to, and my client reserves all rights and
> remedies.

Carone Decl. at ¶13, Exhibit A.

21.      A similar letter confirming that Assignee failed to send the $10 million

was sent the same day by Mr. Carone to Mr. Feit, which letter provides, in

pertinent part, as follows:

> The wire for the Ten Million Dollar ($10,000,000.00) additional

> deposit has never been received, and the balance of the
> purchase price has never been received.
>
> As a result of these defaults, and pursuant to paragraph 3(B) of
> the agreement of sale of membership interests, the revisionary
> [sic] right by Assignor has been deemed exercised, Assignee
> has no further right in the Membership Interests, the prior
> assignments of the membership interests are null and void,
> and Assignor is permitted to close with the underlying Sellers.

Carone Decl. at ¶14, Exhibit C.

22.    Hagler was ready, willing and able to close the following
morning, November 2, 2022, at 11:00 a.m., however, the Debtor failed to
tender the $10 million payment and close on the Agreement as required.
Hagler Decl. at ¶11.

23.    At approximately 4:28 p.m. on November 2, 2022 ("Petition
Date"), several hours after the 11:00 a.m. TOE deadline  had expired and
the Debtor's reversionary right had been executed, the Debtors commenced
its Chapter 11 case.  Carone Decl. at ¶16, Exhibit D.

24.    On November 18, 2022, Debtor filed an application to retain
Backenroth Frankel & Krinsky, LLP As Debtor's General Bankruptcy Counsel
Nunc pro Tunc to November 2, 2022.

25.    On November 18, 2022, the Debtor also filed Schedules of Assets
and Liabilities and Statement of Financial Affairs.  In Schedule A/B, the Debtor
incorrectly lists as an asset that it owns a 51% membership interest in 960
Franklin LLC.  There is no valid basis for the Debtor to claim that it owns this
membership interest.

26.    On November 30, 2022, the Court entered an Order Establishing Deadline For Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof ("Bar Date Order").  The Bar Date order provides that March 2, 2023 is the deadline for non-governmental units to file a claim.

## RELIEF REQUESTED

27.    By this Motion, Movants seek entry of an order, pursuant to section 1112(b) of the Bankruptcy Code, dismissing the Debtor's Chapter 11 case as a bad faith filing for an improper purpose. Should the Court decline to dismiss the case, then Movants respectfully request that the Court enter an order determining that the automatic stay does not apply to the Agreement, or Hagler's rights to the Down Payment or the Premises. In the alternative, Movants request that the Court vacate the automatic stay as to Hagler so that Hagler may exercise all of his rights and remedies under the Agreement and 51% Assignment Agreement (to the extent necessary) and applicable state law, because the Debtor's inability to assume the Agreement as a result of the material, incurable default resulting from the Debtor's failure to comply with the November 2, 2022 at 11:00 a.m. TOE deadline constitutes cause for relief from the automatic stay.

## BASIS  FOR RELIEF

I.    **THE CHAPTER 11 CASE SHOULD BE DISMISSED AS A BAD FAITH FILING**

28.    Section 1112 of the Bankruptcy Code provides that a chapter 11 case may be dismissed "for cause." Subsection (b)( l) thereof provides as follows:

11

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. §1112(b)(1).

29.     It is well-settled that "cause" for dismissal purposes includes a filing made in bad faith. *In re C-TC 9th Ave. P 'ship v. Norton Co. (In re C-TC 9th Ave. P 'ship),* 113 F.3d 1304. 1310 (2d Cir. 1997); *see also Baker v. Latham Sparrowbush Assoc. (In re Cohoes Indus. Terminal, Inc.),* 931 F.2d 222, 227 (2d Cir. 1991) ("A petition for Chapter 11 bankruptcy may be deemed frivolous if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings."); *accord In re Kingston Square Assocs.,* 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) ("The standard in this Circuit is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and objective bad faith in filing the petition are found.").

30.     The Second Circuit Court of Appeals has stated that "the purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. If there is not a potentially viable business in place worthy of

protection and rehabilitation the Chapter 11 effort has lost its *raison d'etre....*"

*In re C-TC 9th Ave. P 'ship,* 113 F.3d at 1310 (internal quotations, citations and alterations omitted).

31.     Additionally, the Second Circuit has found the following eight factors  to  be indicative of a bad faith filing giving rise to "cause" for dismissal:

        a.  The debtor has only one asset;

        b.  The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

        c.  The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

        d.  The debtor's financial condition is, in essence, a two-party dispute between  the debtor and secured creditors which can be resolved in a pending state court action;

        e.  The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

        f.  The debtor has little or no cash flow;

        g.  The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

        h.  The debtor has no employees.

*See In re C-TC 9th Ave. P 'ship,* 113 F.2d at 1311.

32.     Here, the Debtor's Chapter 11 filing is a clear case of a bad faith filing. Every one of the applicable *C-TC* factors points to a bad faith filing: (i) the Debtor never had any ongoing business operations and does not appear to have any assets (other than an Agreement and 51% Assignment Agreement that were rescinded prior to the Chapter 11 petition being filed);

13

(ii) the Debtor has no secured creditors and a few purported unsecured creditors; (iii) no lawsuit was pending against the Debtor when it filed this case, and the Debtor's alleged rights under the Agreement present, at best, a two-party dispute between the Debtor and Hagler; (iv) the timing of the Debtor's bankruptcy filing (*i.e.,* after the TOE deadline) evidences an intent (albeit untimely) to frustrate Hagler's rights under the Agreement, and to establish a forum for attempting to resuscitate the Agreement in frustration of Hagler's rights under New York law; (v) it does not appear that the Debtor has any cash flow; and (vi) the Debtor has no employees.

33.      As the court in *In re GEL, LLC* noted when it dismissed Chapter 11 cases filed on the same day that foreclosure sales were scheduled to take place, "neither of the Debtors has any employees or cash flow.  As the *Island Helicopters, Inc.* court noted, '[f]undamental to any bona fide corporate reorganization effort under Chapter 11 of the Bankruptcy Code is that the entity seeking relief have assets, liabilities, creditors, employees and business operations.'"  *In re GEL, LLC,* 495 B.R. 240, 246 (Bankr. E.D.N.Y. 2012) (quoting *In re Island Helicopters, Inc,* 211 B.R. 453, 465 (Bankr. E.D.N. Y. 1997)). Here, the Debtor's Chapter 11 case lacks the basic elements that are fundamental to a bona fide corporate reorganization.

34.      The decision of the Third Circuit Court of Appeals in *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.),* 384 F.3d 108 (3d Cir. 2004) is also instructive. There,

4876-1516-1406, v. 3

the Third Circuit held that a chapter 11 petition filed by a financially healthy debtor with no intention to reorganize and commenced solely to take advantage of a provision in the Bankruptcy Code that limits the amount of claims on long-term leases, was not filed in good faith and should have been dismissed by the bankruptcy court. *Id.* at 112.  The question becomes whether a debtor's "petition might reasonably have 'maximized the value of the bankruptcy estate." *Id.* at 120. In concluding that it did not, the Third Circuit, citing its own precedent, stated, among other things, that "courts have recognized that if a petitioner has no need to rehabilitate or reorganize, its petition cannot serve the rehabilitative purpose for which Chapter 11 was designed." *Id.* at 122 (citing *In re SGL Carbon Corp.,* 200 F.3d 154, 160-161, 166 (3d. Cir. 1991)  Filing a bankruptcy petition to take advantage of a particular Bankruptcy Code provision is not sufficient to establish good faith. *Id.* at 128.

35.     The Debtor cannot deny that its purpose in filing this chapter 11 case was solely to attempt (albeit untimely and unsuccessfully) to seek the benefits of the tolling  provision of Section 108(b). It is evident that that the Debtor has no intention to reorganize its business.  Indeed, the Debtor never operated a business and did not suffer financial distress. Courts have dismissed bankruptcy cases for lack of good faith where they were filed to take advantage of a singular provision in the Bankruptcy Code, such as a landlord damages cap under section 502(b)(6), or rejection of executory

contract under section 365, *See e.g. In re Integrated Telecom Express, Inc.,* 384 F.3d at 128-130 (embracing good faith filing requirement); *In re Cardi Ventures, Inc.*, 59 B.R. 18, 22-23 (Bankr. S.D.N.Y. 1985) (Chapter 11 petition filed to assume and assign lease pursuant to section 365(f) dismissed). This case likewise should be dismissed for its clear lack of good faith.

36.     The decision in *Empire Equities Capital Corp.,* 405 B.R. 687 (Bankr. S.D.N.Y. 2009), illustrates that the Debtor's failure to file its chapter 11 petition until shortly after expiration of the TOE deadline is significant. There, the court found that, "[O]n April 30, 2009, *thirty-nine minutes before the closing deadline,* the Debtor filed the above-captioned Chapter 11 bankruptcy petition, without having proffered the purchase price to the Movants.'" *In re Empire Equities Capital Corp.,* 405 B.R. at 688 (emphasis added). Because the debtor in *Empire Equities* filed its case *before* the time of the essence closing deadline, Judge Gropper was able to conclude that the debtor in that case could take advantage of a sixty-day extension pursuant to section 108(b). *In re Empire Equities Capital Corp.* 405 13.R.at 692-93.

37.     But Judge Gropper also made the following observation in *Empire Equities,* which has particular significance in this case: "The foregoing does not mean that every time-of-the-essence option contract can, with impunity, be extended for sixty days by an unscrupulous optionee who files a

16

bankruptcy petition. The contract counterparty can move to dismiss a Chapter 11 petition that is filed for improper purposes. Movants have made no such motion, however, and there is no allegation that this Debtor was not financially distressed on the date it filed for Chapter 11 protection." *See id.* at 693 (citations omitted).

38.     The clear import of *Empire Equities* is that a chapter 11 petition of an empty shell company that is not being sued or pursued by its creditors, filed shortly after a time of the essence closing deadline, may be dismissed as a bad faith filing.  A bankruptcy court may find a lack of good faith and dismiss a chapter 11 petition when it finds an abuse of the bankruptcy reorganization process.  *See Clear Blue Water, LLC v. Oyster Bay Management Co., LLC,* 476 B.R. 60, 67, 68 (E.D.N.Y. 2012). This case bears all the indicia of an abusive bad faith filing made for an improper purpose and should be dismissed.

## III.    THE AUTOMATIC STAY DOES NOT APPLY BECAUSE THE AGREEMENT WAS TERMINATED PRE-PETITION

39.     Should the Court decline to dismiss the Debtor's Chapter 11 case, Movants request the entry of an order determining that the automatic stay does not apply to the Agreement, because the Debtor's ability to enforce its rights thereunder terminated pre-petition.

40.     In this case, it is incontrovertible that the chapter 11 case was commenced **after** the expiration of the November 2, 2022, 11:00 a.m. TOE deadline. The notice of case commencement indicates that the filing occurred at 4:28 p.m. on

17

November 2, 2022, which is after the Assignee's TOE deadline to make the $10 million payment. The Agreement was at an end when the Debtor failed to close by the specified TOE deadline. *See Southold Dev.Corp.*, 1991 U.S. Dist LEXIS 183330, at *10, 134 B.R. 705, 709 (E.D.N.Y. I 991) ("Although conduct of the parties may create a waiver of a time of the essence provision, such was not the case herein. Rather, when the parties failed to close on the specified date, the contract was at an end.'") (internal citations and quotations omitted). *See also Westreich v. Bosler,* 934 N.Y.S.2d 37 (N.Y. Sup. Ct. 2011), *aff'd* 106 A.D.3d 569 (1st Dep't 2013) (holding that where purchaser failed to close on "time of the essence" date and time, seller was entitled to keep the down payment); *Zelmanovitch v. Ramos,* 299 A.D.2d 353, 353-54 (2d Dep't 2002) (holding that plaintiff prospective purchaser was not entitled to specific performance, despite claiming plaintiff was ready, willing and able to perform. plaintiff did not attend closing, and closing date and time were of the essence); *Rhodes v. Astro-Pac, Inc.,* 51 A.D.2d 656, 378 N.Y.S.2d 195 (4th Dep't 1976) (where parties failed to close by time of the essence closing date, "the contract was at an end"), *aff'd* 41 N.Y. 2d 919 (1977).

41.     Accordingly, as the self-executing Agreement was terminated prior to the Petition Date, it is not property of the Debtor's estate, cannot be resuscitated and is not subject to the automatic stay. *See Southold Dev. Corp.,* 134 B.R. at 710 ("Contracts terminated prior to filing of a bankruptcy petition are not property of the debtor's estate, and the court cannot resuscitate

previously extinguished contract rights.  As noted above, the Robis Contract expired pre-petition due to the fact that the Robis Contract contained a material time of the essence provision, and following the 'drop-dead' date, the parties failed to revive or renegotiate their contract prior to the Suffolk contract or the Chapter 11 filing.") (internal citations omitted).

42.    The Movants anticipate that the Debtor will seek to rely upon *In re AAGS Holdings, LLC,* 608 B.R. 373 (Bankr. S.D.N.Y. 2019) in support of its argument that the Agreement did not terminate at 11:00 am on November 2, 2022, and that they had until the end of that day to file for bankruptcy protection to obtain the benefits of  Bankruptcy Code section 108(b) and extend their right to close on the Agreement.  Their reliance is unavailing because *AAGS* is factually distinguishable.  In that case, although *AAGS* filed its bankruptcy case 16 minutes after the time of the essence closing deadline, and the purchase and sale agreement ("PSA") did not automatically terminate if the closing did not occur by the closing date.  *Id.* at 377.  The PSA provided that if AAGS was unable to close by the closing date and the seller was ready, willing and able to perform, the seller shall be entitled to terminate their agreement and retain the down payment and any interest thereon as and for full and complete liquidated and agreed damages for purchaser's default, and the agreement would terminate and of no further force or effect.  *Id.* at 377.  In *AAGS*, the PSA could only be terminated in writing and in event of termination by the seller, notice had to be sent to the debtor purchaser and the escrow agent

at the addresses listed in the PSA. *Id.* In contrast, in this case, the termination of the Agreement is self-executing, and the Assignor had to take no action for the Agreement to terminate when the Assignee failed to pay the $10 million by the November 2, 2022 11 a.m. TOE deadline. There were no prerequisites for the Agreement to be terminated; it was terminated when the Debtor failed to wire $10 million to Escrowee by the November 2, 2022, at 11 am TOE deadline in accordance with the terms of the contract the parties had agreed to.

### Ill.  IN THE ALTERNATIVE, THE AUTOMATIC STAY SHOULD BE VACATED TO PERMIT HAGLER TO TERMINATE THE AGREEMENT

43.     If the Court were to determine that the Agreement was not terminated and remains an extant executory contract as of the Petition Date, the automatic stay should be vacated as to Hagler so that he may exercise his rights and remedies under the Agreement and applicable state law to terminate the Agreement.

44.     Section 362(d) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section ... for cause...." 11 U.S.C. §362(d)(I). A debtor's inability to assume a contract constitutes "cause" for relief under section 362(d)(l). *See e.g., Bell v. Alden Owners,* 199 B.R. 451, 462 (S.D.N.Y. 1996) (Court "recognized that a debtor's inability to assume a lease constitutes 'cause' for relief from the automatic stay under Bankruptcy Code section 362(d)(1)"). Here, the Debtor cannot assume

20

the Agreement because the Debtor's failure to close on or before the TOE deadline is a material, incurable non-monetary default.

45.    The decisions in *In re Empire Equities* and *In re New Breed Realty Enters., Inc.,* 278 B.R. 314 (Bankr. E.D.N.Y. 2002), are dispositive and conclusively support vacating the stay as to the Agreement and the exercise of Hagler's rights thereunder. In *Empire Equities,* Judge Gropper held that an option contract could not be assumed because the optionee debtor's failure to by the TOE closing date was an incurable non-monetary default. *In re Empire Equities Capital Corp.* 405 B.R. at 691 (""Under the uncontested facts of this matter, the Debtor's failure to close on time is incurable and the contract cannot be assumed under §365.").[5]

46.    Similarly, in *New Breed,* Judge Craig granted a motion vacating the automatic stay with respect to a share purchase agreement that contained a TOE closing date that expired post-petition. *In re New Breed Realty Enters., Inc.,* 278 B.R. 314 (Bankr. E.D.N.Y. 2002). At the time the motion was heard, more than 60 days after the TOE closing date had lapsed. There, Judge Craig held that "[t]he debtor's failure to close the sale on or before the time of the essence closing date, including any extension of that date provided by § 108(b)'s statutory grace period, *constitutes a non-- monetary default which cannot be cured because it is a historical fact."* In re New Breed Realty Enters., Inc.,* 278 B.R. at 320 (emphasis added) (citations omitted).

---

[5]As noted above, the debtor in Empire Equities was able to take advantage of an extension under Section 108(b) because it filed its petitions before expiration of the TOE deadline and the contract counterparty did not seek dismissal of its case as a bad faith filing.

Additionally, the court explained  that "[w]here the default is non-monetary and is not curable, the debtor is precluded from assuming an executory contract only if the default was material or if the default cause 'substantial economic detriment.'" *Id.* at 321 (citations omitted).

47.    The court in *New Breed* held that the materiality requirement was satisfied there because "[c]ases interpreting New York law are unanimous in holding that the failure to close by a specified closing date in a sales contract that declared time to be of the essence  is a material breach ***which terminates defaulting party's right to enforce the contract."*** *Id* at 322 (emphasis added) (citing *Grace v. Nappa,* 46 N.Y.2d 560, 566-67 (N.Y. l 979); *EC, L.L.C. v. Eaglecresl Manufactured Home Park, Inc.,* 275 A.D.2d 898, 899 (4th Dep't 2000); *Dub v. 47 E. 74th St. Corp.,* 204 A.D.2d 145 (1st Dep't 1994); *Mohen v. Mooney,* 162 A.D.2d 664 (2d Dep't 1990); *Palmiotto v. Mark,* 145 A.D.2d 549 (2d Dep't I 988); *Woodwork Display Corp. v. Plagakis,* 137 A.D.2d 809 (2d Dep't 1988); *Zahl v. Greenjleld,* 162 A.D.2d 449 (2d Dep't 1990); *Greto v. Barker 33 Assoc.,* 161 A.D.2d 109 (1st Dep't 1990); *Perillo v. De Martini,* 54 A.D.2d 691 (2d  Dep't  1976)). Judge Craig further stated that although the agreement in that case "did not provide that the failure to close results in termination of the contract, it is clear under applicable New York law that such failure constitutes a material default that prevents the debtor from enforcing the Agreement." *Id.* at 323. The debtor in *Breed* did not have the right to assume the agreement under section 365(d)(2) because it could not cure all the defaults as required by section 365(b)(1),  *Id.* at 325.

48.     Because the Debtor no longer has the ability to enforce its rights under the Agreement, and the failure to close before expiration of the TOE deadline cannot be cured, the Debtor cannot assume the Agreement. Thus, the Debtor does not have any rights in the Agreement, the down payment or the Premises, and they are not necessary to an effective reorganization. Accordingly, Hagler has demonstrated cause to vacate the stay to permit him to terminate the Agreement.

49.     Hagler anticipates that the Debtor will seek an extension of time under Section 108(b) of the Bankruptcy Code.  But such an extension of time is not available in this case, because the TOE deadline had already expired before the Debtor's Chapter 11 case was commenced.

50.     Section 108(b) provides, in relevant part, as follows:

> (b) Except as provided in subsection (a) of this section, if ... an agreement fixes a period within which the debtor ... may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, **and such period has not expired before the date of the filing of the petition,** the trustee may only file, cure, or perform, as the case may be, before the later of-
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

11 U.S.C. §108(b) (emphasis added). By its plain terms, the 60-day extension of time pursuant to section 108(b)(2) may only extend a period that has not expired prior to the filing of the petition.  Here, the TOE deadline expired prior to the

commencement of the Chapter 11 case, and there is no existing period for closing under the Agreement that can be extended. Even if the Debtor was entitled to the 60 day extension under section 108(b) (which it is not), the 60 day extension period expires on January 1, 2022.

51. To reiterate, although the courts in the *Empire Equities* and *New Breed* cases cited above permitted the debtor to extend for 60 days the period to perform the TOE closing, in both cases the TOE closing deadline had not expired before the bankruptcy cases were commenced. In other words, in those cases, there was an unexpired period that could be extended under section 108(b). Here, no such unexpired period exists because the TOE deadline had lapsed pre-petition. The result is that the Debtor does not own a 51% membership interest in 960 Franklin LLC.

52. Given all the foregoing, including the facts and circumstances surrounding the commencement of this case, to the extent it is found to apply, the automatic stay should be vacated to permit Hagler to exercise his rights and remedies under the Agreement and the 51% Assignment Agreement (to the extent necessary) and applicable state law, including terminating the agreements.

**WHEREFORE,** Movants respectfully request that the Court enter an order (i) dismissing the Debtor's chapter 11 case, or, in the alternative (ii) either (a) determining that the automatic stay provisions of section 362 do not apply to the Agreement, or (b) vacating the automatic stay as to Hagler, and grant

Hagler such other and further relief as it deems just and proper. If the Motion is granted, Movants will submit a proposed form of order after the end of the hearing.

**Dated:**  New York, New York
         December 7, 2022

LEECH TISHMAN ROBINSON BROG, PLLC

By: /s/ Fred B. Ringel
    Fred B. Ringel, Esq.
    Steven B. Eichel, Esq.
  875 Third Avenue, 9th Floor
  New York, New York 10022
Tel. No.: (212) 603-6300
*Attorneys for 960 Franklin LLC and
Daryl Hagler*

4876-1516-1406, v. 3