**LEECH TISHMAN ROBINSON BROG, PLLC**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: (212) 603-6300
**Fred B. Ringel, Esq.**
**Steven B. Eichel, Esq.**
*Attorneys for 960 Franklin LLC and Daryl Hagler*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

In re:                                              Chapter 11
                                                    Case No. 22-42760-jmm

**960 FRANKLIN OWNER LLC,**

                        Debtor.
-----------------------------------------------------X

### DECLARATION OF DARYL HAGLER IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER (I) DISMISSING CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, (II) EITHER (A) DETERMINING THAT THE AUTOMATIC STAY DOES NOT APPLY TO AGREEMENT OF SALE OF MEMBERSHIP INTERESTS OR (B) VACATING STAY WITH <u>RESPECT TO AGREEMENT OF SALE OF MEMBERSHIP INTERESTS</u>

I, Daryl Hagler, pursuant to 28 U.S.C. §1746, declare, under penalty of

perjury:

1.      I have personal knowledge of the events set forth here and thus am

fully familiar with the facts and circumstances of this case.

2.      I submit this declaration in support of the motion for entry of an order

(I) dismissing the above-captioned Chapter 11 case of 960 Franklin Owner LLC

("Debtor") under 11 U.S.C. §1112(b), or in the alternative (II) either (A) determining

that the automatic stay provisions of 11 U.S.C. §362 do not apply to the Agreement of

Sale of Membership Interests ("Agreement") between the Debtor and me or (B) vacating

the automatic stay as to me to permit me to, among other things, terminate the Agreement.

3.      The Debtor is a New York limited liability company, which was recently formed on July 11, 2022.   *See* Agreement at p. 1, attached as Exhibit A hereto.

4.      Upon information and belief, the Debtor has no business operations, income, employees, assets, or liabilities,  no secured creditors, and only a few purported creditors. Its schedules reflect that it has three creditors (other than me) in the aggregate amount of $124,000, and all of those creditors appear to be related to this one, now aborted, transaction.

5.      960 Franklin LLC ("960 Franklin") as a single-purpose entity and I am the sole owner of 100% of the issued and outstanding membership interests ("Membership Interests") in it.

6.      Subsequently, 960 Franklin entered into (i) a contract of sale dated July 19, 2022, as amended by First Amended to Contract of Sale on or about August 9, 2022 (as amended, "Contract 1") with HPG Associates, Inc. ("Underlying Seller 1"), a New York corporation, with an address c/o Zev Golombeck, 1 Lord Avenue, Lawrence, New York 11559, under which 960 Franklin had the right to purchase the premises designated as Block 1192, Lots 41 and 46, in Kings County, New York ("Premises 1") and (ii) a contract of sale dated July 19, 2022, as amended by First Amendment to Contract of Sale dated on or about August 9, 2022 (as amended, Contract 2", together with Contract 1, collectively known as the "Contracts") with Brooklyn 122A Montgomery LLC ("Underlying Seller 2", together with Underlying Seller 1, collectively called the "Underlying Sellers"), a New Jersey limited liability company, with an address c/o Zev

Golombeck, 1 Lord Avenue, Lawrence, New York 11559, by which 960 Franklin had the right to purchase the premises designated as block 1192, Lot 40, in Kings County, New York ("Premises 2"; together with Premises 1, collectively known as the "Premises").

7.     On August 10, 2022, I, as assignor ("Assignor"), and the Debtor, as assignee ("Assignee"), executed the Agreement under which Assignee was to acquire from me all my right, title and interest in and to the Membership Interests in 960 Franklin on the terms set forth in the Agreement.  The parties also entered into an Assignment and Assumption of Membership Interest Agreement ("51% Assignment Agreement"), a copy of which is Exhibit B.

8.     Under the 51% Assignment Agreement, I, as the owner of 100% of the Membership Interests in 960 Franklin, agreed to convey to the Debtor, as Assignee, 51% of the Membership Interests in 960 Franklin.  However, the 51% Assignment Agreement is subject to Section 3(B) of the Agreement, as amended by emails between counsel for Assignor and Assignee, which provided that the $10 million payment had to be paid by the time of the essence ("TOE") deadline of 11:00 a.m. on November 2, 2022.

9.     Under the Agreement, if Assignee failed to wire the additional $10 million to Escrowee, the law firm Abrams Festerman LLP, on or before November 1, 2022 (which it did not), Assignee was deemed to have defaulted, and my self-executing reversionary right in the Membership Interests was executed and Assignee had no further rights in the Membership Interests, the prior assignment ( the 51% Assignment Agreement) was void, and 960 Franklin had a right to retain the $4.5 million down payment as liquidated damages, and had a right to close with the Underlying Sellers.  See Exhibit A, Agreement §§3(B), 5 and 6.

3

10.     As set forth in more detail in the Carone declaration, on November 1, 2022, I authorized my counsel, Anthony Carone of Abrams Festerman LLP, to extend the time for the Debtor to make the $10 million payment from November 1, 2022 to November 2, 2022 at 11 am TOE.

11.     I was ready, willing and able to close the following morning, November 2, 2022 at 11:00 a.m., however, the Debtor failed to tender the $10 million payment either before or after the 11 am TOE deadline and close on the Agreement as required.

12.     At approximately 4:28 p.m. on November 2, 2022 ("Petition Date"), the Debtor started its Chapter 11 case.  Thus, the Debtor's chapter 11 case was begun *after* the expiration of the TOE deadline.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

**Dated:**  New York, New York
            December 2, 2022

_____
            **DARYL HAGLER**

# EXHIBIT A

## AGREEMENT OF SALE OF MEMBERSHIP INTERESTS

Agreement ("Assignment Agreement") entered into this 10th day of August, 2022 ("Effective Date"), between Daryl Hagler, an individual having an address c/o Centers Healthcare, 4770 White Plains Road, Bronx, New York 10470 ("Assignor") and 960 Franklin Owner LLC, a New York limited liability, having an address at c/o David J. Feit, Esq., Law Offices of David J. Feit, Esq., PLLC, 22 Cortlandt Street, Suite 803, New York, New York 10007 ("Assignee").

## WITNESSETH:

**WHEREAS,** on July 11, 2022 Assignor formed 960 Franklin LLC, a New York limited liability company as a new single purpose entity, as evidenced by that certain filing receipt and articles of organization and annexed hereto as Exhibit A (the "Company") and prior to the Effective Date was the sole owner of 100% of the issued and outstanding membership interests (the Membership Interests") in the Company;

**WHEREAS,** the Company entered into a contract of sale dated July19, 2022, as amended by First Amendment to Contract of Sale dated on or about August 9, 2022  (as amended, "Contract 1") with HPG Associates, Inc. ("Underlying Seller 1"), a New York corporation, with an address c/o Zev Golombeck, 1 Lord Avenue, Lawrence, New York 11559 ("Seller 1") wherein Company has the right to purchase  the premises designated as Block 1192, Lots 41 and 46, in Kings County, New York ("Premises 1") and a contract of sale dated July 19, 2022, as amended by First Amendment to Contract of Sale dated  on or about August 9, 2022 (as amended, Contract 2", together with Contract 1, collectively referred to herein as the "Contracts") with Brooklyn 122A Montgomery LLC ("Underlying Seller 2"; together with Underlying Seller 1, collectively referred to herein as the "Underlying Sellers"), a New Jersey

limited liability company, with an address c/o Zev Golombeck, 1 Lord Avenue, Lawrence, New York 11559 ("Seller 2") wherein Company has the right to purchase the premises designated as Block 1192, Lot 40, in Kings County, New York ("Premises 2"; together with Premises 1, collectively referred to herein as the "Premises");

**WHEREAS**, the only assets of the Company as of the date of this Assignment Agreement and thereafter are its interests as purchaser in and to the Contracts; and

**WHEREAS,** Assignor is desirous of transferring to Assignee, and Assignee is desirous of acquiring from Assignor all of the right, title and interest of Assignor in and to the Membership Interests in the Company, all on the terms and conditions hereinafter set forth.

**NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:**

1.      Assignor represents as of the Effective Date hereof and as of the date of Closing that he is the sole owner of all of the issued and outstanding Membership Interests, that there are no other parties entitled to or which own any Membership Interests, that no operating agreement has been heretofor executed by Assignor with respect to the Company, that Assignor has not heretofore encumbered, transferred or assigned any Membership Interests, and that Assignor has full power and authority to enter into this Assignment Agreement and that Company at the Closing shall be the owner in fee simple of the Premises. Assignor hereby indemnifies and holds harmless the Assignee and the Company against claims from any other party asserting an ownership interest, lien, right to, or any  claim in and to, the Membership Interests only.

The representations and warranties stated herein shall survive the Closing with respect to the transfer of the Membership Interests and the transfer of title to the Premises.

2.      Assignor represents as of the Effective Date hereof and as of the date of Closing that the Contracts (including all riders, schedules, exhibits, and amendments as of the date

hereof) have not been terminated nor modified as of the date hereof; that Assignor has not

heretofore assigned, mortgaged, pledged nor transferred its interest in the Contracts and that

Assignor is the sole owner and holder of the purchaser's interests thereunder. Assignor further

represents that annexed hereto as Exhibit "E is a complete and accurate copy of the Contracts

(including all riders, schedules, exhibits, and amendments as of the date hereof), except that

certain financial/economic terms therein contained have been deleted or redacted therefrom.

Assignor further represents that the Contracts are in full force and effect. Effective as of the date

hereof, all terms of the Contracts shall be binding upon Assignee. Assignor  and Assignee both

expressly acknowledge and agree that financing is permitted but Assignee obligation to close

under this Assignment Agreement and the Contracts is not contingent on financing.  Assignee's

inability to obtain financing for any reason shall not relieve Assignee of its obligations under this

Assignment Agreement and shall not be a basis for Assignee to delay the closing under this

Assignment Agreement (the "Closing").

 The representations  and warranties stated herein shall survive the closing under this Assignment

Agreement (the "Closing") with respect to the transfer of the Membership Interests only.

3.    (A) Effective as of the Effective Date, Assignor has assigned and transferred  to

Assignee all his right, title and interest in and to 51% of the  Membership Interests in the Company

as evidenced by  the assignment of membership interests dated on or about the Effective Date and

annexed hereto as Exhibit B (the "51% Assignment of Membership Interests"), with Assignor

representing that such assignment and transfer shall be lien free and free and clean of any debts,

liens, liabilities, obligations  and rights of any third parties  (and a "clean" UCC and lien search

shall be delivered by Assignor to Assignee on the Effective Date or Closing (at Assignee's option)

showing no encumbrances on the Membership Interests so assigned), and at the Assignee's option,

Assignor shall at Closing execute such title and other affidavits (including, without limitation, a "non-imputation affidavit" and such other documents as may be reasonably requested by the Assignee's designated title insurance company in order to insure the transfer of the Membership Interests to Assignee or its designee) and other reasonable documentation as Assignee shall reasonably request to confirm the foregoing, such covenants, representations and warranties to survive the closing of the payment of the Purchase Price with respect to the Membership Interests only.

(B) Effective as of the Closing, Assignor hereby agrees to assign and transfer to Assignee all his right, title and interest in and to 49% of the Membership Interests in the Company as evidenced by the assignment of membership interests dated on or about the Closing and annexed hereto as Exhibit C (the "49% Assignment of Membership Interests"), with Assignor representing that such assignment and transfer shall be lien free and free and clean of any debts, liens, liabilities, obligations and rights of any third parties (and a "clean" UCC and lien search shall be delivered by Assignor to Assignee at the Closing showing no encumbrances on the Membership Interests so assigned), and at the Assignee's option, Assignor shall at Closing execute such title and other affidavits (including, without limitation, a "non-imputation affidavit" and such other documents as may be reasonably requested by the Assignee's designated title insurance company in order to insure the transfer of the Membership Interests to Assignee or its designee) and other reasonable documentation as Assignee shall reasonably request to confirm the foregoing, such representations and warranties to survive the closing of the payment of the Purchase Price with respect to the Membership Interests only. Both the 51% Assignment of Membership Interests and the 49% Assignment of Membership Interests are fully-executed on the Effective Date, with the 51% Assignment of Membership Interests to be dated the Effective Date, and the 49% Assignment of

Membership Interests to be dated and effective the date of the Closing and Assignee shall insert such date thereon at Closing. If required by Underlying Sellers, Assignor and Assignee shall execute an Operating Agreement ("Operating Agreement") of the Company in commercially reasonable form dated on or about the Effective Date and conforming to the terms and conditions of this Assignment Agreement. If the closing of title to Purchaser fails to occur at the Closing as a result of Assignee's default in the performance of its obligations under this Assignment Agreement, and provided Underlying Sellers are not in default of the Contracts and further provided Assignor is not in default of this Assignment Agreement, then Assignor may at its sole option elect to rescind ("Reversionary Right") the 51% Assignment of Membership Interests and the 49% Assignment of Membership and retain the Down Payment (as hereinafter defined) as liquidated damages. Notwithstanding anything to the contrary set forth in this Assignment Agreement, and as a material inducement for Assignor to enter into this Agreement, Assignee shall wire $10,000,000.00 to Escrowee on or before November 1, 2022 to be held in escrow and applied toward the balance of the Purchase Price at Closing. In the event Assignee fails or refuses to wire such additional $10,000,000.00 to Escrowee on or before November 1, 2022, Assignee shall be deemed to have defaulted, Assignor's Reversionary Right shall be deemed exercised, Assignee shall have no further right in the Membership Interests, any prior assignment of the Membership Interests shall be deemed null and void, Assignor shall be entitled to retain the Down Payment as liquidated damages and Assignor shall be permitted to close with the Underlying Sellers.

4.      Assignor hereby represents and warrants to Assignee as of the Effective Date hereof and as of the date of Closing, that:

(a) The Membership Interests have been duly authorized, validly issued and are fully paid and non-assessable.

(b) The 51% Assignment of Membership Interests represent a 51% equity interest in the Company. The 49% Assignment of Membership Interests represent a 49% equity interest in the Company.

(c), the Membership Interests are free and clear of all claims, liens or encumbrances.

(d)　　This Assignment Agreement constitutes a valid and binding obligation enforceable against Assignor and his heirs, successors and assigns, in accordance with the terms and conditions hereof.

(e) The execution, delivery and performance of this Assignment Agreement and the consummation of the transactions contemplated hereby do not and will not violate or conflict with any provision of law, or any order, judgment or decree of any court or other governmental or regulatory authority to which the Assignor is subject;

(f) Upon payment by Assignee of the Down Payment contemporaneously herewith, Assignee shall have, subject to applicable law and requirements, all the rights as permitted under law  and the Contracts as the owner of 51% of the  Membership Interests in the Company, subject, however, to Assignors Reversionary Right under Section 3 of this Assignment Agreement.

(g)  Intentionally Deleted

(h) To the best of Assignor's knowledge, the Underlying Sellers  under the Contracts and Assignor have each  fully complied with its obligations, covenants, representations and warranties under the Contracts.

(i) Provided this Assignment Agreement remains in full force and effect, Assignor may not amend or modify any of the terms and conditions of the Contracts in any respect without the prior written consent of Assignee. To the best of Assignor's knowledge, the Deposits under the Contracts was

deposited into the escrow account of Sills Cummis & Gross, PC, the escrow agent under the Contracts, and have not been released from escrow and are currently being held by the escrow agent.

(j) Assignor has not received any notice of default from Underlying Sellers under the Contracts;

(k)    As long as this Assignment Agreement remains in full force and effect, Assignor shall not waive any rights under the Contracts or otherwise with respect to the Premises without Assignee's prior written consent;

(l)    to the best of Assignor's knowledge, all representations of Underlying Sellers contained in the Contracts are true and correct as of the date hereof, and Assignor shall promptly inform Assignee in writing in the event it discovers that any such representations are untrue;

(m)    to the best of Assignor's knowledge, Underlying Sellers have performed all of its obligations required by the Contracts;

(n)    so long as this Assignment Agreement remains in full force and effect, Assignor shall not take any action or forbear from enforcing any rights under the Contracts without Assignee's prior written consent which would allow the Contracts to terminate;

(o)    to the best of Assignor's knowledge, there are no actions, suits, proceedings, condemnations or governmental investigations pending or threatened against Assignor or the Underlying Sellers, which would, if determined adversely, adversely affect Assignor's or the Underlying Sellers ability to perform its obligations pursuant to this Assignment Agreement and pursuant to the Contracts;

(p)    Intentionally Deleted;

(q)    so long as this Assignment Agreement remains in full force and effect, Assignor shall not deliver any notices to Underlying Sellers under the Contracts without Assignee's consent, which consent shall not be unreasonably withheld or delayed;

(r)    so long as this Assignment Agreement remains in full force and effect, Assignor and its counsel will deliver to Assignee's counsel via e-mail copies of all notices received from Underlying Sellers or its counsel from the effective date of the Contracts to the Closing under the Contracts and this Assignment Agreement;

(s)    there is no "due diligence Period" or "inspection period" under the Contracts and Assignor has no right or option to cancel the Contracts by reason of any such contingency.

Assignor agrees to indemnify, defend and hold harmless Assignee and the Company from and against any and all actual claims, liabilities, damages, losses (but excluding indirect and consequential damages), costs and expenses including, but not limited to, reasonable attorney's fees incurred by any or all of them in connection with any breach of the foregoing representations and warranties set forth in Sections 1, 2 and this Section 4. Representations made to the best of Assignor's knowledge shall be excluded from the foregoing indemnity and hold harmless provisions.

The representations and warranties stated herein shall survive the Closing with respect to the transfer of the Membership Interests only.

5.    The purchase price for the assignment of the Membership Interests in the Company is the aggregate sum of $53,500,000.00 (which sum includes the aggregate purchase prices described in the Contracts), payable as follows: (a) $4,500,000.00 (the "Down Payment") payable in escrow via wire transfer to the Escrowee (as hereinafter defined) which is payment for

the assignment and transfer of the 51% Assignment of Membership Interests and the balance of

$49,000,000.00 ("Balance") by wire, at Closing, which sum shall be paid as the Assignor or Seller

may direct in order to (i) pay for the assignment and transfer of the 49% Assignment of

Membership Interests effective immediately prior to the transfer of title of the Premises  to

Purchaser and (ii) close title to the  purchase of  the Premises under the Contracts.

Assignor  herein irrevocably and unconditionally acknowledges and agrees that upon payment of

the Balance as set forth hereinabove, Assignor  will be deemed automatically to  have no further

ownership in the Membership Interests  and the Company and no directorships, managerial

positions, titles and offices, and officer designations in the Company and will have no authority

to bind  the Company in any respect as of such Closing date and if requested by Assignee

Assignor shall on such date execute and deliver to Assignee  a general release in favor of

Assignee and the Company, and Assignor  shall on such Closing date execute  and notarize and

deliver to Assignee  a  FIRPTA affidavit stating Assignor is not a foreign entity or party.


Upon execution and delivery by Assignor and Assignee of this Assignment Agreement, the 51%

Assignment of Membership Interests, the 49% Assignment of Membership Interests, and the

receipt by Escrowee  of the Down Payment, Escrowee is hereby authorized and directed to remit

$4,275,000.00 of the Down Payment to the Escrow Agent (as defined in the Contracts) under the

Contracts to be held in escrow by such Escrow Agent under the escrow provisions of the Contracts

as an additional deposit towards the purchase prices under the Contracts, and the balance of the

Down Payment shall be paid by Escrowee to Assignor at Closing or as otherwise provided for in

this Assignment Agreement.   Provided Assignee is not in default under this Assignment

Agreement, Assignor shall not consent to any release of the  $4,275,000.00 of the Down Payment

delivered hereunder to Escrow Agent from escrow by Escrow Agent to Underlying Sellers, or to

the release any other portion of the Deposit held by Escrow Agent under the Contracts, in either

event without Assignee's prior written consent,

     5.    In the event the Down Payment hereunder shall fail to clear this Assignment

Agreement shall be deemed null and void, of no further force and effect, and Assignor shall be

released of any liability and shall have the absolute right to complete the transaction with the

Seller for his own account.

     6.    Simultaneously with the execution of this Assignment Agreement, Assignor and

Assignee have executed the 51% Assignment of Membership Interests and the 49% Assignment

of Membership Interests under the provisions of which all of the right, title and interest of

Assignor in and to the Membership Interests shall be assigned to Assignee without recourse or

warranty except as expressly set forth herein or therein. If the closing of title to Purchaser fails

to occur at the Closing as a result of Assignee's default in the performance of its obligations

under this Assignment Agreement, and provided Underlying Sellers are not in default of the

Contracts and further provided Assignor is not in default of this Assignment Agreement, then

Assignor may exercise its Reversionary Interest and retain the Down Payment as liquidated

damages, and Assignor shall have the right to close with the Underlying Sellers and retain the

Down Payment as liquidated damages.

     7.    All adjustments required to be made under the Contracts (the "Adjustments") shall

be made between Company (as beneficial purchasers thereunder) and Underlying Sellers at the

Closing hereunder as set forth in the Contracts, but subject to the Assignees review and consent

which shall not be unreasonably withheld, delayed or conditioned. Assignor shall pay its own

legal fees as well as all expenses it incurred prior to the Closing under the Underlying Contracts.

As between the parties hereto, Assignee (or Assignor if the parties hereto shall mutually agree in writing) shall as member on behalf of the Company execute any New York State and New York City transfer tax documentation with Underlying Sellers on the basis of the purchase prices payable by Assignor as purchaser under the Contracts and Underlying Sellers shall be responsible to pay any such New York State and New York City transfer taxes due at Closing. Assignor shall be responsible at Closing for the payment of any additional New York State Transfer Taxes and New York City which may be payable in connection with this Assignment Agreement, the payment of the Purchase Price and the assignment of Membership Interests as contemplated by this Assignment Agreement and Assignor and Assignee shall execute any New York State and New York City transfer tax documentation required in connection therewith. Assignor shall endeavor to obtain direct deeds from the Underlying Sellers for the Premises to the Company at the closing of title under the Contracts. In the event, for any reason whatsoever, Assignor shall not be able to obtain direct deeds from Underlying Sellers to the Company as above-described, then in that event, the Company shall take title to the Premises utilizing funds provided or to be provided by Assignee under this Assignment Agreement, and immediately the Company shall reconvey title to Assignee of the Premises by direct deeds from Company to an entity owned by Assignee and designated by Assignee , simultaneously with and at the Closing, and in such event Assignor shall pay at such closing the transfer taxes due on such reconveyance and any closing costs in excess of the transaction costs that would have been expended by Assignee if Underlying Sellers had delivered direct deeds to the Company at the closing of title under the Contracts.

8.    The Closing shall be held on November 2, 2022, which is the same day that the closing is held with the Underlying Sellers pursuant to the Contracts, provided, however, if Underlying Sellers grant extensions under the Contracts at the request and with the permission

of Assignee, the obligations of Assignee hereunder shall likewise be extended. **TIME IS OF THE ESSENCE AS TO ASSIGNEE'S OBLIGATION TO CLOSE UNDER THE CONTRACTS AND THIS ASSIGNMMENT AGREEMENT.**

9.      Abrams Fensterman LLP, 1 Metrotech Center, Suite 1701, Brooklyn NY 11201 shall act as the escrowee in connection with the Down Payment under this Assignment Agreement (the "Escrowee"). The balance of the Down Payment not released to Escrow Agent as set forth herein, shall be held in escrow by the Escrowee in a non-interest bearing IOLA attorney's escrow account until the closing of title under this Assignment Agreement and the Contracts. The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. The parties hereto jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee) indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel. Escrowee or any member of its firm shall be permitted to act as counsel for Assignor in any dispute between the parties whether or not Escrowee continues to act as Escrowee. Escrowee may, on notice to Assignor and Assignee,

take such action as he may elect in order to terminate his duties as Escrowee, including without limitation commencement of an action for interpleader.

Escrowee shall hold and/or deliver the balance of the Down Payment not released to Escrow Agent as set forth herein, in accordance with the express terms set forth in this Assignment Agreement. Upon the filing of a written demand for the Down Payment by Assignor or Assignee alleging in good faith that title to the Premises has not closed under the Contracts and this Assignment Agreement because of a default by Underlying Sellers or Assignor under the Contracts, or this Assignment Agreement, or because of by Underlying Sellers' inability to convey title to the Premises in accordance with the provisions of the Contracts, or because of a default by Assignor or Assignee, as the case may be, under this Assignment Agreement, Escrowee shall promptly give notice thereof (including a copy of such demand) to the other party. The other party shall have the right to object in good faith to the delivery of the Down Payment by giving written notice of such objection to Escrowee at any time within ten (10) days after such party's receipt of notice from Escrowee. Such notice shall set forth the basis (in reasonable detail) for objecting in good faith to the delivery of the Down Payment. Upon receipt of such notice of objection, Escrowee shall promptly give a copy of such notice to the party who filed the written demand. If Escrowee shall have timely received such notice of objection, Escrowee shall continue to hold the Down Payment, as the case may be, until (x) Escrowee receives joint written notice from Assignor and Assignee directing the disbursement of the Down Payment, in which case Escrowee shall then disburse the Down Payment in accordance with said direction, or (y) Escrowee takes such affirmative steps as Escrowee may elect, at Escrowee's option, in order to terminate Escrowee's duties hereunder, including, but not limited to, depositing the Down Payment in court and commencing an action for interpleader, the costs thereof to be borne by whichever of Assignor or

Assignee is the losing party in such interpleader action, as determined by a final non-appealable order of such court or an order of such court which has not been appealed by the losing party in the time period required by law to file such appeal.

The Escrowee has executed this Assignment Agreement solely to confirm its agreement to act as the Escrowee in accordance with the provision of this Assignment Agreement.

10.    Assignor and Assignee each represents and warrants to the other that it has not dealt with any real estate broker in connection with this Assignment Agreement. Assignor and Assignee shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or contract contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this Assignment Agreement.

11.    The title searches for Premises 1 and Premises 2 have been ordered by Ram Abstract Ltd. under Title Nos. RFA14007 and RFA 14041, redacted copies of which has been furnished by Assignor's attorney to the attorney for Assignee. Assignee and Company  may use a title insurance company of Assignee's choosing (other than the title insurance company stated in the Contracts) to insure its purchase and financing  of the Premises.   Assignee to close subject to all matters set forth in the Contracts as amended provided Underlying Sellers deliver title to the Premises at Closing as required by the Contracts and Underlying  Sellers comply with their obligations with respect to title as stated in the Contracts.

12.    This Assignment Agreement shall not be recorded or assigned by Assignee without the express written consent of the Assignor and any assignment shall be null and void.

13.    If the Assignor or Underlying Sellers are unable to deliver title to the Premises 1 and Premises 2 as provided in the Contracts, Assignee has the right to waive any such condition, and/or direct Assignor, on behalf of Assignee, to pursue and prosecute legal action against the Underlying Sellers at Assignor's sole cost and expense. In the event of any legal proceedings or litigation between the parties hereto arising out of this Assignment Agreement, each of the parties hereto waives the right to a trial by jury in such legal proceedings or litigation. The prevailing party in any dispute arising from or relating to this Assignment Agreement shall be entitled to receive from the other party to such dispute the reimbursement of all of its reasonable attorneys' fees and costs and expenses incurred in connection with such dispute and the enforcement of the provisions of this Assignment Agreement. This Agreement is executed in and shall be governed by and construed in accordance with the laws of the State of New York and the parties consent to the jurisdiction of the Courts located in the State of New York irrespective of any conflicts of law principles. If any provision or provisions of this Agreement is found to be void or unenforceable, the remaining provisions of this Agreement shall remain binding and in full force and effect.

14.    Assignee may  in its sole and absolute discretion elect  to pursue brownfield credits post-closing at Assignee's sole cost and expense and if so pursued and then if any brownfield credits are actually obtained by Assignee then Assignor and Assignee agree to share equally in any brownfield credits obtained by the Assignee post-closing.  This provision shall survive Closing.

15.    In the event that the transfer of title under the Contracts does not occur for reasons other than the default of Assignee, and provided Assignee has elected to terminate this Assignment Agreement and the Contracts [which election in both cases shall be solely

Assignee's to make provided Assignee is not in default of this Assignment Agreement], and the Deposits paid pursuant to the Contracts are returned to the Assignor, then Assignor shall cause the return to Assignee, and Assignee shall be entitled to the return, of Assignee's entire Down Payment and upon such return this Assignment Agreement shall be cancelled and of no further force and effect and neither party shall have any rights against the other.

16.    If Assignor defaults hereunder, Assignee shall be entitled to all remedies available to it at law or in equity, including, but not limited to, terminating this Assignment Agreement and obtaining a refund of the Down Payment or to compel Assignor for specific performance.

If Underlying Sellers default in the performance of its obligations under the Contracts, then Assignor shall take all actions reasonably necessary or reasonably requested by Assignee under the Contracts in order to enforce any rights of Assignor and/or Assignee with respect to the Premises and the Contracts and to maintain the Contracts in full force and effect and all actual costs of the foregoing shall be paid by Assignor.

17.    If Assignee defaults hereunder, Assignor may, and in addition to closing under the Contract without any obligation to Assignee, retain the Down Payment as its sole and exclusive remedy as liquidated damages.

18.    The acceptance of the instrument of assignment by Assignee shall be deemed to be full performance of and discharge of every agreement and obligation on the part of Assignor to be performed pursuant to the provisions hereof, except those, if any, which are specifically stated to survive consummation of this transaction.

19.    Any notice required or permitted to be given pursuant to this Assignment Agreement shall be sent by overnight courier, or by certified or registered mail, return receipt requested, or by confirmed e-mail as follows:

To Assignor:    Abrams Fensterman LLP
                1 Metrotech Center, Suite 1701
                Brooklyn NY 11201
                Attn: Anthony J. Carone, Esq.
                E-mail: acarone@abramslaw.com
                Telephone: 718-215-5300

To Assignee:    Law Offices of David J. Feit, Esq., PLLC
                22 Cortlandt Street, Suite 803
                New York, New York 10007
                Attn: David J. Feit, Esq.
                E-mail: dfeit@dfeitlaw.com
                Telephone: (212) 608-1445 ext. 1

Assignor shall deliver to Assignee copies of all default notices received by Assignor from Seller or its counsel. Assignor shall not send any notices or take any action that increases Assignee's obligations or reduces Assignee's rights under the Contracts without Assignee's written consent. Copies of all Notices (hereinafter defined) or other communications actually sent to or actually received after the date hereof from Underlying Sellers and/or Underlying Sellers' counsel in writing, via e-mail, telecopier, or otherwise, shall be transmitted by Assignor or its counsel to the attorney for Assignee within one (1) business day after actual receipt by Assignor or its attorney, as applicable. As used herein, a "Notice" shall be deemed to include, without, limitation, any of the following notices: default notices, closing date notices and notices regarding Underlying Sellers being unable to deliver title in accordance with the Contracts and any other notices.

20.    This Assignment Agreement of Assignment contains the entire understanding arrived at between the parties and all prior discussions and negotiations are merged herein. This Assignment Agreement may not be modified nor terminated, except by an instrument in writing signed by the party of parties sought to be charged thereby. No waiver of any breach of any provision of this Assignment Agreement shall be deemed a waiver of a party's right to demand

strict performance of all of the terms of this Assignment Agreement, nor shall it constitute a waiver of any subsequent breach of any provision of this Assignment Agreement.

21.    Irrespective of the place of execution or performance, this Assignment Agreement shall be governed by and construed in accordance with the law of the State of New York. This Assignment Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Assignment Agreement to be drafted. All terms and words used in this Assignment Agreement, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.

22.    This Assignment Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.  The exchange of signature pages by facsimile or by e-mail by Portable Document Format (PDF) transmission shall constitute effective delivery of such signature pages and may be used in lieu of the original signature pages for all purposes.  At either party's request, both parties hereto shall execute and deliver to each other originally-executed conforming duplicates of this Assignment Agreement.

23.    This Assignment Agreement supersedes all prior agreements among the parties with respect to the subject matter hereof and each party hereto certifies that they have thoroughly read and fully understand all the provisions herein and that they have been advised to show this Assignment Agreement to their own respective and separate attorneys prior to signing it. All parties hereto acknowledge that each of them has been represented by separate counsel in connection with this Assignment Agreement and the transactions contemplated hereby.

24.    The parties hereto agree to execute and deliver such instruments and take such other actions as may be hereafter reasonably required in order to effectuate the purpose and intent of this Assignment Agreement.

25.    All of the costs and expenses of the Company which accrue before the Closing are the exclusive liability and obligation of Assignor and for which Assignor shall promptly and timely pay the same. All of the costs and expenses of the Company which accrue after the Closing are the exclusive liability and obligation of Assignee and for which Assignee shall promptly and timely pay the same. As a material inducement for Assignee to enter into this Assignment Agreement, Assignor hereby irrevocably, unconditionally and absolutely agrees to indemnify and keep indemnified Assignee and its successors and assigns (all of the foregoing are individually referred to herein as an "Assignee Indemnified Party" and collectively referred to herein as the "Assignee Indemnified Parties") and to defend and hold and save the Assignee Indemnified Parties harmless from and against, and shall reimburse the Assignee Indemnified Parties for, any and all out-of-pocket liabilities, damages (excluding indirect and consequential damages), losses, claims, actions, causes of actions, investigations, injunctive relief, fines, penalties, costs, charges and expenses of any kind or nature, suspected or unsuspected, known or unknown, including, but not limited to out-of-pocket litigation costs, reasonable attorney's fees, expenses, disbursements and court costs, which any of the Assignee Indemnified Parties may suffer or incur as a result of or in connection with any liability arising from or relating to any (i) claim made by any third party against the Company or Assignee arising from any period prior to the date hereof, excepting, however, the obligations of Assignee under this Assignment Agreement, and (ii) litigation costs, reasonable attorney's fees, expenses, disbursements and court costs, which any of the Assignee Indemnified Parties may suffer or incur as a result of or in connection with the enforcement of this

provision. As a material inducement for Assignor to enter into this Assignment Agreement, Assignee hereby irrevocably, unconditionally and absolutely agrees to indemnify and keep indemnified Assignor and its successors and assigns (all of the foregoing are individually referred to herein as an "Assignor Indemnified Party" and collectively referred to herein as the "Assignor Indemnified Parties") and to defend and hold and save the Assignor Indemnified Parties harmless from and against, and shall reimburse the Assignor Indemnified Parties for, any and all out-of-pocket liabilities, damages (excluding indirect and consequential damages), losses, claims, actions, causes of actions, investigations, injunctive relief, fines, penalties, costs, charges and expenses of any kind or nature, suspected or unsuspected, known or unknown, including, but not limited to out-of-pocket litigation costs, reasonable attorney's fees, expenses, disbursements and court costs, which any of the Assignor Indemnified Parties may suffer or incur as a result of or in connection with any liability arising from or relating to any (i) claim made by any third party against the Company or Assignor arising from any period after to the Closing, excepting, however, the obligations of Assignor under this Assignment Agreement, and (ii) litigation costs, reasonable attorney's fees, expenses, disbursements and court costs, which any of the Assignor Indemnified Parties may suffer or incur as a result of or in connection with the enforcement of this provision.

27.    Each party agrees that, unless compelled by an order of a court of competent jurisdiction, it shall keep the contents of this Assignment Agreement, and any information related to the transactions contemplated hereunder, confidential, unless and until the closing shall occur, and each party further agrees to refrain from participating in any publicity statement, press release or other public notice regarding this transaction prior to the closing date, without the prior written consent of the other party hereto, unless required under applicable law or by a court order. Once the closing occurs hereunder, each party further agrees to refrain from participating in any publicity

statement, press release or other public notice regarding this transaction on and after the closing date, without the prior written consent of the other party hereto, unless required under applicable law or by a court order, and any publicity statement, press release or other public notice regarding this transaction shall require the prior written consent of both parties. Notwithstanding the foregoing, the parties hereto shall be permitted to disclose the terms and conditions of this Agreement to their respective attorneys, accountants, financial analysts, bankers, auditors and other similar persons who reasonably require such information, all of whom shall be advised, in writing, of the confidential nature of this Assignment Agreement. Assignee is expressly prohibited from communicating directly or indirectly with the Underlying Sellers or any other third parties about this Assignment Agreement, or any matter related thereto without the express written consent of the Assignor.

28.     Provided Assignee is not in default under the terms of this Assignment Agreement, Assignor shall cooperate with Assignee in facilitating obtaining access by Assignee to the Premises as set forth in the Contracts and in agreeing to exercise any and all of Assignor's other rights and remedies as Purchaser under the Contracts and pursuant to Assignee's reasonable written direction.

29.     Notwithstanding anything to the contrary, the obligation of Assignee to pay the  Purchase Price hereunder and otherwise consummate the transaction contemplated hereby shall be subject to the satisfaction of the following conditions precedent being satisfied on and as of closing: (a) Assignor has performed all of its obligations contained in this Assignment Agreement on or prior to the Closing; (b) Underlying Sellers have performed all of its obligations contained in the Contracts on or prior to the Closing; and (c)  neither Underlying Sellers nor Assignor nor any of the parties comprising Underlying Sellers  or Assignor shall have filed a

voluntary petition in bankruptcy or shall have had an involuntary petition filed against it which has not been dismissed.

[NO FURTHER TEXT ON THIS PAGE]

{EXECUTION PAGE FOLLOWS THIS PAGE}

**IN WITNESS WHEREOF,** the parties have executed this Assignment Agreement of the day and year first above written.

ASSIGNOR:

_____

Daryl Hagler

ASSIGNEE:

960 FRANKLIN OWNER LLC

By:_____

Name:

Title: *Cheskie Weisz*

    *member*

THE TERMS AND CONDITIONS OF THIS ASSIGNMENT AGREEMENT ARE CONSENTED TO BY:

960 Franklin LLC

By:_____

Name: Daryl Hagler, Member

By: 960 FRANKLIN OWNER LLC, Member

By:_____

Name: *Cheskie Weisz*

Title: *Member*

**IN WITNESS WHEREOF,** the parties have executed this Assignment Agreement of the day

and year first above written.

ASSIGNOR:

X _____
Daryl Hagler

ASSIGNEE:

960 FRANKLIN OWNER LLC

By: _____
Name:
Title: Cheskie Weiss
member

THE TERMS AND CONDITIONS OF THIS ASSIGNMENT AGREEMENT ARE
CONSENTED TO BY:

960 Franklin LLC

By: X _____
Name: Daryl Hagler, Member

By: 960 FRANKLIN OWNER LLC, Member

By:_____
Name:
Title:

EXECUTED BY ESCROWEE SOLELY
TO INDICATE ITS ACKNOWLEDGEMENT
TO BE BOUND BY THE ESCROW PROVISIONS
HEREIN CONTAINED:

LAW OFFICES OF ABRAMS FENSTERMAN LLP

By:_____

Name: Anthony J. Carone
Title: Partner

## **EXHIBIT B**

## ASSIGNMENT AND ASSUMPTION OF OF MEMBERSHIP INTERESTS

ASSIGNMENT AND ASSUMPTION_OF MEMBERSHIP INTEREST ("**Assignment**"), dated

as of A̲u̲g̲. 10 , 2022 (the "**Effective Date**"), by and between DARYL HAGLER

("Assignor") and 960 FRANKLIN OWNER LLC ("Assignee").

WHEREAS, Assignor currently owns 100% of the membership interests in 960 Franklin LLC, a New York limited liability company (the "**Company**");

WHEREAS, Assignor desires to transfer 51% of the membership interests (the "**Assigned Interest**") in the Company to Assignee;

WHEREAS, Assignor desires to assign to assign to Assignee the Assigned Interest and all of the right, title and interest in and to such Assigned Interest owned by Assignor together with all rights and benefits relating thereto;

WHEREAS, Assignee desires to accept the assignment of the Assigned Interest and to acquire such Assigned Interest in accordance with the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the sum of ten ($10.00) dollars and other good and valuable consideration paid by Assignee to Assignor, the sufficiency and receipt thereof is hereby acknowledged, and in consideration of the foregoing premises and the mutual agreements hereinafter set forth, the parties hereto do hereby agree as follows:

      1.     Assignor does hereby convey, grant, transfer and assign to Assignee, all the right, title and interest in and to the Assigned Interest and all rights and obligations thereunder, including with respect to allocations and distributions of profits, losses, distributions, cash flow, management, etc. now or hereafter accrued, owing or otherwise due in respect of the Assigned Interest. Assignor does hereby waive any and all rights and claims, and all rights to allocations and distributions of profits, losses, distributions, cash flow, management, etc. now or hereafter accrued, owing or otherwise due, with respect to the Assigned Interest and does hereby, on behalf of itself, its owners, managers, affiliates and agents, resign and withdraw from any and all positions, capacities and authorities in or with respect to the Company, and further hereby releases Assignee, its successors and assigns and the Company from any and all claims, whether against Assignee, its successors or assigns or the Company, which Assignor, its owners, managers, affiliates and agents ever had or could have for any matter or reason relating to any period prior to the date hereof or arising from or relating to the within assignment.

      2.     This Assignment shall be effective as of the Effective Date, which Effective Date Assignor hereby authorizes Assignee to insert.

3.    Assignee accepts the foregoing assignment and hereby irrevocably and unconditionally assumes all of the responsibilities, duties and obligations of Assignor in respect of the Assigned Interest arising from and after the date hereof.

4.    The parties hereto agree that the assignment of the Assigned Interest by Assignor to Assignee and the admission of Assignee as a member of the Company shall not dissolve the Company and that the business of the Company shall continue.

5.    This Assignment shall inure to the benefit of and shall be binding upon the respective successors, assigns and legal representatives of the parties hereto.

6.    This Assignment may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same agreement. Electronic signatures transmitted hereon shall be deemed original signatures.

7.    This Assignment is made under and shall be construed in accordance with the laws of the State of New York, without regard to conflicts-of-laws principles that would require the application of any other law.

8. Assignor hereby indemnifies Assignee for any loss suffered in connection with

any matter regarding the  Company prior to the date hereof.

**IN WITNESS WHEREOF,** the parties have duly executed this Assignment as of *Aug10* ,

2022.

ASSIGNOR:

X _____
Daryl Hagler

ASSIGNEE:

960 FRANKLIN OWNER LLC

By: _____
Name:
Title:    *Cheskie Weiss*
         *Member*