Evan M. Newman
Nathan Cohen
JACOBOWITZ NEWMAN TVERSKY LLP
*Attorneys for Haim Kahan*
377 Pearsall Ave, Suite C
Cedarhurst, New York 11516

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
In re

960 FRANKLIN OWNER LLC,

                               Debtor.
----------------------------------------------------------x

Chapter 11

Case No. 22-42760 (JMM)

## HAIM KAHAN'S RESERVATION OF RIGHTS AND OBJECTION TO APPROVAL/CONFIRMATION OF AMENDED JOINT DISCLOSURE STATEMENT AND JOINT PLAN OF REORGANIZATION

Haim Kahan ("Kahan"), through his undersigned counsel, hereby submits this objection, pursuant to Rule 3017(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to the Amended Disclosure Statement for Joint Plan of Reorganization Proposed by 960 Franklin Owner LLC ("Debtor"), Daryl Hagler ("Hagler") and 960 Franklin LLC ("960 Franklin" and together with Hagler, the "Hagler Parties"), dated March 17, 2023 (ECF #35, the "Disclosure Statement"), and Amended Joint Plan of Reorganization Proposed by Debtor and Hagler, dated March 14, 2023 (ECF #39, the "Joint Plan"). In support thereof, Kahan states as follows:

1. Debtor purports to be the owner of 51% of the membership interests in 960 Franklin (the "Debtor's Disputed Interest") with an obligation to purchase the remaining 49% under an August 10, 2022 contract (the "Contract").

2. Hagler claims to be the 49% owner of the issued and outstanding membership interests in 960 Franklin and the purported owner of the Debtor's Disputed Interest. Hagler filed a

proof of claim in these bankruptcy proceedings in the amount of $53,500,000.00 (the "Hagler Secured Claim").

3. In turn, 960 Franklin – the joint proponent of the Joint Plan – purports to be the owner of the real properties and improvements and all other assets on the premises designated at Block 1192, Lots 41 and 46 in Kings County, New York, and premises designated as Block 1192, Lot 40, in Kings County, New York (collectively, the Property").

4. The Disclosure Statement and Joint Plan propose the appointment of a Plan Administrator empowered to consent to (i) the execution by landlord of a 99-year ground lease of the Property with Franklin Plaza II LLC ("FPII") post-confirmation; (ii) authorizing FPII to encumber the ground lease with the Leasehold Mortgage, (iii) having the Property encumbered with the Property Mortgage, and (iv) subsequent transfer or sale of title the Property subject to the ground lease.

5. Further, under the Disclosure Statement and Joint Plan, Class 2 consists solely of the Hagler Secured Claim, which would be treated as follows:

  a. In full and complete satisfaction of any and all claims held by Hagler against the Debtor, the Debtor's Disputed Interest in 960 Franklin shall be irrevocably assigned to the Plan Administrator and held by the Plan Administrator in escrow for the purposes of either (i) selling the Property at Hagler's direction or (ii) assigning the Debtor's Disputed Interest in 960 Franklin to Hagler or his designee.

  b. The Plan Administrator shall release the Debtor's Disputed Interest to either (x) the purchaser of the Property with the sale proceeds to be distributed to Hagler (or his designee) upon the closing of the sale of the Property or (y) Hagler (or his designee) if the Property is not sold within one year of the Effective Date.

6. As demonstrated more fully below, the Disclosure Statement and Joint Plan do not pass muster, as they are vague and speculative, fail to provide adequate information and fail to satisfy the Bankruptcy Code's feasibility requirement.

7. In particular, the Disclosure Statement and Joint Plan completely ignore Kahan's

claimed interest in the Property, which is the subject of a lawsuit presently pending in the Supreme Court of the State of New York, County of Kings under the caption *Haim Kahan v. 960 Franklin LLC*, Index No. 536153/2022 (the "Property Lawsuit"). *See* Exhibit 1 to Cohen Decl.

8. As alleged in the Property Lawsuit, in the summer of 2022, Cheskie Weisz, on information and belief a principal of the Debtor, represented that he had the opportunity to purchase the Property for a total purchase price of $54,500,000.00. Weisz proposed a partnership with Kahan to acquire the Property and, based on Weisz's representations, Kahan wired $4,500,000.00 (the "Deposit") to Abrams Fensterman, attorneys for 960 Franklin, for the purpose of funding 960 Franklin's down payment to purchase the Property and participating as a partial owner of the Property.

9. As further alleged in the Property Lawsuit, after wiring the Deposit, Kahan learned that Weisz's representations were false and that Weisz was simply a "flipper" trying to conceal and artificially raise the purchase price of the Property so Weisz could pocket the difference between the $54,500,000.00 he told Kahan and the true price to be paid by 960 Franklin to acquire the Property.

10. As further alleged in the Property Lawsuit, upon learning of Weisz's misrepresentations, on or about October 28, 2022, Kahan's counsel immediately reached out to Weisz and 960 Franklin's principals, warning them that he was defrauded into providing the Deposit and that he would be willing to use his own funds to close on the purchase of the Property directly with the actual seller of the Property.

11. As further alleged in the Property Lawsuit, thereafter, on or about November 2, 2022, 960 Franklin closed on the purchase of the Property without Kahan's knowledge, authority or participation and without returning the Deposit.

12. Based on the foregoing, the Property Lawsuit asserts causes of action against 960 Franklin for (i) unjust enrichment/quantum meruit, (ii) conversion, (iii) equitable lien or mortgage, (iv) constructive trust, (v) declaratory judgment, and (vi) permanent injunction.

13. In the Property Lawsuit, Kahan requests judgment, *inter alia*, (a) declaring, ordering and adjudging that Kahan is the owner of the Property; (b) granting Kahan a constructive trust over the Property or the Deposit; (c) granting Kahan a lien over the Property in the amount of the Deposit, and (d) preliminarily and permanently enjoining 960 Franklin from exercising any management over the Property or selling, conveying, mortgaging or encumbering the Property.

14. To secure Kahan's claimed ownership interest in the Property, concurrent with the commencement of the Property Lawsuit, Kahan filed a notice of pendency with the Clerk of the County of Kings, providing notice of the Property Lawsuit and Kahan's request for, *inter alia*, an equitable lien and constructive trust against the Property (the "Notice of Pendency"). *See* Exhibit 2 to Cohen Decl.

15. 960 Franklin has moved to dismiss the Property Lawsuit and cancel the Notice of Pendency. However, the motion to dismiss is presently returnable on May 18, 2023 and thus will not be decided prior to the Confirmation Hearing currently scheduled to commence on April 14, 2023. *See* Cohen Decl. ¶3.

16. As more fully demonstrated below, the Disclosure Statement and Joint Plan are objectionable and should not be confirmed because they fail to disclose, much less address, the Property Lawsuit and Kahan's claimed interest in the Property. Moreover, the Joint Plan, would authorize the Plan Administrator to encumber and sell or otherwise transfer the Property, presumably free and clear of all liens, claims, interests or encumbrances. However, such actions are not feasible in light of Kahan's claimed interests in the Property and the pending Property

Lawsuit and Notice of Pendency.[2]

## LEGAL STANDARD

17. Pursuant to 11 U.S.C. § 1125(a), before a debtor may solicit acceptances of a plan of reorganization, the debtor has an affirmative obligation to provide a "written disclosure statement . . . containing adequate information."

18. For purposes of such written disclosure, "adequate information" means:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . ..

11 U.S.C. § 1125(a).

19. Whether to approve a debtor's disclosure statement is subject to the Court's discretion and such approval should be withheld "if 1) it is apparent that the plan will not comply with Code § 1129(a) and 2) if it does not contain such information so that all creditors and equity shareholders can make an intelligent and informed decision as to whether to accept or reject the plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988).

20. If a plan of reorganization "is patently unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation of the vote would be futile." *In re Quigley Co.*, 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007); *see also In re Beyond.com Corp.*, 289

---

[2] Shortly after the filing of the Disclosure Statement and Joint Plan, Kahan's counsel reached out to Debtor's and the Hagler Parties' respective counsel to inquire about the Joint Plan's failure to account for Kahan's pending Property Lawsuit and Notice of Pendency. *See* Cohen Decl. ¶ 4. Debtor's counsel advised that any questions regarding the Joint Plan should be directed to counsel for the Hagler Parties. *Id*. However, counsel for the Hagler Parties ignored multiple messages from Kahan's counsel requesting the opportunity to discuss the Disclosure Statement and Joint Plan. Apparently, the Disclosure Statement and Joint Plan represent a bad faith effort by the Hagler Parties and Debtor to interfere with Kahan's claimed ownership interest in the Property and frustrate Kahan right to adjudicate his claims for relief concerning the Property in the Property Lawsuit.

B.R. 138, 140 (Bankr. N.D. Cal. 2003); *In re 266 Washington Assoc.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Filex*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990).

## ARGUMENT

### A. The Disclosure Statement Fails to Provide Adequate Information

21. The basic purpose of a disclosure statement is to provide adequate information of a kind and in sufficient detail to "enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

22. The determination of whether a disclosure statement meets this purpose is made on a case-specific basis. *Id.* To determine the adequacy of information, the court will review a number of factors including, but not limited to, the descriptions of the debtor's available assets and their values, the sources of information contained in the disclosure statement, the estimated returns from a liquidation analysis, and the accounting and valuation methods employed in the creation of the debtor's financial statements. *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D.Ohio) (collecting cases and compiling list of the types of information courts will review when determining the adequacy of information contained in a disclosure statement).

23. Here, the Disclosure Statement is facially inadequate as it completely ignores the Property Lawsuit and Notice of Pendency filed by Kahan and makes no accommodation for Kahan's claimed interest in the Property.

### B. The Joint Plan Is Not Feasible

24. In order for the Joint Plan to be confirmed by the Court it must comply with the feasibility requirement of § 1129(a)(11) of the Code, which requires a showing that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the

need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).

25. Thus, "the [plan proponent] must demonstrate that the plan is feasible." *In re T.A.T. Property*, No. 05-47223, 2009 Bankr. LEXIS 739, *16 (Bankr. S.D.N.Y. Feb. 20, 2009). To determine that a plan is feasible, the court must conclude that, "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." *In re Johns-Manville Corp.,* 843 F.2d 636, 649 (2d Cir. 1988). "To establish feasibility, the debtor must present proof through reasonable projections, which are not speculative, conjectural or unrealistic, that there will be sufficient cash flow to fund the plan and maintain operations." *In re T.A.T. Property*, at * 17, quoting *In re Leslie Fay Cos.*, 207 B.R. 764, 789 (Bankr. S.D.N.Y. 1997).

26. Here, the feasibility of the Joint Plan is contingent on the Plan Administrator's authority to encumber, sell and/or otherwise dispose of the Property and Debtor's Disputed Interest, without regard to Kahan's claimed interest in the Property.

27. Indeed, the occurrence of the Effective Date under the Joint Plan is expressly made contingent upon, *inter alia*, the Debtor's Disputed Interest being irrevocably assigned to the Plan Administrator, to be held in escrow for the purposes of either (i) selling the Property at Hagler's direction; or (ii) assigning Debtor's Claimed Interest to Hagler or his designee.

28. However, no such irrevocable assignment can be effective while the Property Lawsuit and Notice of Pendency remain pending. The Joint Plan does not reference, much less address the Property Lawsuit and Kahan's claimed ownership interest in the Property. The Joint Plan fails to reconcile the Joint Plan's proposed disposition of the Property with the fact that Kahan

has filed a Notice of Pendency alerting Debtor, Hagler and any third parties to Kahan's claimed ownership interest in the Property.

29. Under the circumstances, given the pending Lawsuit and Notice of Pendency, the plan proponents have failed to demonstrate that the Joint Plan is feasible.[3]

## CONCLUSION

For the foregoing reasons, Kahan respectfully requests that the Court deny the Debtor's and Hagler's motion for approval of the Disclosure Statement and grant Kahan such other and further relief as is just and proper.

| | |
|---|---|
| Dated: Cedarhurst, New York<br>April 10, 2023 | JACOBOWITZ NEWMAN TVERSKY LLP<br>*Attorneys for Hain Kahan*<br><br>By: __/s/ Nathan Cohen_____<br>Evan Newman (enewman@jntllp.com)<br>Nathan Cohen (ncohen@jntllp.com)<br>377 Pearsall Ave, Suite C<br>Cedarhurst, New York 11516<br>Telephone: (212) 612-1110<br>Facsimile: (212) 671-1883 |

---

[3] In the "Feasibility Analysis" section of their Disclosure Statement, the plan proponents contend that the proposed Joint Plan is feasible "[a]s the holders of the Class 3 General Unsecured Claims are being paid in full and Hagler is either receiving the sale proceeds from the sale of the Property or The Debtor's purported membership interest in 960 Franklin …." However, the Feasibility Analysis completely ignores and thus implicitly acknowledges the Joint Plan's failure to address Kahan's claimed interest in the Property, which presents an insurmountable barrier to the feasibility of the Joint Plan.