UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re:                                          Chapter 11

**960 FRANKLIN OWNER LLC,**                      Case No. 22-42760 (JMM)

                           Debtor.
------------------------------------------------------------X

### SECOND AMENDED JOINT PLAN OF REORGANIZATION PROPOSED BY 960 FRANKLIN OWNER LLC, 960 FRANKLIN LLC AND DARYL HAGLER

---

THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR CONFIRMATION FOLLOWING SOLICITATION AND APPROVAL OF THE DEBTOR'S DISCLOSURE STATEMENT.

---

**Leech Tishman Robinson Brog, PLLC**
*Attorneys for Daryl Hagler and 960 Franklin LLC*
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No. 212-603-6300
**Fred B. Ringel Esq.**
**Steven B. Eichel, Esq.**

New York, New York
April 28, 2023

**Backenroth Frankel and Krinsky LLP**
*Attorneys for the Debtor*
800 Third Avenue, 11th Floor
New York, New York 10022
Tel. No.: 212-593-1100
Mark Frankel, Esq.

4857-0820-1556, v. 8

## INTRODUCTION

960 Franklin Owner LLC ("Debtor"), together with 960 Franklin LLC ("960 Franklin") and Daryl Hagler ("Hagler", together with 960 Franklin, the "Hagler Parties"), propose the following chapter 11 plan of reorganization under section 1121(a) of the Bankruptcy Code. Capitalized terms used here shall have the meanings set forth in Section 1.A of the Plan.

The Plan is proposed for the resolution of outstanding Claims and Interests under the Bankruptcy Code. **The Debtor and the Hagler Parties are joint proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests are set forth in Article III of the Plan.**

Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.**

**SECTION 1.        DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES.**

**A.    Defined Terms.**

1.1    ***960 Franklin*** means 960 Franklin LLC, a single-purpose entity.

1.2    ***960 Franklin Owner*** means 960 Franklin Owner LLC, the Debtor in this Chapter 11 Case.

1.3    ***16792 Holdings*** means 16792 Holdings LLC, the purported sole beneficial owner of the Debtor.

1.4    ***Administrative Expense Claim*** *means* any Claim for costs and expenses of administration during the Chapter 11 Case pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred after the Commencement Date, and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Fee Claims; and (c) all fees and charges assessed against the Estates under section 1911 through 1930 of chapter 123 of title 28 of the United States Code.

2

1.5    ***Administrative Expense Claims Bar Date*** means the first Business Day that is 30 days following the Effective Date, except as otherwise specifically set forth in the Plan.

1.6    ***Administrative Expense Claims Objection Bar Date*** means the first Business Day that is 120 days following the Effective Date, except as otherwise specifically set forth in the Plan; provided that the Administrative Expense Claims Objection Bar Date may be extended under an order of the Bankruptcy Court upon a motion filed by the Hagler Parties, the Plan Administrator or Post-Effective Date Debtor after notice and a hearing.

1.7    ***Allowed*** means with reference to any Claim:  (a) any Claim against the Debtor that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with Section 7.9 hereof or before the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the holder, or (c) any Claim expressly allowed by a Final Order.

1.8    ***Amended and Restated Restructuring Support Agreement*** means the Agreement between 960 Franklin, 960 Franklin Owner, Franklin Plaza II LLC, 16972 Holdings LLC, Daryl Hagler and the Hagler Parties entered into on March 14, 2023, and amended and restated on April ___, 2023.

1.9    ***Available Cash*** means all Cash of the Debtor realized from its business operations, the sale or other disposition of its assets, the interest earned on its invested funds, recoveries from Causes of Action or from any other source or otherwise.

1.10    ***Avoidance Action*** means any action commenced, or that may be commenced, before or after the Effective Date under section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

1.11    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§101, et seq., as amended from time to time, as applicable to these Chapter 11 Cases.

1.12    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Eastern District of New York having jurisdiction over this Chapter 11 Case and, to the extent of any reference made under section 157 of title 28 of the United States

Code, the unit of such District Court having subject-matter jurisdiction over this Chapter 11 Case under section 151 of title 28 of the United States Code.

1.13    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to this Chapter 11 Case, and any Local Rules of the Bankruptcy Court.

1.14    ***Bar Date Order*** means that certain *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof entered on November 20, 2022* [ECF No. 20], which established March 2, 2023 as the last day for creditors to file claims against the Debtor's Estate and established May 2, 2023 as the last date for Governmental Units to file claims against the Debtor's Estate.

1.15    ***Business Day*** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.16    ***Cash*** means legal tender of the United States of America.

1.17    ***Causes of Action*** means any action, Claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Debtor's Commencement Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.18    ***Chapter 11 Case*** means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on November 2, 2022 and styled *In re Franklin Owner LLC,* Case No. 22-42760 (JMM).

1.19    ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.20    ***Claims Objection Bar Date*** means the first Business Day that is 120 days after the Effective Date; provided that the Claims Objection Bar Date may be

extended by an order of the Bankruptcy Court upon a motion filed by the Plan
Administrator.

1.21    *Class* means any group of Claims or Interests classified under Section
3 of the Plan.

1.22    ***Commencement Date*** *means November 2, 2022.*

1.23    *Confirmation Date* means the date on which the Clerk of the
Bankruptcy Court enters the Confirmation Order.

1.24    *Confirmation Hearing* means the hearing to be held by the Bankruptcy
Court regarding confirmation of the Plan, as such hearing may be adjourned or
continued from time to time.

*1.25*    *Confirmation Order* means an order of the Bankruptcy Court
acceptable to the Debtor and Hagler Parties (a) confirming the Plan and (b)
approving either of the Restructuring Transactions.

1.26    *Consummation* means the occurrence of the Effective Date of the Plan.

1.27    *Cure Obligation* means all (a) amounts (or such other amount as may
be agreed upon by the parties under an Executory Contract or Unexpired Lease)
required to cure any monetary defaults; and (b) other obligations required to cure
any non-monetary defaults under any Executory Contract or Unexpired Lease that
is to be assumed by the Debtor under sections 365 or 1123 of the Bankruptcy Code.

1.28    *Debtor* means 960 Franklin Owner, as a debtor in possession in this
chapter 11 case.

1.29    *Disbursing Agent* means the Plan Administrator.

1.30    *Disclosure Statement* means the disclosure statement for the Plan
which is prepared and distributed in accordance with sections 1125, 1126(b) and
1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law, as
the same may be amended or modified from time to time.

1.31    *Disputed Claim* means with respect to a Claim or Interest, any such
Claim or Interest (a) to the extent neither Allowed nor disallowed under the Plan or
a Final Order nor deemed Allowed under section 502, 503 or 1111 of the
Bankruptcy Code, or (b) for which a Proof of Claim or Interest has been filed, to the
extent a Debtor or any party in interest has interposed a timely objection or request

for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

1.32    **Distribution Date** means a date or dates, as determined by the Disbursing Agent under the terms of the Plan, on which the Disbursing Agent makes a distribution to holders of Allowed Claims.

1.33    **Distribution Record Date** means the Effective Date of the Plan.

1.34    **Effective Date** means the date on which all conditions to the effectiveness of the Plan set forth in Section 10.2 hereof have been satisfied or waived under the terms of the Plan.

1.35    **Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.36    **Estate** means the estate created for the Debtor in its Chapter 11 Case under section 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

*1.37*    **Estimated Professional Fee Escrow** means the escrow account established by the Hagler Parties five days before the Effective Date holding sufficient Cash to pay the Fee Claims in full, subject to their allowance by the Bankruptcy Court upon the later of (i) the Effective Date or (ii) the date on which the order relating to any such Allowed Fee Claim is entered or (iii) upon such other terms as may be agreed to between the holder of such an Allowed Fee Claim, and the Hagler Parties.  Such Estimated Professional Fee Escrow will be funded under Section 12 of the Amended and Restated Restructuring Support Agreement, which is attached as Exhibit A hereto.

1.38    **Exculpated Parties** means collectively, the Plan Proponents and their successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees (including Daryl Hagler) in any or all such capacities and his designee), and each of their agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' heirs, executors, Estates, servants and nominees, in each case in their capacity as such. The term Exculpated Parties shall also include 16972 Holdings and David Goldwasser.

1.39 ***Executory Contract*** means a contract to which a Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.40 ***Existing Equity Interests*** means all Interests in the Debtor, including membership interests or the rights to acquire any such Interests.

1.41 **Equity Interest Parties** means 16872 Holdings LLC and David Goldwasser.

1.42 ***Fee Claim*** means a Claim for professional services rendered or costs incurred on or after the Debtor's Commencement Date through the Effective Date by professional persons retained by the Debtor under sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in this Chapter 11 Case. Under Section 12 of the Amended and Restated Restructuring Support Agreement, the aggregate amount of the Fee Claim for the Debtor's professional of up to $50,000 subject (i) confirmation of this plan and (ii) allowance by the Court.

1.43 ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, re-argument or re-hearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired, except that no order or judgment will fail to be a "Final Order" solely because of the possibility that a motion under section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.44 **Franklin Plaza II LLC** means the proposed tenant of the Lease Transaction

1.45 ***General Unsecured Claim*** means any unsecured Claim that is not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court.

4857-0820-1556, v. 8

1.46    *Governmental Unit* has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.47    *Hagler* means Daryl Hagler, the 49% owner of the issued and outstanding membership interests in 960 Franklin and the purported owner of the 51% membership interests in 960 Franklin now alleged to be owned by the Debtor.

1.48    *Hagler Secured Claim* means the proof of claim filed by Daryl Hagler in the amount of $53,500,000.

1.49    *Hagler Parties* means Daryl Hagler and his designees.

1.50    *Impaired* means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.51    *Interests* means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all instruments evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in a Debtor that existed immediately before the Effective Date.

1.52    *Leasing Closing Date* means the date of the closing of the 99-year ground lease with Franklin Plaza II LLC.

1.53    *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.54    *Lease Transaction* means the entry of a 99-year ground lease with Franklin Plaza II LLC, as tenants, which lease may be encumbered by the Leasehold Mortgage.

1.55    *Leasehold Mortgage* means a mortgage placed on the leasehold interest in the 99-year ground lease on the Property.

1.56    *Person* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.57    *Plan* means this chapter 11 plan of reorganization, including the Amended and Restated Restructuring Support Agreement and other the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time in accordance with the applicable provisions of this Plan.

8

1.58   *Plan Administrator* means the individual to be identified jointly by the Plan Proponents in the Plan Supplement who shall become the person designated to administer the Plan with sole authority to act on behalf of the Debtor's Estate (including, without limitation, to effectuate the Lease Transaction and Sale Transaction).

1.59   *Plan Fund* means the $150,000 fund, which money will funded from the tenant's $ 2,000,000 deposit, and will be used to pay 16792 Holdings LLC $100,000 and Debtor's counsel shall receive up to the aggregate amount of $50,000, provided that (i) such payments, fees and expenses are approved by the Bankruptcy Court and (ii) the consensual Plan is confirmed.

1.60   *Plan Proponents* means the Debtors and the Hagler Parties.

1.61   *Plan Supplement* means the compilation of documents and information, if any, required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; provided that, through the Effective Date, the Debtor (with the consent of the Hagler Parties as Plan Proponents) shall have the right to amend any schedules, exhibits, and the other documents contained in, and exhibits to, the Plan Supplement.

1.62   *Plan Supplement Filing Deadline* means the date that is no later than five business days before the Confirmation Hearing.

1.63   *Post-Effective Date Debtor* means the Debtor after the Effective Date.

1.64   *Priority Claim* means any Claim against the Debtor entitled to priority in payment as specified in section 507(a)of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.65   *Priority Tax Claim* means any unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.66   *Pro Rata* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims within such Class.

1.67   *Proof of Claim* means a proof of Claim filed against a Debtor in its Chapter 11 Case.

1.68   *Property* means collectively the real properties and improvements and all other assets on the premises designated as Block 1192, Lots 41 and 46 in Kings County, New York ("Premises 1") and premises designated as Block 1192, Lot 40, in Kings County, New York ("Premises 2").

1.69  *Property Mortgage* means a mortgage on the Property.

1.70  *Restructuring Transactions* means the restructuring of the Debtor by the sale and lease of the Property through the consummation of the Plan and certain related transactions.

1.71  *Sale Closing Date* means the date of the closing of the Sale Transaction, which transaction will take place at the direction of Hagler.

1.72  *Sale Proceeds* means the Cash proceeds from the Sale Transaction net of closing costs including, but not limited to, the costs and other ordinary and necessary costs of, or credits related to, the transfer of title to the Property.

1.73  *Sale Transaction* means the sale or transfer of the Property under the Plan.

1.74  *Schedule of Cure Costs* means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Plan Administrator on behalf of the Debtor in connection with a sale or sale transactions under the Plan to be filed with the Plan Supplement.

1.75  *Schedules* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.76  *Secured Claim*  means a Claim to the extent (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (A) as set forth in the Plan, (B) as agreed to by the holder of such Claim and the Debtor or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.77  *Transaction* means one sale of the Property to the Purchaser(s) under the Plan.
1.78

1.79  *Unexpired Lease* means a lease to which a Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

4857-0820-1556, v. 8

1.80    *Unimpaired* means, with respect to a Claim, Interest or Class of Claims or Interests, that such Claim or Interest is not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

## B.    Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in the Plan are to the section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this document. For purposes here: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (2) any reference here to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms means that the referenced document must be substantially in that form or substantially on those terms; (3) unless otherwise specified, all references here to "Sections" are references to Sections in this Plan; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (5) any term used in capitalized form here that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## C.    Computation of Time

Unless otherwise specifically stated here, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period prescribed or allowed here. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*,

4857-0820-1556, v. 8

that corporate governance matters relating to the Debtor, as applicable, shall be governed by the laws of the relevant state of formation of the relevant Debtor, as applicable.

### E.    Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### F.    Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement or the Amended and Restated Restructuring Support Agreement, the terms of the Plan shall be controlled (unless stated otherwise in the Plan). The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## SECTION 2.        ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

### 2.1.    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtor, the Hagler Parties or Plan Administrator, as applicable, agree to different treatment, the Plan Administrator shall pay to each holder of an Allowed Administrative Expense Claim, Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor or Plan Administrator, shall be paid by the Debtor or Plan Administrator, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court (including the Bar Date Order), requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims,

must be filed and served on the Debtor, the Hagler Parties and Plan Administrator, no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  The Debtor shall be responsible for payment of any Administration Expense Claim, except as set forth in this Plan.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtor's Estate or its property, and the Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date. The Plan Administrator must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.

### 2.2.   *Fee Claims.*

All Entities seeking an award by the Bankruptcy Court of Fee Claims shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date. No later than fifteen (15) days prior to the Effective Date, all entities holding claims for Fee Claims shall serve upon the Plan Proponents a notice of the estimated amount of their unpaid Fee Claim (which estimate shall also include an estimate of fees through 30 days after the Effective Date) and, no later than ten (10) days before the Effective Date, the Hagler Parties or Plan Administrator shall segregate into an Estimated Professional Fee Escrow the amounts which are necessary to pay the amount of such Fee Claim, in full subject to allowance by the Bankruptcy Court up to an aggregate of $50,000 for the documented fees and expenses of David Goldwasser and Debtor's counsel (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Hagler Parties.  The Plan Administrator is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3.   *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the election of the Hagler Parties or Plan Administrator, as applicable, (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim

becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course or (ii) such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

**SECTION 3.      CLASSIFICATION OF CLAIMS AND INTERESTS**.

3.1.    *Classification in General.*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

3.2.    *Summary of Classification.*

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plans in accordance with Section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plans.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the classes of Claims and Interests set forth in this Section 3. All of the potential Classes for the Debtors are set forth herein. The Debtor may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 4.

| Class | Designation | Treatment [1] | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Priority Claim | Unimpaired | No (presumed to accept) |

---

[1] As set forth in Section 4 of the Plan, the Plan contemplates reorganization under the Amended and Restated Restructuring Support Agreement.

| Class | Designation | Treatment [1] | Entitled to Vote |
|-------|-------------|---------------|------------------|
| 2 | Hagler Secured Claim | Unimpaired (pursuant to Amended and Restated Restructuring Support Agreement) | No (presumed to accept pursuant to Amended and Restated Restructuring Support Agreement) |
| 3 | General Unsecured Claims | Unimpaired | No (presumed to accept) |
| 4 | Equity Interests | Unimpaired (pursuant to Amended and Restated Restructuring Support Agreement) | No (presumed to accept pursuant to Amended and Restated Restructuring Support Agreement) |

### 3.3. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor and/or Debtor's Estate in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims, except that the Debtor shall have no right to object to the Hagler Secured Claim or assert a right of set-off or repayment argument.

### 3.4. *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) or 1129(b) of the Bankruptcy Code with respect to that Class.

### 3.5. *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan Proponents shall request the Bankruptcy Court at the Confirmation

Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

3.6. ***Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.***

The Plan Proponents shall seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Plan Proponents reserve the right to modify the Plan, in accordance with Article 13 hereof to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 4. TREATMENT OF CLAIMS AND INTERESTS.

Each holder of an Allowed Claim, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim, except to the extent different treatment is agreed to by: (a) the Debtor, and (b) the holder of such Allowed Claim. Unless otherwise indicated, the holder of an Allowed Claim shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

Accordingly, this section describes the treatment of Claims and Interests under the Sale Transaction.

4.1. ***Class 1 - Priority Claims***

(a) *Classification*: Class 1 consists of Allowed Priority Claims against the Debtor.

(b) *Treatment*: Except to the extent that a holder of an Allowed Priority Claim against the Debtor has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim, payable on the later of the Effective Date, the date on which such Priority Claim becomes an Allowed Priority Claim, or when such claim becomes payable in the ordinary course or as soon as reasonably practical thereafter. The Plan Proponents are not aware of any Priority Claims.

(c) *Voting*: Class 1 is Unimpaired and is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Class 1 is not entitled to vote to accept or reject the Plan.

4.2. **Class 2 – *Hagler Secured Claim***

(a)    *Classification*: Class 2 consists of the Hagler Secured Claim against the Debtor.

(b)    *Treatment*:

In full and complete satisfaction of any and all claims held by Hagler against the Debtor, the Debtor's beneficial 51% membership interest in 960 Franklin shall be irrevocably assigned to the Plan Administrator and held by the Plan Administrator for the purposes of either (i) selling the Property at Hagler's direction or (ii) assigning the Debtor's beneficial 51% ownership interest in 960 Franklin to Hagler or his designee.  Upon assignment of the Debtor's 51% membership interest in 960 Franklin to the Plan Administrator, such interest shall not, under any circumstances, be thereafter assigned or transferred to the Debtor, 16972 or any party affiliated with them.

The Plan Administrator shall assign the beneficial 51% membership Interest in 960 Franklin to either (x) the purchaser of the Property with the sale proceeds to be distributed to Hagler (or an entity that he created or controls) upon the closing of the sale of the Property or (y) to Hagler (or an entity created or controlled by him) if the Property is not sold within one year of the Effective Date.

(c)    *Voting*: Class 2 is Unimpaired and is conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and the Amended and Restated Restructuring Support Agreement.  Therefore, Class 2 is not entitled to vote to accept or reject the Plan.

### 4.3.    **Class 3 - G*eneral Unsecured Claims***

(a)    *Classification*: Class 3 consists of General Unsecured Claims against the Debtor.

(b)    *Treatment*:

Except to the extent that a holder of an Allowed General Unsecured Claim has agreed to less favorable treatment of such Claim, each such holder shall receive payment in full with interest at the federal judgment rate on the Effective Date.  The Hagler Parties shall provide the Plan Administrator with up to $124,000 plus applicable interest at the Federal Rate five (5) business days prior to the Confirmation Hearing to make the distributions to the Allowed Class 3 General Unsecured Claims.

17

(c) *Voting*:

Class 3 is Unimpaired and is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

4.4.    **Class 4 - *Existing Equity Interests***

(a) *Classification*: Class 4 consists of Existing Equity Interests in the Debtor.

(b) *Treatment*:  Existing Equity Interests in Class 4 have consented to the terms of the Plan and will receive a payment of $100,000 constituting a partial return of its equity and receive no other distribution under the Plan.

(c) *Voting*:

Class 4 is Unimpaired and is conclusively presumed to have accepted the Plan pursuant to the Amended and Restated Restructuring Support Agreement.

# SECTION 5.        MEANS FOR IMPLEMENTATION.

5.1.    **Implementation of the Plan**

The implementation of the Plan is based on the irrevocable appointment of a Plan Administrator who shall be empowered on behalf of the Debtor, under the Debtor's confirmed Plan, to, among other things, provide its consent to (i) the execution by the landlord of a 99-year ground lease of the Property with Franklin Plaza II LLC post-confirmation, (ii) authorizing Franklin Plaza II LLC to encumber the ground lease with the Leasehold Mortgage (which shall be authorized under the Plan and shall be exempt from mortgage recording tax), (iii) having the Property encumbered with the Property Mortgage (which shall be exempt from the mortgage recording tax), and (iv) the subsequent transfer or sale of title of the Property, subject to the ground lease pursuant to the Plan, as set forth below.

Upon entry of the confirmation Order, the Debtor's beneficial 51% membership interest in 960 Franklin shall be irrevocably assigned to the Plan Administrator and held by the Plan Administrator for the purposes of either (i) selling the Property at Hagler's direction, or (ii) assigning the Debtor's beneficial 51% ownership interest in 960 Franklin to Hagler or his designee.  Upon assignment of the Debtor's 51% membership interest in 960 Franklin to the Plan Administrator, such interest shall not, under any circumstances, be thereafter assigned or transferred to the Debtor, 16972 or any party affiliated with any of them.

The Plan Administrator shall assign the beneficial 51% membership Interest to either (x) the purchaser of the Property with the sale proceeds to be distributed to Hagler (or an entity that he created or controls) upon the closing of the sale of the Property or (y) Hagler (or an entity created or controlled by him) if the Property is not sold within one year of the confirmation of the Plan.

The Plan Administrator shall pay the holders of Allowed Class 3 General Unsecured Claims in full with interest with money provided to it by the Debtor.

The Plan Administrator shall use the $150,000 Plan Fund to pay 16792 Holdings LLC $100,000 and Debtor's counsel up to the aggregate amount of $50,000, provided that (i) such payments, fees and expenses are approved by the Bankruptcy Court and (ii) the consensual Plan is confirmed.

### 5.2.  **Confirmation Order Provisions.**

The Confirmation Order shall authorize and approve the Restructuring Transaction under Sections 365, 1123, 1129 and 1146(a) of the Bankruptcy Code.

The Confirmation Order shall authorize the appointment of the Plan Administrator who shall be chosen jointly by the Plan Proponents and appointed under the Plan pursuant to its terms and the Confirmation Order to consummate the Restructuring Transaction set forth in Section 5 of the Amended and Restated Restructuring Support Agreement, which is attached hereto as Exhibit A and summarized in Section 5.1 above.  The Plan Administrator shall be authorized to take such other actions as may be necessary to implement the Plan.

The Plan Administrator shall be entitled to the payment of reasonable fees and reimbursement of expenses incurred after the Effective Date to be paid by Hagler without further order from, or approval by, the Court.  Such fees and expenses shall be pursuant to a written budget to be agreed upon by the Plan Administrator and Hagler.

### 5.3.  **Other Transactions.**

After the Effective Date, the Plan Administrator may engage in transactions in furtherance of the Plan and consummation of the Restructuring Transactions. Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without further action by the Debtor.

### 5.4.  **Withholding and Reporting Requirements.**

(a) *Withholding Rights*. In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b) *Forms*. Any party entitled to receive any property or any distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Person designated by the Plan Administrator an appropriate Form W-9 or (if the payee is a foreign Person,  Form W-8, unless such Person is exempt under the tax Code and so notifies the Plan Administrator. If such request is made and the holder fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the party funding the distributions under the Plan, and any Claim in respect of such distribution shall be discharged and forever barred from assertion against Hagler, the Hagler Parties and/ or the Debtor's Estate and its respective property.

5.5.    **Exemption From Certain Taxes:**

**Exemption from Stamp or Similar Taxes**.  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the execution of the 99-year lease and the sale of the Property (so long as such sale occurs no later than 18 months from entry of the Confirmation Order) shall be considered transfer(s) "under a plan confirmed under section 1129 of the Bankruptcy Code" and shall not be subject to any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due on the grant of the Ground Lease, Leasehold Mortgage, or the sale of the Property in connection with or in furtherance of the Plan and this Order, and the appropriate state or local government officials or agents shall forego collection of any such tax and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any

4857-0820-1556, v. 8

security, including the membership interest held by the Plan Administrator, and the making or delivery of any instrument of transfer under the Plan as confirmed by the Court (including an instrument of transfer executed in furtherance of the sale of the Property contemplated by the Plan), shall not be subject to tax under any law imposing a stamp or similar tax (including real estate transfer tax and mortgage recording tax) due on the sale of the Property (so long as such sale occurs no later than 18 months from entry of the Confirmation Order) in connection with or in furtherance of the Plan as confirmed by the Court and the funding requirements contained herein, shall not be subject to any state, local or federal law imposing such tax, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Transfer tax savings, if any, for the transactions contemplated by the Joint Plan and the mortgage tax savings for the mortgage on the property shall inure to the benefit of the Debtor and its estate and the parties to the respective transactions, which transactions shall include the Lease Transaction, the Leasehold Mortgage and the Sale Transaction made under and in accordance with this confirmed Plan.

### 5.6. **Effectuating Documents; Further Transactions.**

On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan on behalf of the Debtor and its Estate, the Hagler Parties or Franklin Plaza II LLC, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 5.7. **Preservation of Rights of Action.**

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Amended and Restated Restructuring Support Agreement, the Plan or by a Bankruptcy Court order, the Plan reserves any and all Causes of Action, except that any and all Causes of Action against Hagler or the Hagler Parties and Equity Interests are hereby waived and released, on  and after the Effective Date. The Plan Administrator may pursue such reserved Causes of Action in its sole discretion. No Entity may rely on the absence

4857-0820-1556, v. 8

of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Plan Administrator will not pursue any and all available Causes of Action against them (except that no claim or cause of Action shall be asserted or filed against Hagler, the Hagler Parties or Equity Interests). No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation. Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Plan Administrator (with the consent of the Plan Proponents) shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by confirmation of the Plan itself shall be resolved only by confirmation of the Plan itself.

### 5.8. **Closing of the Chapter 11 Case.**

After this Chapter 11 Case of the Debtor has been fully administered, the Plan Administrator shall seek authority from the Bankruptcy Court to close such Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 6.  GOVERNANCE

### 6.1. *Post-Effective Date Management.*

After the Effective Date, the Plan Administrator shall consummate the remaining transactions that compromise the Restructuring Transactions under the Plan and shall be responsible for the management of the Post-Effective Date Debtor.

### 6.2. *Limited Liability Company Form.*

On the Effective Date, the Debtor shall maintain its current entity form.

### 6.3. *Certificate of Organization and By-Laws*.

As of the Effective Date, only if necessary, the certificate of organization and by-laws of the Debtor shall be amended to the extent necessary to carry out the provisions of the Plan.

4857-0820-1556, v. 8

**SECTION 7.        DISTRIBUTIONS**.

7.1.    *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the transfer register for each of the Classes of Claims or Interests as maintained by the Debtor shall be deemed closed, and there shall be no further changes in the record of holders of any of the Claims or Interests. The Plan Administrator shall not have any obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

7.2.    *Date of Distributions.*

Except as otherwise provided herein, the Disbursing Agent shall make all distributions, if any, to holders of Allowed Claims as set forth in the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

The Debtor shall provide the Plan Administrator with money for a reserve in an amount sufficient to pay holders of Disputed Claims, if any, the amount such holders would be entitled to receive under the Plan if such Claims were to become Allowed Claims. In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Plan Administrator, as Disbursing Agent, shall make a final distribution to all holders of Allowed Claims.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

7.3.    *Delivery of Distributions.*

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Plan Administrator has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat,

4857-0820-1556, v. 8

abandoned, or unclaimed property laws to the contrary) to Hagler automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred. The Plan Administrator shall have no obligation to locate the current address for a returned distribution.

### 7.4. *Manner of Payment Under Plan.*

At the option of the Plan Administrator, any Cash payment to be made hereunder may be made by a check or wire transfer.

### 7.5. *Minimum Cash Distributions.*

The Plan Administrator shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100; provided, however, that if any distribution is not made pursuant to this Section 7.5, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim. The Plan Administrator shall not be required to make any final distributions of Cash less than $50 to any holder of an Allowed Claim. If either (a) all Allowed Claims (other than those whose distributions are deemed undeliverable hereunder) have been paid in full or (b) the amount of any final distributions to holders of Allowed Claims would be $50 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $2,500, then no further distribution shall be made by the Plan Administrator and any surplus Cash shall be utilized to pay any unpaid legal fees and expenses incurred by Hagler's counsel post-confirmation.

### 7.6. *Setoffs.*

The Plan Administrator may, but shall not be required to, set off against any Claim any Claims of any nature whatsoever that the Debtor and/or Post-Effective Date Debtor, as applicable, may have against the holder of such Claim; provided that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor and/or Post-Effective Date Debtor, as applicable, of any such Claim against the holder of such Claim.  Notwithstanding the foregoing, no such setoff (or other claim) shall be asserted or otherwise permitted against the Hagler Parties.

### 7.7. *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

4857-0820-1556, v. 8

### 7.8.   *Allocation of Distributions Between Principal and Interest.*

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.  The foregoing shall not apply to the treatment of the Hagler Allowed Claim.

### 7.9.   *Payment of Disputed Claims.*

As Disputed Claims are resolved pursuant to Section 8 hereof, the Plan Administrator shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date. Such distributions shall be made on the first Distribution Date that is at least forty-five (45) days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Plan Administrator in its sole discretion.

## SECTION 8.   PROCEDURES FOR DISPUTED CLAIMS.

### 8.1.   *Allowance of Claims.*

After the Effective Date, the Post-Effective Date Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under this Plan. Except as expressly provided in this Plan or in any order entered in this Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in this Chapter 11 Case allowing such Claim.  Pursuant to the Amended and Restated Restructuring Support Agreement, the Hagler Claim shall be an Allowed Claim.

### 8.2.   *Objections to Claims.*

As of the Effective Date, objections to and requests for estimation of, Claims against the Debtor may be interposed and prosecuted only by the Plan Administrator.  Such objections and requests for estimation shall be served and filed (a) on or before the 120th day following the later of (i) the Effective Date and (ii) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Plan Administrator.

### 8.3. *Estimation of Claims.*

The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Plan Administrator previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 8.4. *No Distributions Pending Allowance.*

If an objection to a Claim is filed as set forth in Section 8, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8.5. *Resolution of Claims.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or their Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Plan Administrator may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtor's Estate.  Notwithstanding the above, neither the Plan Administrator nor any other Person shall be authorized to object to the Hagler Claim.

### 8.6. *Disallowed Claims.*

All Claims held by persons or entities against whom or which the Debtor or the Plan Administrator, as applicable, has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due have been paid.  Notwithstanding the above, no Person shall assert a cause of action against Hagler or the Hagler Parties.

## SECTION 9.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 9.1.  *Assumption and Assignment of Executory Contracts and Unexpired Leases.*

Under the Restructuring Transactions, on the Effective Date, except as otherwise provided in a purchase agreement, the Plan or Confirmation Order, each Executory Contract and Unexpired Lease not previously rejected or assumed, other than the 99-year Ground Lease, shall be deemed automatically rejected by the Debtor.

### 9.2.  *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any Cure Obligation due under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date, subject to the limitation described below, by the Plan Administrator as an Administrative Expense Claim, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding (1) the amount of the Cure Obligation, (2) the ability to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Obligations required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that, the Plan Administrator and the counter-parties to any such Executory Contract of Unexpired Lease may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

At least fourteen (14) days before the Confirmation Hearing, the Debtor (in coordination with the other Plan Proponents) shall cause notice of proposed Cure Obligations to be sent to applicable counterparties to the Executory Contracts and Unexpired Leases. Any objection by such counterparty must be filed, served, and actually received by the Plan Proponents not later than ten (10) days after service of notice of the Debtor's proposed assumption and associated Cure Obligation. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed cure amount will be deemed to have assented to such Cure Obligation.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of such assumption. **Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity**.

### 9.3. *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtor's Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with the Bankruptcy Court and served on the Plan Proponents no later than fourteen (14) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Plan Proponents, no later than fourteen (14) days after service of the Debtor's proposed rejection of such Executory Contract or Unexpired Lease.

**Any holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in this Chapter 11 Case on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Debtor's Estate, or the Property for any of the**

28

4857-0820-1556, v. 8

foregoing without the need for any objection by the Plan Administrator, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtor's prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

9.4. *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during this Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

9.5. *Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Plan Proponents that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor's Estate has any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or Plan Administrator, as applicable, shall have 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**SECTION 10.    CONDITIONS PRECEDENT TO THE CONFIRMATION HEARING AND THE EFFECTIVE DATE.**

10.1. *Condition Precedent to the Confirmation Hearing.*

The occurrence of the Confirmation Hearing is subject to the following condition precedent:

(a)     the Plan Supplement, if any, has been filed.

10.2   *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)     the Bankruptcy Court shall have entered the Confirmation Order which shall not be subject to any stay;

(b)     Upon entry of the confirmation order, the Debtor's beneficial  51% membership interest in 960 Franklin, shall be irrevocably assigned to the Plan Administrator and held by the Plan Administrator for the purposes of either (i) selling the Property at Hagler's direction or (ii) assigning the Debtor's beneficial 51% ownership interest in 960 Franklin to Hagler or his designee. Upon assignment of the Debtor's 51% membership interest in 960 Franklin to the Plan Administrator, such interests shall not, under any circumstances, be thereafter assigned or transferred to the Debtor, 16972 or any party affiliated with any of them.

(c)      all actions, documents and agreements necessary to implement and consummate the Plan, including, without limitation, entry into the documents contained in the Amended and Restated Restructuring Support Agreement and Plan Supplement required to be executed prior to the Confirmation Date, each in form and substance reasonably satisfactory to the Debtor and Hagler, and the transactions and other matters contemplated thereby, shall have been effectuated or executed, and all conditions precedent to the effectiveness of such actions, documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

(d)     all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions.

10.3.   *Waiver of Conditions Precedent.*

Each of the conditions precedent to the Effective Date in Section 10.2 other than the condition set forth in section 10.2(a) may be waived in a joint writing signed by the Plan Proponents

### 10.4. *Effect of Failure of Conditions to Effective Date.*

If the Confirmation Order is vacated due to a failure of a condition to the Effective Date to occur (i) no distributions under the Plan shall be made, and (ii) the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Plan had not been confirmed..

## SECTION 11.    EFFECT OF CONFIRMATION.

### 11.1. *Vesting of Assets.*

All Property of the Debtor shall vest in the Plan Administrator free and clear of all Liens, Claims, and encumbrances subject to the Plan Administrator performing the obligations set forth in this Plan.

As of the Closing Date, all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Any other asset of the Debtor (other than those set forth in the Amended and Restated Restructuring Support Agreement and under this Plan), shall vest in the Post-Effective Date Debtor free and clear of all Liens, Claims and encumbrances.

### 11.2. *Release of Liens.*

Except as otherwise provided in the Plan (including Section 11.1) or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, subject to all the Restructuring Transactions being consummated, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall revert to the Debtor and/or the Estate (subject to the rights of the Hagler Parties).

### 11.3. *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable

4857-0820-1556, v. 8

subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Plan Administrator reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 11.4.    *Discharge of Claims and Termination of Interests.*

Except as otherwise provided in the Plan (including Section 11.1), effective as of the Effective Date; (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property or Estate (b) all Claims and Interests shall be satisfied, discharged and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (c) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Nothing herein shall affect the rights of the parties under the Amended and Restated Restructuring Support Agreement.

### 11.5.    *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during this Chapter 11 Case under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 11.6.    *Plan Injunction.*

Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim held against the Debtor as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor, from the Property, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan. Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an

injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtor, from the Property, or from property of the Estate, any claim, any obligation or debt that was held against the Debtor by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan. The entry of the Confirmation Order shall permanently enjoin all creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims. Nothing herein shall affect the rights of the parties under the Amended and Restated Restructuring Support Agreement.

### 11.7. *Limitation of Liability.*

To the fullest extent permitted under Section 1125(e) of the Bankruptcy Code, neither the Exculpated Parties nor any of their respective direct and indirect officers, directors, trustees, members and managing members or employees (acting in such capacity) nor any professional person employed by any of them (including attorneys and financial advisors), shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the negotiation, formulation, preparation, dissemination, confirmation, performance or consummation of the Plan, the Disclosure Statement, the Plan Supplement, the Amended and Restated Restructuring Support Agreement (including the Lease Transaction and Sale Transaction) and Debtor's restructuring efforts, or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan. Each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement, except in the case of actual fraud, gross negligence, or willful misconduct. The Exculpated Parties have, and upon closing of the Chapter 11 Case and the Effective Date shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Nothing in this Section 11.8 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin

the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Debtor or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate Debtor or any of its respective members, officers, directors, employees, attorneys, advisors, agents, representatives and assigns from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority.

    **11.8**    *Release.*

    Except as otherwise provided in the Plan or the Amended and Restated Restructuring Support Agreement, on the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan in connection with the Restructuring Transactions, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and Hagler, the Hagler Parties and the Equity Interests and each other creditor and Interest holder on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its creditors or Interest holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of creditors or Interest holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims creditors or Interest holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan).  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article 9 of the Plan.

    Effective as of the Effective Date, the Debtor, on behalf of itself, and, to the fullest extent permitted by law, its respective current and former affiliates, successors, partnerships, and related parties and persons (including partners, family members, any related-party tenants and each creditor and Interest holder of the Debtor (with respect to any claims such creditor or Interest holder may have asserted derivatively on behalf of the Debtor) release and discharge the Hagler Parties and the Equity Interests and, each of their respective current and former parents, affiliates, related parties, insiders, agents, members, subsidiaries, successors, predecessors, assignors and assigns, and each of their respective

current and former officers, directors, employees, agents, assigns, assignees, affiliates, members, partnerships, partners, trustees, trusts, and attorneys, from any and all known and unknown claims, debts, disputes, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, sums of money due, judgments, suits, amounts, matters, issues and charges of any kind whatsoever (including, but not limited to, any claims for interest, attorneys' fees, and any other costs, expenses, amounts, or liabilities whatsoever), whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, foreseen or unforeseen, whether individual or derivative in nature, whether arising under federal or state statutory, common, or administrative law, or any other law, rule, or regulation, whether foreign or domestic, whether or not apparent or yet to be discovered, or which may hereafter develop, or any claims based on the negotiation, submission and confirmation of the Plan).

11.9    Injunction

Except with respect to the obligations arising under the Amended and Restated Restructuring Support Agreement, the Plan or the Confirmation Order, and except as otherwise expressly provided in the Amended and Restated Restructuring Support Agreement, the Plan or the Confirmation Order, all Entities that held, hold, or may hold Claims or Interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined from and after the Effective Date, to the fullest extent consistent with section 362(b)(4) of the Bankruptcy Code, from taking any of the following actions against, as applicable, the Debtors, the Plan Proponents or other Exculpated Parties (collectively, the "Released Parties") (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve, any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

11.10. *Plan Supplement.*

The Plan Supplement, if any, shall be filed with the Clerk of the Bankruptcy Court by no later than five (5) business days prior to the Confirmation Hearing. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.

## SECTION 12.    RETENTION OF JURISDICTION.

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to this Chapter 11 Case for, among other things, the following purposes:

(a) to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting there from;

(b) to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(c) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d) to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e) to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f) to adjudicate any dispute related to (i) the Sale Transaction, (ii) the Leasehold Mortgage, (iii) the Property Mortgage and/or (iv) the Lease Transaction;

(g) to adjudicate any dispute related to either the Restructuring Transactions or the Amended and Restated Restructuring Support Agreement;

(h) to adjudicate any dispute related to the delivery of the Property;

(i) to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

4857-0820-1556, v. 8

(j)  to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(k)  to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(l)  to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing, including without limitation, the Amended and Restated Restructuring Support Agreement;

(m)   to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(n)  to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(o)  to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations of the Debtor's tax liability under section 505(b) of the Bankruptcy Code);

(p)  to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(q)  to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(r)  to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(s)   to enter a final decree closing these Chapter 11 Cases;

(t)  to hear and determine any motion for the entry of an order in aid of confirmation of the Plan;

(u)  to enforce all orders previously entered by the Bankruptcy Court;

(v)  to recover all assets of the Debtor and property of the Debtor's Estate, wherever located; and

(w) to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtor's Estate pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 13.        MISCELLANEOUS PROVISIONS.

### 13.1.  *Payment of Statutory Fees.*

On the Effective Date and thereafter as may be required, the Debtor or Post-Effective Date Debtor, as applicable, shall pay all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to §3717 of Title 31 of the United States Code for this Chapter 11 Case, provided, however, that after the Effective Date such fees shall only be payable with respect to this Chapter 11 Case until such time as a final decree is entered closing this Chapter 11 Case, a Final Order converting such case to a case under Chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing this Chapter 11 Case is entered.

### 13.2.  *Substantial Consummation*.

The Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code either (i) upon consummation of all the Restructuring Transactions under the Amended and Restated Restructuring Support Agreement, which includes the Lease Transaction and Sale Transaction.

### 13.3.  *Amendments.*

(a)    *Plan Modifications*. The Plan may be amended, modified or supplemented only by a writing signed by both Plan Proponents, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Plan Administrator may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)    *Other Amendments.* Before the Effective Date, the Debtor, after obtaining the written consent of the other Plan Proponent, may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

### 13.4.  *Revocation or Withdrawal of the Plan.*

The Debtor may only revoke or withdraw the Plan if it has first obtained the written consent of the other Plan Proponents.  If the Plan is revoked or withdrawn the Plan, or if confirmation or Consummation does not otherwise occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan and the assumption or rejection of any Executory Contracts or Unexpired Leases under the Plan, and any documents executed or delivered pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor, the Debtor's Estate, the Plan Proponents or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor, the Debtor's Estate, or any other Entity.  Any revocation of withdrawal of the Plan shall not affect the validity and enforceability of the Amended and Restated Restructuring Support Agreement.

### 13.5. *Severability of Plan Provisions Upon Confirmation*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor or the Post-Effective Date Debtor (as the case may be) and the Hagler Parties; and (3) non-severable and mutually dependent.

### 13.6. *Additional Documents.*

On or before the Effective Date, either Proponent (with the written consent of the other Plan Proponent) may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

4857-0820-1556, v. 8

### 13.7. *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the holders of Claims and Interests, the Exculpated Parties, and each of their respective successors and assigns.

### 13.8. *Successor and Assigns*.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

### 13.9. *Entire Agreement*.

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan. Nothing herein shall affect the rights of the Hagler (or the Hagler Parties) under the Amended and Restated Restructuring Support Agreement, which is incorporated into this Plan.

### 13.10. *Notices.*

All notices, requests and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

All notices hereunder shall be deemed given if in writing and delivered by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

    (a)    if to the Debtor, to:

> **960 Franklin Owner LLC**
> c/o 16972 Holdings LLC
> 3284 N. 29th Court
> Hollywood, FL 33020
> Attn: David Goldwasser

4857-0820-1556, v. 8

with copies (which shall not constitute notice) to:

**Backenroth Frankel & Krinsky LLP**
800 3rd Avenue, 11th Floor.
New York, New York 10022
Attention: Mark Frankel, Esq.
mfrankel@bkflaw.com

-and-

(b)    if to the Hagler Parties:

Daryl Hagler
4770 White Plains Road
Bronx, New York 10470

-and-

**Leech Tishman Robinson Brog, PLLC**
875 Third Avenue, 9th Floor.
New York, New York 10022
Attention: Fred B. Ringel, Esq.
fringel@leechtishman.com

After the Effective Date, the Plan Administrator shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, that they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

*[signature block on next page]*

**Dated:** New York, New York
April 28, 2023

**960 FRANKLIN OWNER LLC**
By: 16972 Holdings LLC

By:  /s/ David Goldwasser
David Goldwasser, Authorized Signatory

**960 FRANKLIN LLC**

By:/s/ Daryl Hagler
**Daryl Hagler**

/s/ Daryl Hagler
**Daryl Hagler , individually**

[Plan of Reorganization Signature Page]

4857-0820-1556, v. 8