**EXHIBIT A**

THIS RESTRUCTURING SUPPORT AGREEMENT IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS RESTRUCTURING SUPPORT AGREEMENT SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

## FIRST AMENDED AND RESTATED RESTRUCTURING SUPPORT AGREEMENT

This First Amended and Restated Restructuring Support Agreement (including all exhibits and schedules attached hereto, as each may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof, this "**Agreement**") is made and entered into as of April 4, 2023, by and among the following parties (each of the foregoing described in sub-clauses (i), (ii), (iii), (iv) and (v), a "**Party**" and, collectively, the "**Parties**"):

   i. 960 Franklin Owner LLC ("**Owner**" or "**Debtor**"), which is the present purported owner of 51% of the membership interests in 960 Franklin LLC;

   ii. Franklin Plaza II LLC ("FP") the proposed tenant pursuant to the Ground Lease;

   iii. 16972 Holdings LLC ("16872) the purported sole beneficial owner of the Debtor;

   iv. 960 Franklin LLC, a single-purpose entity ("960 Franklin"); and

   v. Daryl Hagler, the 49% owner of the issued and outstanding membership interests in 960 Franklin and claims ownership of the 51% membership interest in 960 Franklin presently owned by the Debtor ("Hagler" and together with 960 Franklin are sometimes collectively referred to as "**Hagler Parties**").

### RECITALS

**WHEREAS**, the Parties have engaged in good faith, arm's-length negotiations regarding the restructuring of the Debtor, including resolution of their respective claims against each other through (i) the sale of the Premises (defined below)

1

under the Plan or (ii) the assignment of the Debtor's claimed 51% interest in 960 Franklin to Hagler or his designee and (iii) the entry of a 99-year ground lease for the Premises by Franklin Plaza II LLC  in the form annexed hereto as **Exhibit A** (**"Ground Lease"**);

**WHEREAS**, Hagler is a secured creditor of the Debtor holding a secured claim in the amount of $53,500,000 against the Debtor for the purchase price Hagler advanced for the purchase of the Premises (**"Hagler Claim"**);

**WHEREAS**, under the Plan, the parties to this agreement will agree that Hagler's claim shall be allowed in full and treated in accordance with the terms of this Agreement;

**WHEREAS**, the Parties desire to effectuate a restructuring of the Debtor by a sale and lease of the Premises through the confirmation and consummation of a chapter 11 plan of reorganization (as may be amended or supplemented from time to time in accordance with the terms of this Agreement, the "**Plan**") and certain related transactions, all of which shall be on the terms and conditions described in this Agreement (such transactions, the "**Restructuring Transactions**");

**WHEREAS**, on November 2, 2022 ("**Petition Date**") the Debtor, commenced a voluntary reorganization case (the "**Chapter 11 Cases**") under Chapter 11 of title 11 of the United States Code, 11 U. S. C. §§101-1532 (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Eastern District of New York, and will promptly file the Plan and a related disclosure statement (as may be amended or supplemented from time to time in accordance with the terms of this Agreement, the "**Disclosure Statement**") prior to soliciting votes on the Plan in accordance with Section 1125 of the Bankruptcy Code.

**WHEREAS,** the Hagler Parties have agreed to the restructuring and this Agreement, provided that the Plan containing these terms is confirmed on or before April 14, 2023 and becomes effective on or before May 5, 2023.

**WHEREAS** the following sets forth the agreement among the Parties concerning their respective rights and obligations in respect of the Restructuring Transactions.

**NOW, THEREFORE**, in consideration of the covenants and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

## *AGREEMENT*

**Section 1.   *Agreement Effective Date*.** This Agreement shall become effective and binding upon each of the Parties at 12:00 a.m. (prevailing Eastern Time), on the date on which: (a)(i) the Debtor and FP shall have executed and delivered counterpart signature pages of this Agreement to the Hagler Parties, and (ii) the Hagler Parties shall have executed and delivered to the Debtor counterpart signature pages of this Agreement; and (c) the conditions set forth in this Section 3(i) have been satisfied (such date, the "**Agreement Effective Date**").

**Section 2.   *Definitive Documentation*.**

2.01   The definitive documents and agreements governing the Restructuring Transactions (collectively, the "**Restructuring Documents**") shall consist of this Agreement and each of the following documents:

(i)      the proposed Plan (and all exhibits thereto).

(ii)     the proposed Confirmation Order and pleadings in support of entry of the Confirmation Order.

(iii)    the Disclosure Statement, the other solicitation materials in respect of the Plan (such materials, collectively, the "**Solicitation Materials**"), the motion to approve the Disclosure Statement, and the order entered by the Bankruptcy Court approving the Disclosure Statement and Solicitation Materials as containing, among other things, "adequate information" as required by Section 1125 of the Bankruptcy Code (the "**Disclosure Statement Order**").

(iv)     all other documents that are contained in any supplements filed in connection with the Plan, including, but not limited to, the form of ground lease (collectively, the "**Plan Supplement**"); and

(v)      any documents relating to corporate governance matters.

2.02   Certain of the Restructuring Documents remain subject to negotiation and completion and shall, upon completion, contain terms, conditions, representations, warranties, and covenants consistent with the terms of this Agreement, and shall otherwise be in form and substance acceptable to the Debtor, FP, and the Hagler Parties.

**Section 3.   *Milestones*.** (a)      The Debtor shall implement the Restructuring Transactions in accordance with the milestones set forth herein (the "**Milestones**"). Each Milestone may only be extended with the express prior written consent of the Hagler Parties. In connection with carrying out the following Milestones (as defined below), the Debtor shall provide the Hagler Parties with copies of the material documents prepared to achieve such Milestones in advance of their submission to the Bankruptcy Court:

3

(i)        On or before March 7, 2023, the Debtor and Hagler shall jointly (a) file a Plan in a form and manner acceptable to the Hagler Parties and a disclosure statement for such plan where the Debtor and Hagler Parties are the joint proponents of the Plan, (b) a joint motion to preliminarily approving the disclosure statement and permit solicitation of votes with respect to the plan and fixing a date for confirmation of the Plan and (c) promptly seek confirmation of same;

(ii)        On or before April 14, 2023, submit the form of proposed order confirming the Plan;

(iii)        No later than 5 business days after entry of the Confirmation Order and the appointment of the Plan Administrator (which Confirmation Order has been approved by the Hagler Parties in all respects), the Plan Administrator on behalf of the Debtor shall execute the Lease to evidence his consent and approval as the majority member to 960 Franklin's execution of the 99-year ground lease in the form annexed hereto as Exhibit A with FP.

(iv)        On or before May 5, 2023, cause the Plan to become effective

**Section 4.**    *Commitments Regarding the Restructuring Transactions*.

4.01    <u>Commitment of 960 Franklin and Hagler.</u>

(a)        From the Agreement Effective Date until the occurrence of a Termination Date (as defined in Section 10.05) applicable to the Hagler Parties, each of them agrees (on a several but not joint basis) to:

(i)        to the extent permitted to vote to accept or reject the Plan (and subject to the actual receipt by the Hagler Parties of the Disclosure Statement and the Solicitation Materials, in each case, approved by the Bankruptcy Court as containing "adequate information" as such term is defined in section 1125 of the Bankruptcy Code), vote each of its claims (the "**Hagler Claims**") to accept the Plan by delivering their duly executed and completed ballot(s) accepting the Plan on a timely basis;

(ii)        negotiate in good faith the Restructuring Documents and use reasonable best efforts to take any and all necessary and appropriate actions to implement this Agreement through the Plan of Reorganization

(iii)        use reasonable best efforts to support and take all actions necessary or appropriate to facilitate the solicitation, confirmation and consummation of the Plan and the Restructuring Transactions.

(iv)        not object to or join in any objection to, and use reasonable best efforts to support approval of, the Solicitation Materials, the

4

Disclosure Statement Order, and the order confirming the Plan (the "**Confirmation Order**").

(v)     not change or withdraw (or cause to be changed or withdrawn) any vote(s) to accept the Plan; *provided, however,* that if a Termination Date occurs before consummation of the Restructuring Transactions, all votes tendered by the Hagler Parties to accept the Plan shall be immediately revoked and deemed void *ab initio* in accordance with Section 10; and

(vi)    not directly or indirectly (A) object to, delay, impede, or take any other action to interfere with the acceptance, implementation or consummation of the Restructuring Transactions, or otherwise take any action which would, or which would reasonably be expected to, breach or be inconsistent with this Agreement, (B) propose, file, support, or vote for any dissolution, winding up, liquidation, reorganization, assignment for the benefit of creditors, merger, transaction, consolidation, business combination, joint venture, partnership sale of assets, sale of the Premises, sale of the membership interest the Debtor purports to hold in 960 Franklin, financing (debt or equity), restructuring of the Debtor, other than the Restructuring Transactions (each, an "**Alternative Transaction**"), or (C) support, encourage or direct any other person or entity to take any action contemplated in this Section 4.01(a)(vi).

(b)     Notwithstanding the foregoing, nothing in this Agreement and neither a vote to accept the Plan by the Hagler Parties shall: (i) be construed to the prohibit Hagler Parties from contesting whether any matter, fact, or thing is a breach of, or is inconsistent with, this Agreement or the other Restructuring Documents, or exercising any rights (including any consent and approval rights contemplated under this Agreement or the other Restructuring Documents) or remedies specifically reserved herein or therein; (ii) be construed to prohibit or limit the Hagler Parties from appearing as a party-in-interest in any matter to be adjudicated in the Chapter 11 Case, so long as, during the effective period, such appearance and the positions advocated in connection therewith are not inconsistent with this Agreement and are not for the purpose of hindering, delaying or preventing the consummation of the Restructuring Transactions; provided, that any delay or other impact on consummation of the Restructuring Transactions contemplated by the Plan caused by the Hagler Parties' opposition to (x) any relief that is inconsistent with such Restructuring Transactions, (y) a motion by the Debtor to enter into a material executory contract, lease or other arrangement outside of the ordinary course of its business without obtaining the prior written consent of the Hagler Parties, not to be unreasonably withheld, or (z) any relief that is adverse to the interests of the Hagler Parties sought by the Debtor (or any other party), shall not constitute a violation of this Agreement; or (iii) impair or waive the rights of the Hagler Parties to assert or raise any objection permitted under this Agreement in connection with any hearing on confirmation of the Plan or in the Bankruptcy Court.

4.02    <u>Commitment of the Debtor.</u>

(a)    From the Agreement Effective Date until the occurrence of a Termination Date (as defined in Section 10.05) applicable to the Debtor, the Debtor agrees to:

(i)    negotiate in good faith all Restructuring Documents and take any and all necessary and appropriate actions to implement this Agreement through the Plan of Reorganization;

(ii)    obtain orders of the Bankruptcy Court to consummate the Restructuring Transactions, including approval of the Solicitation Materials, the Disclosure Statement Order, the Plan, and the Confirmation within the timeframes contemplated under this Agreement and in compliance with each Milestone;

(iii)    execute and deliver any other required agreements to effectuate and consummate the Restructuring Transactions;

(iv)    use reasonable best efforts to obtain any and all required regulatory and/or third-party approvals for the Restructuring Transactions;

(v)    timely file a formal objection, in form and substance reasonably acceptable to the Hagler Parties, to any motion filed with the Bankruptcy Court by a party seeking the entry of an order (1) directing the appointment of a trustee or examiner (with expanded powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code), (2) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (3) dismissing the Chapter 11 Case, or (4) modifying or terminating the Debtor's exclusive right to file and/or solicit acceptances of a plan of reorganization, as applicable;

(vi)    promptly notify the Hagler Parties in writing of any governmental or third-party complaints, litigations, investigations or hearings (or communications indicating that the same may be contemplated or threatened);

(vii)    timely file a formal objection, in form and substance reasonably acceptable to the Hagler Parties, to any motion, application, or adversary proceeding (A) challenging the validity, enforceability, perfection, or priority of, or seeking voidance or subordination of, any portion of the claims of either Hagler Party, or (B) asserting any other cause of action against and/or with respect or relating to such claims of the Hagler Parties;

(viii)    agree that it will not object to the Hagler Claim which shall be deemed allowed under the Plan in its full amount as a secured claim and shall not be impaired under the Plan;

(ix)    to the extent that any legal or structural impediment arises that would prevent, hinder, or delay the consummation of the transactions

6

contemplated in this Agreement or the Plan, negotiate in good faith appropriate additional or alternative provisions to address any such impediment, in consultation with the Hagler Parties; *provided*, *however*, that the economic outcome for the Hagler Parties, the anticipated timing of confirmation and the Plan Effective Date, and other materials terms as contemplated herein must be substantially preserved and not altered without the written consent of the Hagler Parties;

(x)     if the Debtor knows of a breach by any Debtor in respect of any of the obligations, representations, warranties, or covenants of the Debtor set forth in this Agreement, furnish prompt written notice (and in any event within three (3) days of obtaining such actual knowledge) to the Hagler Parties and promptly take all remedial action necessary to cure such breach by the Debtor;

(xi)    timely file a formal response to any motion or other pleading filed with the Bankruptcy Court by any party objecting to approval of the Solicitation Materials, the Disclosure Statement Order, the Confirmation Order, or any other Restructuring Documents contemplated under this Agreement;

(xii)   operate its business in the ordinary course, taking into account the Restructuring Transactions;

(xiii)  cause the class consisting of equity interests to agree that the class of interests consisting of equity holders are deemed unimpaired by the Plan or, if necessary, consent to the treatment of equity interests provided such treatment is substantially consistent with the terms of this agreement.

(xiv)   not modify the Plan or any other Restructuring Documents, in whole or in part, in a manner that is inconsistent with this Agreement, except as provided in Section 14 hereof; and

(xv)    not directly or indirectly (A) delay, impede, or take any other action to interfere with the acceptance, implementation, or consummation of the Restructuring Transaction, or otherwise take any action which would, or which would reasonably be expected to, breach or be inconsistent with this Agreement, (B) propose, file, seek, solicit, or support any Alternative Transaction, or (C) support, encourage or direct any other person or entity to take any action contemplated in (A) and (B) of this subparagraph.

(b)     Notwithstanding the foregoing, without limiting the rights and obligations of the Parties under Section 10 (including, without limitation, the Debtor's termination rights under Section 10.02), (i) if any, the Debtor receives a proposal or expression of interest regarding any Alternative Transaction during the period from the Agreement Effective Date until the occurrence of a Termination Date (as defined in Section 10.05) applicable to the Debtor, the Debtor shall no later than one business day, and in all events, before taking any action regarding such proposed Alternative Transaction, notify counsel to the Hagler Parties of any such proposal

7

or expression of interest, with such notice to include the material terms thereof, including the identity of the person or group of persons involved, (ii) the Debtor shall promptly furnish to counsel to the Hagler Parties, copies of any written offer, oral offer, or any other information that they receive relating to the foregoing and shall promptly inform counsel to the Hagler Parties of any material changes to such proposals, and (iii) the Debtor shall not enter into any confidentiality agreement with a party interested in an Alternative Transaction unless such party consents to identifying and providing to counsel to the Hagler Parties (under a reasonably acceptable confidentiality agreement) the information contemplated under this Section and the Hagler Parties agree to the Debtor entering into such agreement.

**Section 5.    Terms of Restructuring Transactions.**

**5.01.** The terms of the Restructuring Transaction are set forth in this Section 5.

(a)    The Restructuring Transactions include the irrevocable appointment of a Plan Administrator who shall be empowered on behalf of the Debtor, under the Debtor's Confirmed Plan, to provide its consent to (i) the execution by the landlord of a 99-year ground lease of the Premises (as defined below) pursuant to the Debtor's Confirmed Plan, (ii) authorizing FP to consent to the tenant under the lease encumbering the ground lease with a leasehold mortgage, which ground lease mortgage shall be authorized under and in accordance with the Debtor's Confirmed Plan ("**Leasehold Mortgage**"), (iii) the encumbering of the Premises by a mortgage under and in accordance with the Plan ("**Premises Mortgage**") and (iv) the subsequent transfer or sale of the Premises subject to the ground lease pursuant to the Debtor's Confirmed Plan. The foregoing transactions shall cover the leasing, encumbering and disposition of the following two properties:

**Premises 1 - Block 1192, Lots 41 and 46:** 960 Franklin executed a contract of sale dated July 19, 2022, as amended by First Amended to Contract of Sale on or about August 9, 2022 (as amended, "**Contract 1**") with HPG Associates, Inc. ("Underlying Seller 1"), whereby 960 Franklin had the right to purchase the premises designated as Block 1192, Lots 41 and 46, in Kings County, New York ("**Premises 1**"); and

**Premises 2 - Block 1192, Lot 40:** 960 Franklin executed a contract of sale dated July 19, 2022, as amended by First Amendment to Contract of Sale dated on or about August 9, 2022 (as amended, "**Contract 2**", together with Contract 1, collectively referred to herein as the "**Contracts**") with Brooklyn 122A Montgomery LLC ("Underlying Seller 2", together with Underlying Seller 1, collectively referred to herein as the "**Underlying Sellers**"), whereby 960 Franklin had the right to purchase the premises designated as block 1192, Lot 40, in Kings County, New York ("**Premises 2";** together with Premises 1, collectively referred to herein as the "**Premises**").

(b)    The Plan shall include, but is not limited to, the following terms:

(i)    The Irrevocable Appointment of a Plan Administrator ("**Plan Administrator**") chosen by the Debtor and Hagler and appointed under the Plan pursuant to its terms and the Confirmation Order, to authorize and/or consent to the consummation of the Restructuring Transactions set forth in Section 5 of this Agreement. The Plan Administrator's duties and obligations shall include:

(a) to serve as the Debtors' sole authorized agent for the purpose of exercising the rights as owner of 51% Membership Interests in 960 Franklin to consenting to the execution of the documents reasonably necessary to consummate (i) the Ground Lease with FP, (ii) the Leasehold Mortgage, and (iii) the Premises Mortgage and (iv) to transfer the Premises  identified in section 5.2(a) of this Agreement ("**Sale Transaction**") as may be designated in writing to Hagler or to his designee(s) as provided for in this Agreement and

(b) file objections to and, with the consent of the Hagler Entities, settle any Claims, including claims for Professional Fees.

(c)  to maintain, preserve and maximize the value of and/or otherwise safeguard the Premises pending consummation of the Sale Transaction contemplated by this Agreement.

(d) take such actions (i) as reasonably requested by the Hagler Entities with respect to the Premises, including (x) actions in furtherance of the rejection or termination of any Executory Contracts or Unexpired Leases, (y) entering into short-term agreements with parties identified by the Hagler Entities for the use or lease of any of the Premises or (z) to maintain, preserve, maximize the value of and/or otherwise safeguard the Premises pending consummation of the Sale Transaction(s), which costs shall be approved by the Hagler Entities and any costs so paid shall be treated as funding of amounts under the Plan by the Hagler Entities, and shall be repaid from the proceeds of the Sale Transaction and (ii) to provide access to the Premises to representatives of the Hagler Entities and/or their designees, or to  Franklin Plaza II LLC as requested from time to time by the Hagler Entities or

9

FP, as applicable, prior to the consummation of the
Sale Transaction(s); and

(e) close the Chapter 11 Cases as requested by
the Hagler Entities.

(ii)    The Plan Administrator shall exercise the membership
interests to authorize consent to encumbering the 99-year ground lease with a
leasehold mortgage under and in accordance with the terms of the Lease and
the Plan, which leasehold mortgage shall be exempt from mortgage recording
taxes pursuant to section 1146 of the Bankruptcy Code.

(iii)    The Plan Administrator (defined herein) shall exercise
the membership interests to authorize the encumbering the Premises by a
mortgage under and in accordance with the terms of the Plan which mortgage
shall be exempt from mortgage recording taxes.

(iv)    sell the Premises subsequent to entry of the
Confirmation Order, subject to the 99-year ground lease and any leasehold
mortgage encumbering the Lease, pursuant to the Confirmed Plan of
Reorganization.

(v)    Upon entry of the confirmation order, the Debtor's
beneficial  51% membership interest in 960 Franklin, shall be irrevocably assigned
to the Plan Administrator and held by the Plan Administrator for the purposes of
either (i) selling the Premises at Hagler's direction  or (ii) assigning the Debtor's
beneficial 51% ownership interest in 960 Franklin to Hagler or his designee. Upon
assignment of the Debtor's 51% membership interest in 960 Franklin to the Plan
Administrator, such interests shall not, under any circumstances, be thereafter
assigned or transferred to the Debtor, 16972 or any party affiliated with any of
them.

(vi)    The Plan Administrator shall assign the beneficial  51%
membership Interest to either (x) the purchaser of the Premises with the sale
proceeds to be distributed to Hagler (or an entity that he created or controls) upon
the closing of the sale of the Premises or (y) to Hagler (or an entity created or
controlled by him) if the Premises are not sold within one year of the confirmation of
the Plan.

(vii)    the Plan shall contain the following provisions (or if
amended, the consent of the Hagler Parties is required).

**Exemption from Stamp or Similar Taxes**.  To the maximum
extent provided by section 1146(a) of the Bankruptcy Code, the
execution of the Ground Lease and the sale of the Premises shall
be considered  transfer(s) "under a plan confirmed under section

1129 of the Bankruptcy Code" and shall not be subject to any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax due on the grant of the Ground Lease, Leasehold Mortgage, the Premises Mortgage or the Sale of the Premises in connection with or in furtherance of the Plan and this Order, and the appropriate state or local government officials or agents shall forego collection of any such tax and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security, including the membership interest held by the Plan Administrator,  and the making or delivery of any instrument of transfer under the Plan as confirmed by the Court (including an instrument of transfer executed in furtherance of the Sale of the Premises contemplated by the Plan), shall not be subject to tax under any law imposing a stamp or similar tax (including real estate transfer tax and mortgage recording tax) due on the sale of the Premises in connection with or in furtherance of the Plan as confirmed by the Court and the funding requirements contained herein, shall not be subject to any state, local or federal law imposing such tax, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

Transfer tax savings, if any, for the transactions contemplated by the Plan and the mortgage tax savings for the mortgage on the Premises shall inure to the benefit of the Hagler Parties and the mortgage recording tax savings, if any, with respect to the Leasehold Mortgage shall inure to the benefit of FP.

**5.02** *Treatment of Equity Interests under the Plan.*

(a) Equity Interest shall be deemed unimpaired under the Plan and shall receive the treatment set forth in section 12 hereof.

## Section 6. Representations and Warranties of the Hagler Parties

The Hagler Parties represent and warrant for themselves and not any other person or entity that the following statements are true, correct, and complete, to the best of their actual knowledge,  as of the date hereof:

(a)    Hagler is the beneficial owner of the Hagler Claims.

(b)    Hagler has the full power and authority to act on behalf of, vote, and consent to matters concerning the Hagler Claims;

**Section 7.** <u>Mutual Representations and Warranties</u>. Each (i) Hagler Party and (ii) Debtor, on a joint and several bases, hereby represent and warrant for themselves and not any other Person or Entity that the following statements are true, correct, and complete, to the best of their actual knowledge, as of the date hereof.

7.01    <u>Enforceability</u>. 960 Franklin and the Debtor are validly existing and in good standing under the laws of the state of their respective organizations, and this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by applicable laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

7.02    <u>No Consent or Approval</u>. Except as expressly provided in this Agreement, the Plan or the Bankruptcy Code, no consent or approval is required by any other Person or Entity in order for it to effectuate the Restructuring Transactions contemplated by, and perform the respective obligations under, this Agreement.

7.03    <u>Power and Authority</u>. Except as expressly provided in this Agreement and subject to applicable law, it has all requisite corporate or other power and authority to enter into, execute, and deliver this Agreement and, to effectuate the Restructuring Transactions contemplated by, and perform its respective obligations under, this Agreement.

7.04    <u>Governmental Consents</u>. Except as expressly set forth herein and with respect to the Debtor's execution and performance of this Agreement (and subject to necessary Bankruptcy Court approval and/or regulatory approvals associated with the Restructuring Transactions), the execution, delivery, and performance by it of this Agreement does not, and shall not, require any registration or filing with consent or approval of, or notice to, or other action to, with or by, any federal, state, or other governmental authority or regulatory body.

7.05    <u>No Conflicts</u>. The execution, delivery, and performance of this Agreement does not and shall not: (a) violate any provision of law, rules, or regulations applicable to it or any of its subsidiaries in any material respect; (b) violate its certificate of incorporation, bylaws, or other organizational documents or those of any of its subsidiaries; or (c) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any contractual obligation to which it is a party, which conflict, breach, or default, would have a material adverse effect on the Restructuring Transactions.

7.06 <u>Fiduciary Duties</u>. It has no actual knowledge of any event that, due to any fiduciary or similar duty to any other Person or Entity, would prevent it from taking any action required of it under this Agreement.

7.07 <u>Other Representations</u>. It has sufficient knowledge and experience to evaluate the terms and conditions of the Plan and this Agreement properly and has been afforded the opportunity to consult with its legal and financial advisors with respect to its decision to execute this Agreement, and it has made its own analysis and decision to enter into this Agreement and otherwise investigated this matter to its full satisfaction.

**Section 8.** *Acknowledgement.* Notwithstanding any other provision herein, this Agreement is not and shall not be deemed to be an offer with respect to any securities or solicitation of votes for the acceptance of a plan of reorganization for purposes of sections 1125 and 1126 of the Bankruptcy Code or otherwise. Any such offer or solicitation will be made only in compliance with all applicable securities laws and provisions of the Bankruptcy Code. The Debtor will not solicit acceptances of any Plan from Hagler Parties in any manner inconsistent with the Bankruptcy Code or applicable bankruptcy law.

**Section 9.** *Cooperation and Support.*

(a) The Hagler Parties shall have a reasonable opportunity to review and comment on the Plan, Disclosure Statement and order confirming the Plan, and the Debtor shall use its best efforts to incorporate their comments.

(b) Additionally, during the Effective Period, the Debtor will use reasonable best efforts to provide draft copies of all material motions, pleadings, and documents that the Debtor intends to file with the Bankruptcy Court to counsel to the Hagler Parties at least three (3) days before the date on which Debtor intends to file such motions.

(c) The Debtor shall (i) provide to the Hagler Parties timely and reasonable responses to all reasonable diligence requests, in each case for purposes of evaluating the Debtor's assets, liabilities, operations, businesses, finances, strategies, prospects, and affairs; and (ii) promptly notify counsel to the Hagler Parties of any newly commenced material governmental or third-party litigations, investigations or hearing against the Debtor.

**Section 10.** *Termination Events.*

10.01 <u>Termination Events</u>. This Agreement may be terminated upon five (5) business days' written notice delivered in accordance with Section 15.09 hereof by the Hagler Parties, pursuant to this Section 10.01 upon the occurrence and continuation of any of the following:

(a) the failure to meet any of the Milestones unless (i) such failure

13

is the result of any act, omission, or delay on the part of the Hagler Parties in violation of their obligations under this Agreement or (ii) such Milestone is waived in accordance with Section 4;

(b)    the effective date of the Plan (the "**Plan Effective Date**") shall not have occurred on or before May 5, 2023 (the "**Outside Date**");

(c)    the occurrence of a material breach by any Party other than the Hagler Parties of this Agreement (including Section 5 above); *provided*, that the Hagler Parties shall transmit a notice to the Debtor, if such breach is capable of being cured, the breaching Party shall have five (5) business days after receiving such notice to cure any breach.

(d)    the issuance by any governmental authority, including any regulatory authority, the Bankruptcy Court, or another court of competent jurisdiction, of any injunction, judgment, decree, charge, ruling, or order that, in each case, would have the effect of preventing substantial consummation of the Restructuring Transactions; *provided*, that the Debtor shall have five (5) business days after issuance of such injunction, judgment, decree, charge, ruling, or order to obtain relief that would allow consummation of the Restructuring Transactions in a manner that (i) does not prevent or diminish in a material way compliance with the terms of this Agreement, or (ii) is acceptable to the Hagler Parties;

(e)    the (i) conversion of the Chapter 11 Case of the Debtor to a case under Chapter 7 of the Bankruptcy Code, (ii) dismissal of the Chapter 11 Case of the Debtor, unless such conversion or dismissal, as applicable, is made with the prior written consent of the Hagler Parties, or (iii) appointment of a trustee, receiver, or examiner with expanded powers beyond those set forth in Section 1106(a)(3) or (4) of the Bankruptcy Code in the Chapter 11 Case;

(f) the Debtor, without the prior consent of the Hagler Parties (i) amends, or modifies, or files a pleading seeking authority to amend or modify, the Restructuring Documents in a manner that is materially inconsistent with this Agreement, (ii) suspends or revokes the Restructuring Transactions, or (iii) publicly announces its intention to take any such action listed in Sub-Clauses (i) and (ii) of this subsection;

(g)    any of the Restructuring Documents do not comply with Section 3 of this Agreement or any other document or agreement necessary to consummate the Restructuring Transactions is not reasonably satisfactory to the Hagler Parties;

(h)    The Debtor makes any filing in support of, enters into an agreement with respect to, or announces its support for any Alternative Transaction or that it will file any plan of reorganization other than the Plan, or files any motion

14

or application seeking authority to sell any material assets (other than as provided for in the Plan), without the prior written consent of the Hagler Parties;

(i)    the Bankruptcy Court enters any order authorizing the use of cash collateral or post- petition financing that is not substantially consistent with this Agreement or otherwise consented to by the Hagler Parties.

(j)    a breach by the Debtor or any other Party of any representation, warranty, or covenant of such Debtor or other Party set forth in this Agreement that could reasonably be expected to have a material adverse impact on the consummation of the Restructuring Transactions that (to the extent curable) remains uncured for a period of five (5) business days after the receipt by the Debtor of written notice and description of such breach from any other Party;

(k)    the Debtor files a motion, application or adversary proceeding (or other Party) supports any such motion, application any such motion, application or adversary proceeding filed or commence by any third party) (i) challenging the validity, enforceability, perfection, or priority of, or seeking avoidance or subordination of, the claims or interests of 960 Franklin and/or Hagler, or (ii) asserting any other cause of action against and/or with respect or relating to such claims;

(l)    a determination is made with respect to the Debtor pursuant to Section 10.03 (b) that its continued support of the Restructuring Transactions would be inconsistent with its fiduciary obligations under applicable law;

(m)    the Debtor terminates its obligations under and in accordance with Section 10.02 of this Agreement;

(n)    the Bankruptcy Court enters an order in the Chapter 11 Cases terminating any of the Debtor's exclusive right to file a plan or plans of reorganization or to solicit acceptances thereof pursuant to section 1121 of the Bankruptcy Code; or

(o)    any of the orders confirming the Plan or approving the Disclosure Statement are reversed, stayed, dismissed, vacated, reconsidered, modified, or amended without the consent of the Hagler Parties or a motion for reconsideration, reargument, or rehearing with respect to such orders has been filed and the Debtor has failed to timely object to such motion.

10.02 <u>Debtor's Termination Events</u>. The Debtor may, provided the Debtor is not then in default of any of its obligations under this Agreement, terminate this Agreement as to all Parties upon five (5) business days prior written notice, delivered in accordance with Section 15.09 hereof, only upon the occurrence of any of the following events:

(a)      the breach by the Hagler Parties of any material provision set forth in this Agreement that remains uncured for a period of five (5) business days after the receipt by the Hagler Parties of notice of such breach; or

(b)      the issuance by any governmental authority, including any regulatory authority, the Bankruptcy Court, or another court of competent jurisdiction, of any ruling or order enjoining the consummation of a material portion of the Restructuring Transactions; *provided*, that the Debtor has made reasonable best efforts to cure, vacate, reverse, or have overruled such ruling or order prior to terminating this Agreement.

10.03  <u>Mutual Termination</u>.  This Agreement, and the obligations of all Parties hereunder, may be terminated by mutual agreement among the Debtor and the Hagler Parties.

10.04  <u>Termination Upon Completion of the Restructuring Transaction</u>. This Agreement shall terminate automatically without any further required action or notice on the Plan Effective Date, subject to Section 11 of this Agreement.

10.05  <u>Effect of Termination</u>.  (a) The earliest date on which termination of this Agreement as to a Party is effective in accordance with Sections 10.01, 10.02, 10.03, and 10.04 shall be referred to as a "**Termination Date**."

10.06  Upon the occurrence of a Termination Date as to the Debtor or 16972, this Agreement shall be of no further force and effect and each of the foregoing Parties subject to such termination shall be released from its commitments, undertakings, and agreements under this Agreement, the foregoing shall not be construed to prohibit the Debtor, 960 Franklin, Hagler or the Hagler Parties from contesting whether any such termination is in accordance with its terms or to seek enforcement of any rights under this Agreement that arose or existed before a Termination Date.  Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict any right of 960 Franklin or Hagler, or the ability of the Hagler Parties to protect and preserve their rights (including rights under this Agreement), remedies, and interests, (b) any right of the Hagler Parties or the ability of the Hagler Parties to preserve its rights (including any rights under this Agreement), remedies, and interests, including its claims against the Debtor or Isaac.  Nothing in this Section 10.06 shall restrict the Debtor's right to terminate this Agreement in accordance with Section 10.02 (b).

**Section 11.**   *Survival of Ground Lease.*  The termination of this Agreement shall not terminate the Ground Lease with FP which shall be governed exclusively by the terms of the Ground Lease.

**Section 12.**   *Fees and Expenses.* On the Effective Date of the Plan provided that the Plan contemplated by this Agreement is confirmed under 11 U.S.C.§ 1129 and

16

becomes effective, The Hagler Parties shall pay 16972 Holdings LLC on account of its Equity Interest up to the aggregate amount of $100,000 and Debtor's counsel shall receive the fees that are awarded by the Bankruptcy Court up to the aggregate amount of $50,000, provided that (i) such payments, fees, and expenses are approved by the Bankruptcy Court and (ii) the consensual Plan is confirmed, the

Confirmation Order is not appealed, and the Plan becomes effective in accordance with the terms contained in this RSA.

**Section 13.** *Releases.* The Plan will contain mutual general releases in a form satisfactory to Hagler.

**Section 14.** *Amendments. This Agreement (including the Exhibits and Schedules),* may not be modified, amended, or supplemented in any manner except in writing signed by the Hagler Parties and the Debtor. Any proposed modification, amendment, or supplement that is not approved by the requisite Parties as set forth above shall be ineffective and void *ab initio.*

**Section 15.** *Miscellaneous.*

15.01 Further Assurances. Subject to the other terms of this Agreement, the Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, or as may be required by order of the Bankruptcy Court, from time to time, to effectuate the Restructuring Transactions, as applicable.

15.02 Complete Agreement. This Agreement (including the Exhibits and Schedules) constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior negotiations, agreements, and understandings, whether oral or written, among the Parties with respect thereto.

15.03 Headings. The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

15.04 GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM; WAIVER OF TRIAL BY JURY. THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF. Each Party hereto agrees that it

shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the United States Bankruptcy Court for the Eastern District of New York or any New York state court (if the Bankruptcy Case is closed) (the "**Chosen Courts**"), and solely in connection with claims arising under this Agreement: (a) irrevocably submits to the exclusive jurisdiction of the Chosen Courts; (b) waives any objection to laying venue in any such action or proceeding in the Chosen Courts; and (c) waives any objection that the Chosen Courts are an inconvenient forum or do not have jurisdiction over any Party hereto or constitutional authority to finally adjudicate the matter.

15.05   <u>Trial by Jury Waiver</u>.   EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15.06   <u>Execution of Agreement</u>.   This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Except as expressly provided in this Agreement, each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of said Party.

15.07   <u>Interpretation and Rules of Construction</u>.   This Agreement is the product of good faith negotiations among the Debtor and the Hagler Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion thereof, shall not be effective in regard to the interpretation hereof. The Debtor and the Hagler Parties were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel. In addition, this Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

15.08   <u>Successors and Assigns</u>.   This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable. There are no third-party beneficiaries under this Agreement, and the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other person or entity.

15.09   <u>Notices</u>.   All notices hereunder shall be deemed given if in writing and delivered by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

(a)      if to a Debtor, to:

960 Franklin Owner LLC
c/o 16972 Holdings LLC
3284 N. 29th Court
Hollywood, FL 33020
Attn: David Goldwasser

with copies (which shall not constitute notice) to:

Backenroth Frankel & Krinsky LLP
800 3rd Avenue, 11th Floor.
New York, New York 10022
Attention: Mark Frankel, Esq.
mfrankel@bkflaw.com

(b)     if to Franklin Plaza II LLC, to

Franklin Plaza III LLC
309 Rutledge Street, Unit 4A
Brooklyn, New York 11211
Attn: Yitzchok Schwartz

with copies (which shall not constitute notice) to:

Jeffrey Zwick & Associates, P.C.
266 Broadway, Suite 403,
Brooklyn, New York 11211
Attn: Jeffrey Zwick, Esq.
jeffrey@jzlegal.com

(c)     if to the Hagler Parties:

Daryl Hagler
4770 White Plains Road
Bronx, New York 10470

with copies (which shall not constitute notice) to:

Leech Tishman Robinson Brog, PLLC
875 Third Avenue, 9th Floor.
New York, New York 10022
Attention: Fred B. Ringel, Esq.
fringel@leechtishman.com

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail (electronic or otherwise), or courier shall be effective when received.

15.10 <u>Independent Due Diligence and Decision-Making</u>. Each Party hereby confirms that its decision to execute this Agreement has been based upon its independent investigation of the operations, businesses, financial and other conditions, and prospects of the Debtor.

15.11 <u>Waiver</u>. If the Restructuring Transactions are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve all of their rights. Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Agreement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms, pursue the consummation of the Restructuring Transactions, or the payment of damages to which a Party may be entitled under this Agreement.

15.12 <u>Specific Performance</u>. It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

15.13 <u>Relationship Among Parties</u>. Notwithstanding anything herein to the contrary, the agreements, representations, warranties, and obligations of the Hagler Parties under this Agreement are, in all respects, several and not joint. No prior history, pattern, or practice of sharing confidences among or between the Parties shall in any way affect or negate this Agreement. The Parties hereto acknowledge that this Agreement does not constitute an agreement, arrangement, or understanding with respect to acting together for the purpose of acquiring, holding, voting, or disposing of any equity securities of the Debtor and the Hagler Parties do not constitute a "group" within the meaning of Rule 13d-5 under the Securities Exchange Act of 1934, as amended. No action taken by Hagler and/or 960 Franklin pursuant to this Agreement shall be deemed to constitute or to create a presumption by any of the Parties that Hagler and/or 960 Franklin are in any way acting in concert or as such a "group."

15.14 <u>Reservation of Rights</u>.

(a)    Except as expressly provided in this Agreement including Section 5 of this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of any Party to protect and preserve its rights, remedies and interests, including without limitation, its claims against

any of the other Parties.

(b)    Without limiting Section 10.06 and Sub-Clause (a) of this Section 15.14 in any way, if the Plan is not consummated in the manner set forth, and on the timeline set forth, in this Agreement, or if this Agreement is terminated for any reason, nothing shall be construed herein as a waiver by any Party of any or all of such Party's rights, remedies, claims, and defenses and the Parties expressly reserve any and all of their respective rights, remedies, claims, and defenses, subject to Section 15.11 of this Agreement. This Agreement, the Plan, and any related document shall in no event be construed as or be deemed to be evidence of an admission or concession on the part of any Party of any claim or fault or liability or damages whatsoever. Each of the Parties any and all wrongdoing or liability of any kind and does not concede any infirmity in the claims or defenses which it has asserted or could assert.

15.15  <u>Severability and Construction</u>. If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

15.16  <u>Remedies Cumulative</u>. All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

15.17  <u>Other Support Agreements.</u> Until a Termination Date with respect to the Debtor, the Debtor shall n o t enter into any other restructuring support agreement unless such support agreement is consistent in all respects with this Agreement and is reasonably acceptable to the Hagler Parties.

15.18  <u>Confidentiality</u>. The terms of any existing confidentiality agreements executed by and among any of the Parties as of the date hereof shall remain in full force in accordance with their terms. Except as required by applicable law, rule, or regulation or as ordered by the Bankruptcy Court or other court of competent jurisdiction, no Party or its advisors shall disclose to any person or entity (including, for the avoidance of doubt, any other Party) the holdings information of any Hagler Entity without such Hagler Entity's prior written consent.

15.19  <u>Consent Rights Preserved</u>. The entry of any order in this case shall not be deemed a waiver of such consent or approval rights of the Hagler Parties hereunder.

[signature block on next page]

21

**960 FRANKLIN OWNER LLC**
By: 16972 Holdings LLC


By:/s/   David Goldwasser
     **David Goldwasser, Authorized Signatory**


/s/      Daryl Hagler
**Daryl Hagler, individually**


 **960 FRANKLIN LLC**


By: /s/     Daryl Hagler
     **Daryl Hagler, Authorized Signatory**


*Solely with respect to sections 5.01(a),*
*5.01(b)(ii) and 5.01(b)(vii):*
Franklin Plaza II, LLC, in its capacity as
proposed tenant under the Ground Lease.


By:/s/  Yitzchok Schwartz
     **Yitzchok Schwartz, Authorized Signatory**


[RSA Signature Page]

4874-2853-0002, v. 15

**EXHIBIT TO RESTRUCTURING SUPPORT AGREEMENT**

**EXHIBIT A- 99 YEAR GROUND LEASE**

4874-2853-0002, v. 15