UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In Re:                                          Chapter 11

**960 FRANKLIN OWNER LLC,**              Case No. 22-42760 (JMM)

                        Debtor.
---------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF AMENDED JOINT PLAN OF REORGANIZATION

**Leech Tishman Robinson Brog, PLLC**
*Attorneys for Daryl Hagler and 960 Franklin LLC*
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No. 212-603-6300
**Fred B. Ringel Esq.**
**Steven B. Eichel, Esq.**

**Backenroth Frankel and Krinsky LLP**
*Attorneys for the Debtor*
800 Third Avenue, 11th Floor
New York, New York 10022
Tel. No.: 212-593-1100
**Mark Frankel, Esq.**

New York, New York
April 28, 2023

1

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................... 1

   A.   Introduction & Background Facts .................................................................. 1

   B.   Procedural Background; Solicitation and Tabulation .................................... 3

ARGUMENT .............................................................................................................. 4

   I.   THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(1) OF THE
         BANKRUPTCY CODE ................................................................................ 4

     A. The Joint Plan Complies with the Classification Requirements of Section 1122
        of the Bankruptcy Code. ............................................................................ 5

     B. The Joint Plan Complies with the Requirements Set Forth in
        Sections 1123(a)(1)-(7) of the Bankruptcy Code. ........................................ 6

     C. The Joint Plan Includes Provisions That Are Permissible Under Section 1123(b)
        of the Bankruptcy Code. ............................................................................ 9

        1. Impairment/Unimpairment of Classes of Claims Is  Consistent with
           Section 1123(b)(1) of the Bankruptcy Code. ............................................ 9

        2. The Assumption of Executory Contracts and Unexpired Leases Provided for
           Under the Joint Plan Complies with Sections 365 and 1123(b)(2) of the
           Bankruptcy Code. ................................................................................... 9

         3. The Joint Plan Includes Provisions That Provide for the Settlement or
           Judgment of Claims Belonging to the Debtor Under Section 1123(b)(3) of the
           Bankruptcy Code. ................................................................................. 10

        4. The Joint Plan Includes Provisions That Are Permissible Under Section
           1123(b)(6) of the Bankruptcy Code. ...................................................... 11

   II.  THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(2)
         OF THE BANKRUPTCY CODE. ............................................................... 12

   III.  THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(3)
         OF THE  BANKRUPTCY CODE. .............................................................. 13

   IV.  THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(4)
         OF THE BANKRUPTCY CODE. ............................................................... 15

   V.  THE PLAN COMPLIES WITH SECTION 1129(A)(5)
         OF THE BANKRUPTCY CODE. ............................................................... 16

   VI.  SECTION 1129(A)(6) OF THE BANKRUPTCY CODE IS INAPPLICABLE. .......... 16

   VII.  THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(7)
         OF THE BANKRUPTCY CODE. ............................................................... 17

i

VIII.  THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(8) OF THE BANKRUPTCY CODE. ...............................................................................17

IX.  THE PLAN COMPLIES WITH SECTION 1129(A)(9) OF THE BANKRUPTCY CODE. ...............................................................................18

X.  SECTION 1129(A)(10) OF THE  BANKRUPTCY CODE IS INAPPLICABLE. ........20

XI.  THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(11) OF THE BANKRUPTCY CODE. ...............................................................................20

XII.  THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(12) OF THE BANKRUPTCY CODE. ...............................................................................22

XIII.  SECTIONS 1129(A)(13) THROUGH (15) OF THE BANKRUPTCY CODE ARE INAPPLICABLE. ................................................................................22

XIV.  SECTION 1129(A)(16) OF THE  BANKRUPTCY CODE IS INAPPLICABLE. ........23

XV.  THE PLAN COMPLIES WITH SECTION 1129(C) OF THE  BANKRUPTCY CODE. ........................................................................................................23

XVI.  THE PLAN COMPLIES WITH SECTION 1129(D)  OF THE BANKRUPTCY CODE. ........................................................................................................24

XVII.  SECTION 1129(E) OF THE BANKRUPTCY CODE IS INAPPLICABLE. .............24

THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS OF THE PLAN SHOULD BE APPROVED ..................................................................................24

I.  DEBTOR'S RELEASES SHOULD BE APPROVED. ..............................................25

II.  THE EXCULPATORY PROVISIONS SHOULD BE APPROVED. ...........................26

III.  THE DISCHARGE AND RELATED INJUNCTIVE RELIEF SHOULD BE GRANTED. ...............................................................................................28

CONCLUSION...............................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re 123 Grand,*
Case No. 18-45824 (Bankr. E.D.N.Y. Nov. 26, 2018) .........................................................28

*In re 20 Bayard Views, LLC,*
445 B.R. 83 (Bankr. E.D.N.Y. 2011) ................................................................................19

*In re Adelphia Bus. Sol., Inc.,*
341 B.R. 415 (Bankr. S.D.N.Y. 2003) .............................................................................21

*In re Adelphia Commc'ns Corp.,*
368 B.R. 140 (Bankr. S.D.N.Y. 2007) .............................................................................26

*In re Charter Commc'ns,*
419 B.R. 221 (Bankr. S.D.N.Y. 2009) ...............................................................................4

*In re Child World, Inc.,*
147 B.R. 847 (Bankr. S.D.N.Y. 1992) .............................................................................10

*In re Ditech Holding Corp.,*
606 B.R. 544 (Bankr. S.D.N.Y. 2019) .............................................................................28

*In re Drexel Burnham Lambert Grp.,*
138 B.R. 714 (Bankr. S.D.N.Y. 1992) ..........................................................................5, 17

*In re Drexel Burnham Lambert Grp.,*
960 F.2d 285 (2d Cir. 1992) ............................................................................................27

*In re Granite Broad. Corp.,*
369 B.R. 120 (Bankr. S.D.N.Y. 2007) .............................................................................13

*In re Johns-Manville Corp.,*
68 B.R. 618 (Bankr. S.D.N.Y. 1986) ..........................................................................12, 21

*Kane v. Johns-Manville Corp.(In re Johns-Manville Corp.),*
843 F.2d 636 (2d Cir. 1988) ............................................................................................13

*In re Koelbl,*
751 F.2d 137 (2d Cir. 1984) ............................................................................................14

*MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville) (Manville I),*
837 F.2d 89 (2d Cir. 1988) ..............................................................................................26

*In re Madison 92nd St. Assocs. LLC,*
472 B.R. 189 (Bankr. S.D.N.Y. 2012) .............................................................................17

iii

*In re Oneida Ltd.*,
  351 B.R. 79 (Bankr. S.D.N.Y. 2006) ................................................................. 13

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000) ............................................................................ 27

*In re PWS Holding Corp.*,
  303 F.3d 308 (3d Cir. 2002), *cert. denied*, 538 U.S. 924 (2003) ........................................ 25

*Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*,
  68 F.3d 26 (2d Cir. 1995) ................................................................................ 25

*In re Resorts Int'l, Inc.*,
  145 B.R. 412 (Bankr. D.N.J. 1990) .................................................................... 13

*In re Sun Country Dev., Inc.*,
  764 F.2d 406 (5th Cir. 1985) ........................................................................... 13

*In re Texaco, Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y. 1988) ............................................................. 5, 13

*In re The Leslie Fay Cos.*,
  207 B.R. 764 (Bankr. S.D.N.Y. 1997) ............................................................. 13

*Toy & Sports Warehouse*,
  37 B.R. ....................................................................................................... 17

*United States v. Energy Res. Co.*,
  495 U.S. 545 (1990) ....................................................................................... 21

*Universal Oil Ltd. v. Allfirst Bank (In re Millennium Seacarriers, Inc.)*,
  419 F.3d 83 (2d Cir. 2005) .............................................................................. 11

*In re Veteran Holdings NY LLC*,
  Case No. 22-40052 (Bankr. E.D.N.Y. Feb. 25, 2022) .......................................... 28

*In re WorldCom, Inc.*,
  No. 02-13533, 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ................................. 15

*In re Young Broad., Inc.*,
  430 B.R. 99 (Bankr. S.D.N.Y. 2010) ............................................................... 21

iv

## PRELIMINARY STATEMENT

### A.    Introduction & Background Facts

1.    960 Franklin Owner LLC, 960 Franklin LLC, and Daryl Hagler (together, "Plan Proponents"), submit this Memorandum of Law ("Memorandum") in support of confirmation of the *Amended Joint Plan of Reorganization Proposed by the Plan Proponents* dated April 4, 2023, [ECF Doc. No. 39] (as it has been amended by ECF Doc. No. 50, "Joint Plan"),[1] pursuant to section 1129 of title 11 of the United States Code ("Bankruptcy Code").  In further support of confirmation of the Joint Plan, Debtor will be filing the Declaration of David Goldwasser in Support of Confirmation of the Joint Plan ("Goldwasser Decl."), which is incorporated herein by reference.

2.    The Joint Plan incorporates the terms of the Amended and Restated Restructuring Support Agreement.  The Amended and Restated Restructuring Support Agreement, which terms are incorporated in the Plan, resolves the several disputes between the parties through the mutual releases executed pursuant to the Plan and pursuant to which the Hagler parties have agreed to provide up to $150,000 to fund the Plan. It also calls for the irrevocable appointment of a Plan Administrator by the estate (with the Hagler Parties consent)[2] to serve Debtor's sole authorized agent with respect to exercising the rights as owner of the Debtor's 51% membership

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Joint Plan.
[2] The parties have agreed to appoint William Henrich, principal of Getzler Henrich as Plan Administrator.

1

interests in 960 Franklin.   Under the Amended and Restated Restructuring Support Agreement and the Joint Plan, the Plan Administrator will be empowered on behalf of the Debtor to approve of and  consent, to (i) the execution by 960 Franklin of a post-confirmation 99-year ground lease with Franklin Plaza II LLC ("Ground Lease") with respect to the Debtor's 51% interest and Franklin 960's 49% interest, (ii) authorizing the encumbering of  the Ground Lease with a Leasehold Mortgage (which shall be exempt from mortgage recording tax), (iii) the encumbering of the Property by a mortgage under the Plan, and (iv) the subsequent transfer or sale of the Property subject to the Ground Lease pursuant to the Plan.

3.      Upon entry of the Confirmation Order, the Debtor's beneficial 51% membership interest in 960 Franklin shall be irrevocably assigned to the Plan Administrator and held by the Plan Administrator for the purposes of selling or assigning the interest at Hagler's direction.

4.      In return, the Hagler Parties will fund payment of the General Unsecured Claims up to $124,000.[3]   The Plan Administrator will also use the $150,000 Plan Fund to pay 16792 Holdings $100,000, and the Debtor's counsel up to $50,000, provided that (i) with respect to Debtor's counsel fees and expenses, such fees and expenses are approved by the Bankruptcy Court, and (ii) the Joint Plan is confirmed.

5.      This Memorandum, the Goldwasser Declaration, the Disclosure

---

[3] While the Hagler Parties have agreed to fund the unsecured claims distribution, the Hagler Parties believe that the limited number of unsecured creditors scheduled by the Debtor will either waive distribution on their claims or acknowledge the claims were paid before the petition was filed.

4888-7791-2409, v. 16

Statement, and any additional evidence presented or testimony that may be adduced at the Confirmation Hearing (i) demonstrate that the Joint Plan complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules for the Eastern District of New York and (ii) provide the legal and evidentiary basis necessary for this Bankruptcy Court to confirm the Joint Plan pursuant to section 1129 of the Bankruptcy Code.

### B.    Procedural Background; Solicitation and Tabulation

6.      On March 14, 2023, the Plan Proponents moved for entry of an Order (I) Preliminarily Approving Joint Disclosure Statement and (II) Scheduling Hearing on the Joint Motion for an Order Approving Joint Disclosure Statement and Confirming Joint Plan of Reorganization [ECF Doc. No. 33].   On March 17, 2023, the Bankruptcy Court entered the Order Preliminarily Approving Joint Disclosure Statement, (II) Scheduling Hearing on Final Approval of the Joint Disclosure Statement and Confirming Joint Plan, and (III) Granting Related Relief [ECF Doc. No. 34] ("Scheduling Order").

7.      The Scheduling Order set April 14, 2023 as the date to consider the Plan Proponents' request for final approval of the Disclosure Statement and for confirmation of the Joint Plan ("Confirmation Hearing"), and (ii) fixed April 10, 2023 as the date which any objections to final approval of the Disclosure Statement and the Joint Plan were to be filed and served ("Objection Deadline").[4]

---

[4] The Plan Proponents received two objections to confirmation of the Joint Plan.  The first objection, filed by New York City, has been resolved with revisions to the Joint Plan, and New York City will be withdrawing its objection.  The Plan Proponents have filed a separate response to the objection filed by Haim Kahan as ECF Doc. No. 53.

8.    In accordance with the Scheduling Order, and as evidenced by the Certificates of Service filed with the Bankruptcy Court [ECF Doc. No. 37], on March 17, 2023, the Disclosure Statement, the Joint Plan, and the Scheduling Order, were served on all holders of Claims and Interests, and other parties in interest.

9.    As discussed in this Memorandum, (i) the Disclosure Statement contains adequate information as that term is defined in Section 1125 of the Disclosure Statement and should be approved on a final basis, and (ii) the Joint Plan clearly satisfies each of the requirements for confirmation set forth in the Bankruptcy Code.  The Joint Plan has been proposed in good faith, is feasible, serves the best interests of the Debtor's estate and its creditors, and is fair and equitable. Accordingly, Debtor respectfully submits that the Court should confirm the Plan.

## ARGUMENT

10.    To obtain confirmation of the Joint Plan, the Debtor must establish by a preponderance of the evidence that the Joint Plan satisfies the requirements set forth under section 1129 of the Bankruptcy Code. *See, e.g.*, *In re Charter Commc'ns*, 419 B.R. 221, 243 (Bankr. S.D.N.Y. 2009) (plan proponent bears burden of establishing compliance with factors set forth in section 1129 by a preponderance of evidence).  The Plan Proponents respectfully submit that the Joint Plan complies with, and satisfies, each of the applicable provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence, and thus should be confirmed.

## I.    THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(1) OF THE BANKRUPTCY CODE.

11.    Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must

4

"compl[y] with the applicable provisions of [the Bankruptcy Code]." In determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization. *In re Texaco, Inc.,* 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988).

12. As demonstrated below, the Joint Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code.

## A. The Joint Plan Complies with the Classification Requirements of Section 1122 of the Bankruptcy Code.

13. Under section 1122(a) of the Bankruptcy Code, "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." "Substantially similar" has been interpreted to mean similar in legal character to other claims against a debtor's assets or to other interests in a debtor. *See In re Drexel Burnham Lambert Grp.*, 138 B.R. 714, 715-16 (Bankr. S.D.N.Y. 1992).

14. The Joint Plan properly classifies all Claims and interests as required under section 1122(a) of the Bankruptcy Code. Under the Joint Plan, each Class of Claims contains only such Claims as are substantially similar to the other Claims within such Class. Specifically, the Joint Plan separately designates Classes and interests as follows: Class 1 (Priority Claim); Class 2 (Hagler Secured Claim); Class 3 (General Unsecured Claims); and Class 4 (Equity Interests). (*See* Plan §§ 3 & 4.)

15. Valid business, factual, and legal reasons exist for separately classifying the various Claims and Interests under the Joint Plan, and such Classes and interests do not unfairly discriminate among holders of Claims or prejudice the rights

of holders of such Claims.  For example, the Joint Plan separately classifies Classes 1, 2, 3, and 4. This separate classification is driven by legitimate factual and legal reasons. The Class 2 Hagler Secured Claim is based on the Agreement pursuant to which Hagler was entitled to be paid $53,500,000 for the assignment of Hagler's 49% interest and the assignment of the 51% interest it had previously received and Hagler's claim is secured as he was always in possession of the 49% interest which was perfected by such possession. Accordingly, Hagler's claims are for the purchase price owed under such agreement and were secured by Hagler's possession of the 49% membership interests. In addition, Hagler is entitled to an equitable mortgage on such unpaid for interests. Additionally, unsecured claims, which are for services rendered in connection with the acquisition of the membership interests and for which there was no security are separately classified from Hagler's secured claim and the equity interests.

16.    The classification of Claims in the Joint Plan is reasonable and necessary to implement the Joint Plan and satisfies the requirements of section 1122 of the Bankruptcy Code.

**B.    The Joint Plan Complies with the Requirements Set Forth in Sections 1123(a)(1)-(7) of the Bankruptcy Code.**

17.    Section 1123(a) of the Bankruptcy Code sets forth seven provisions that every chapter 11 plan must contain.  As described below, the Joint Plan fully complies with each requirement.

18.    Section 1123(a)(1) of the Bankruptcy Code requires the Joint Plan to designate Classes of Claims and equity interests subject to section 1122 of the

Bankruptcy Code.  As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Expense Claims, Fee Claims, Priority Tax Claims, and statutory fees (including all United States Trustee quarterly fees), which need not be classified, Section 3 of the Joint Plan designates three Classes of Claims and one Class of Interests.

19.    Section 1123(a)(2) of the Bankruptcy Code requires the Joint Plan to specify which Classes of Claims or equity interests are unimpaired under the Joint Plan. Sections 3 and 4 of the Joint Plan specify that Allowed Claims in Classes 1, 2 and 3 and Allowed Interests in Class 4 are unimpaired by the Joint Plan, thereby satisfying the requirements of section 1123(a)(2) of the Bankruptcy Code.

20.    Section 1123(a)(3) of the Bankruptcy Code requires that the Joint Plan specify how Impaired Classes of Claims or equity interests will be treated under the Joint Plan.  No Class of Claims or Interests is impaired under the Joint Plan.  (*See* Plan §§ 3 and 4)  Thus, section 1129(a)(3) does not apply.

21.    Section 1123(a)(4) of the Bankruptcy Code requires that the Joint Plan provide the same treatment for each Claim or equity interest against Debtor within a particular Class unless such Claim holder agrees to receive less favorable treatment than other Class members. The Joint Plan complies with this requirement, as it provides for the same treatment for each Claim against the Debtor in each respective Class unless the holder of a particular Claim has agreed to less favorable treatment on account of such Claim, thereby satisfying the requirements of section 1123(a)(4) of the Bankruptcy Code.

22.     Section 1123(a)(5) of the Bankruptcy Code requires that a chapter 11 plan provide adequate means for its implementation.  The implementation of the Joint Plan is based on the irrevocable appointment of a Plan Administrator who shall be empowered on behalf of the Debtor, under the Debtor's confirmed Plan, to perform under the Amended and Restated Restructuring Support Agreement and in turn pay the holders of Allowed Class 3 General Unsecured Claims in full with interest.  The Hagler Parties have provided the Plan Administrator with sufficient funds to pay the Allowed Class 3 General Unsecured Claims.

23.     The Plan Administrator shall use the $150,000 Plan Fund to pay 16792 Holdings LLC $100,000 and Debtor's counsel up to the aggregate amount of $50,000, provided that (i) with respect to Debtor's counsel's fees and expenses, such fees and expenses are approved by the Bankruptcy Court and (ii) the consensual Plan is confirmed.

24.     Accordingly, the Joint Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

25.     Section 1123(a)(6) of the Bankruptcy Code requires the plan of a corporate debtor to provide that the debtor's charter prohibits the issuance of nonvoting equity securities and, as to the Classes of securities possessing voting power, provide an appropriate distribution of such power among such Classes.  No equity securities will be issued under the Joint Plan.  Thus, section 1123(a)(6) of the Bankruptcy Code is not applicable in this case.

26.     Lastly, section 1123(a)(7) of the Bankruptcy Code provides that chapter

11 plans must set forth provisions for the selection of officers and directors for the reorganized entities consistent with the interests of creditors and equity security holders and with public policy. Consistent with section 1123(a)(7), Section 6.1 of the Joint Plan provides that Debtor shall continue in existence post-Confirmation as the Post-Effective Date Debtor and be managed by the Plan Administrator. Thus, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

27. Based on all of the foregoing, the Joint Plan complies with the requirements of sections 1123(a)(1)-(7) of the Bankruptcy Code.

## C. The Joint Plan Includes Provisions That Are Permissible Under Section 1123(b) of the Bankruptcy Code.

28. Section 1123(b) of the Bankruptcy Code sets forth provisions that may be incorporated into a chapter 11 plan, and each non-mandatory provision of the Joint Plan is consistent with section 1123(b) of the Bankruptcy Code.

### 1. Impairment/Unimpairment of Classes of Claims Is Consistent with Section 1123(b)(1) of the Bankruptcy Code.

29. Section 1123(b)(1) of the Bankruptcy Code provides that a plan may impair or leave Unimpaired any Class of Claims. Sections 3 and 4 of the Joint Plan lists Classes 1, 2, 3 and 4 as unimpaired, and is therefore consistent with section 1123(b)(1) of the Bankruptcy Code.

### 2. The Assumption of Executory Contracts and Unexpired Leases Provided for Under the Joint Plan Complies with Sections 365 and 1123(b)(2) of the Bankruptcy Code.

30. Section 1123(b)(2) of the Bankruptcy Code provides that a plan may "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." Under

9

section 365 of the Bankruptcy Code, a debtor may assume an executory contract or unexpired lease if (i) outstanding defaults under the contract or lease have been or will promptly be cured under section 365(b)(1) of the Bankruptcy Code and (ii) the debtor's decision to assume such executory contract or unexpired lease is supported by a valid business justification. *See In re Child World, Inc.*, 147 B.R. 847, 850 (Bankr. S.D.N.Y. 1992) ("The standard to be applied [when evaluating the assumption and/or rejection of an executory contract] hinges on the exercise of the debtor's business judgment.").

31.    In accordance with Section 1123(b)(2) of the Bankruptcy Code, Section 9 of the Joint Plan provides that on the Effective Date, the Debtor shall be authorized to reject all Executory Contracts and Unexpired Leases, if any, not previously rejected or assumed, other than the 99-year Ground Lease, which is a post-petition lease which requires the Plan to be confirmed for it to become effective.

32.    Rejection of the Executory Contract and Unexpired Leases, if any, is based upon and within the Debtor's sound business judgment and reflects Debtor's consideration and recognition of its need to reject Executory Contract and Unexpired Leases in order to implement the Joint Plan and is therefore in the best interests of Debtor and its estate.

33.    Accordingly, the Joint Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

3.    The Joint Plan Includes Provisions That Provide for the Settlement or Judgment of Claims Belonging to the Debtor

Under Section 1123(b)(3) of the Bankruptcy Code.

34.    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Joint Plan seeks approval of the Amended and Restated Restructuring Support Agreement.    Amended and Restated Restructuring Support Agreement constitutes a good faith compromise and settlement of all Claims or controversies between the Plan Proponents and such compromise is fair equitable, and reasonable, and in the bets interests of the Debtor, its estate, its creditors and all parties in interest.

4.    The Joint Plan Includes Provisions That Are Permissible Under Section 1123(b)(6) of the Bankruptcy Code.

35.    Section 1123(b)(6) of the Bankruptcy Code is a catchall provision which permits inclusion of any appropriate provision as long as it is consistent with applicable provisions of the Bankruptcy Code.   For example, Section 12 of the Joint Plan provides that, among other things, the Bankruptcy Court shall retain jurisdiction as to all matters involving the Joint Plan and the Claims allowance and distribution process.   Case law establishes that a bankruptcy court may retain jurisdiction over the debtor or the property of the estate following confirmation. *See Universal Oil Ltd. v. Allfirst Bank (In re Millennium Seacarriers, Inc.)*, 419 F.3d 83, 96 (2d Cir. 2005) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.") (quotation and citation omitted).   Accordingly, the continuing jurisdiction of the Bankruptcy Court is consistent with applicable law and therefore permissible under section 1123(b)(6) of the Bankruptcy Code.

36.    In addition, in accordance with section 1123(b)(6) of the Bankruptcy Code, the injunction, limitation of liability, and release provisions in sections 11.6,

11.7 and 11.8 of the Joint Plan are fair and reasonably given for valuable consideration, are necessary, and are in the best interests of Debtor and its estate.

37.     Additionally, the Joint Plan (as amended) is dated April 4, 2023, and identifies the entities that submitted the Joint Plan, in compliance with Bankruptcy Rule 3016(a).

38.     Based upon the foregoing, the Joint Plan fully complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code and, thus, satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

## II.    THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(2) OF THE BANKRUPTCY CODE.

39.     Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]." The legislative history provides that section 1129(a)(2) is intended to encompass the disclosure and solicitation requirements contained in sections 1125 and 1126 of the Bankruptcy Code. *See In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986).

40.     The Scheduling Order preliminarily approved the Disclosure Statement. The Joint Plan, the Disclosure Statement, and the Scheduling Order were provided by overnight mail to all Debtor's creditors, interest holders, and other interested parties in this case.

41.     Debtor has complied with all orders of the Bankruptcy Code.

12

### III. THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(3) OF THE BANKRUPTCY CODE.

42.    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed 'in good faith and not by any means forbidden by law.'" *Kane v. Johns-Manville Corp.(In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988).  Courts in the Second Circuit have found that the good faith standard requires "a showing that 'the plan [was] proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected.'" *In re Granite Broad. Corp.*, 369 B.R. 120, 128 (Bankr. S.D.N.Y. 2007) (citation omitted).

43.    "Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985).  "[A] plan is considered proposed in good faith 'if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'" *Texaco*, 84 B.R. at 907 (citation omitted).  Although the Bankruptcy Code does not define good faith, "bad faith has been defined as 'the opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not promoted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.'" *In re The Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Resorts Int'l, Inc.*, 145 B.R. 412, 469 (Bankr. D.N.J. 1990)).

44.    Additionally, good faith is to be determined in light of the totality of the circumstances surrounding formulation of the plan.  *See In re Oneida Ltd.*, 351 B.R.

13

79, 85 (Bankr. S.D.N.Y. 2006) ("Good faith should be evaluated 'in light of the totality of the circumstances surrounding confirmation.'").

45.    Here, the record in this case is clear that the Plan Proponents have met their good faith obligation under the Bankruptcy Code.  The Plan Proponents have proposed and negotiated the Joint Plan, Amended and Restated Restructuring Support Agreement, and related documents in good faith and not by any means forbidden by law.  They seek confirmation of the Joint Plan for the purpose of accomplishing the transactions contained in Amended and Restated Restructuring Support Agreement, maximizing value for its estate, and expeditiously distributing such value to its creditors set forth in the Joint Plan.

46.    The Joint Plan and related documents are the result of arm's length negotiations among the Plan Proponents, and their respective advisors and counsel, leading to the Joint Plan's formulation.  Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, the Joint Plan is designed to allow Debtor to satisfy its obligations to the extent possible in accordance with the Bankruptcy Code's priority scheme.  Moreover, the sufficiency of disclosure and the arm's length negotiations leading to the formulation of the Joint Plan provide independent evidence of the Plan Proponents' good faith in proposing the Joint Plan.  The second prong of section 1129(a)(3) of the Bankruptcy Code requires that the plan not contravene any applicable non-bankruptcy law.  *See In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984).  The Plan Proponents believe that the provisions of the Joint Plan are consistent with applicable non-bankruptcy law.

14

47.    Accordingly, the Joint Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

## IV.    THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(4) OF THE BANKRUPTCY CODE.

48.    Section 1129(a)(4) of the Bankruptcy Code requires that payments for services or for costs and expenses in or in connection with a chapter 11 case, or in connection with the plan and incident to the case, have either been approved, or are subject to approval, by the Bankruptcy Court as reasonable.  See *In re WorldCom, Inc.*, No. 02-13533, 2003 WL 23861928, at *54 (Bankr. S.D.N.Y. Oct. 31, 2003).

49.    In essence, any and all fees promised or received in connection with or in contemplation of a chapter 11 case must be disclosed and approved or be subject to approval.  *See WorldCom, Inc.*, 2003 WL 23861928, at *54.

50.    Section 12 of the Joint Plan provides for the retention of jurisdiction by the Bankruptcy Court to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date.  In addition, Section 2.2 of the Joint Plan establishes that all Professionals shall file final applications for professional fees with the Bankruptcy Court no later than thirty (30) days after the Effective Date.  Payments to all professionals will be subject to review and approval by the Bankruptcy Court upon final application under applicable provisions of the Bankruptcy Code.

51.    Such typical procedures, which provide the Bankruptcy Court with an opportunity to review and ultimately determine the reasonableness of fees and

expenses incurred prior to the Confirmation Date, satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code.

## V.    THE PLAN COMPLIES WITH SECTION 1129(A)(5) OF THE BANKRUPTCY CODE.

52.    Section 1129(a)(5) of the Bankruptcy Code requires that: (i) the plan proponent disclose the identity and affiliations of the proposed officers, directors or trustees of the reorganized debtor or any successor to the original debtor; (ii) the appointment of such officers, directors and trustees be consistent with the interests of creditors and equity security holders and with public policy; and (iii) the plan proponent disclose the identity and compensation of any insiders to be retained or employed by the reorganized debtor.

53.    As discussed above, Section 6.1 of the Joint Plan provides that Debtor shall continue in existence post-Confirmation as the Post-Effective Date Debtor and be managed by the Plan Administrator.

54.    Based on the foregoing, the Joint Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

## VI.    SECTION 1129(A)(6) OF THE BANKRUPTCY CODE IS INAPPLICABLE.

55.    Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its business approve any rate change provided for in the plan.  The Plan does not provide for any changes in the rates that require regulatory approval by any governmental agency.  Therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable to the Joint Plan.

16

## VII.    THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(7) OF THE BANKRUPTCY CODE.

56.    Section 1129(a)(7) of the Bankruptcy Code, known as the "best interests" test, requires that each holder of a claim or interest in an impaired class either (a) accept the plan or (b) receive or retain property of a value, as of the effective date of the plan, not less than what such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on that date.  *See In re Madison 92nd St. Assocs. LLC*, 472 B.R. 189, 200 (Bankr. S.D.N.Y. 2012).  "The best interests test focuses on individual creditors rather than classes of claims."  *In re Drexel Burnham Lambert Grp.*, 138 B.R. at 761; *see also Toy & Sports Warehouse*, 37 B.R. at 150.

57.    The best interests test is applicable to holders of Claims under the Joint Plan that are Impaired and that have not accepted the Joint Plan.  As there are no impaired Classes of Claims or Interests under the Joint Plan as the Joint Plan provides for payment in full to Allowed Claims in Classes 1, 2 and 3, the best interests test does not apply to these Classes of Claims.

58.    Accordingly, the Debtor believes that the Joint Plan provides creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation.  Therefore, the Joint Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

## VIII.    THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(8) OF THE BANKRUPTCY CODE.

59.    Section 1129(a)(8) requires that each Class of impaired Claims or

impaired equity interests has either accepted the Joint Plan or is not impaired under the Joint Plan.

60.     Classes 1, 2, 3, and 4 are unimpaired by the Joint Plan, and accordingly, holders of Claims and Interests in these Classes are either conclusively presumed to have accepted the Joint Plan pursuant to section 1126(f) of the Bankruptcy Code or have accepted the Joint Plan pursuant to the Amended and Restated Restructuring Support Agreement. Thus, as to Classes 1, 2, 3, and 4, section 1129(a)(8) of the Bankruptcy Code has been satisfied.

## IX.     THE PLAN COMPLIES WITH SECTION 1129(A)(9) OF THE BANKRUPTCY CODE.

61.     The Joint Plan complies with section 1129(a)(9) of the Bankruptcy Code. Specifically, section 1129(a)(9) requires that a plan provide for persons holding allowed claims entitled to priority under section 507(a) to receive specified cash payments under the plan, unless the holder of a particular claim agrees to a different treatment with respect to such claim.  11 U.S.C. § 1129(a)(9).  Consistent with section 1129(a)(9) of the Bankruptcy Code, the Joint Plan provides for, among other things, the payment in full of certain expenses of administering Debtor's estate and other Claims entitled to statutory priority, each subject to the provisions of the Joint Plan with respect to Disputed Claims.

62.     Pursuant to Section 2.1 of the Joint Plan, in connection with Priority Claims and Administrative Expense Claims, except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtor, the Hagler Parties or Plan Administrator, as applicable, agree to different treatment, the Plan Administrator

18

shall pay to each holder of an Allowed Administrative Expense Claim, Cash in an amount equal to such Claim (plus statutory interest on such claim, if applicable), on or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date and (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; provided that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor or Plan Administrator, shall be paid by the Debtor or Plan Administrator, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions. *See* Plan § 2.1; *see also, e.g., In re 20 Bayard Views, LLC,* 445 B.R. 83, 99 (Bankr. E.D.N.Y. 2011) (holding that the debtors had established by a preponderance of the evidence that the plan met the requirements of section 1129(a)(9) because the plan provided that the administrative claims would be paid in full "on (i) the [e]ffective date or (ii) the [d]istribution [d]ate immediately following the date on which the [a]dministrative [c]laim becomes [allowed].").

63.    Moreover, the Joint Plan provides that holders of Allowed Priority Claims shall be paid in Cash in full on the Effective Date.  However, no Priority Claims have been filed against the estate and the bar date has already passed. Thus, no Allowed Priority Claims exist that need to be paid under the Joint Plan.

64.    Furthermore, Section 2.3 of the Joint Plan provides that, except to the

19

extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the election of the Hagler Parties or Plan Administrator, as applicable, (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date, the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and the date such Allowed Priority Tax Claim is due and payable in the ordinary course. *See* Plan § 2.3.

65.     Based upon the foregoing, the Joint Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

## X.     <u>SECTION 1129(A)(10) OF THE BANKRUPTCY CODE IS INAPPLICABLE.</u>

66.     Section 1129(a)(10) of the Bankruptcy Code requires that at least one impaired Class of Claims, excluding acceptances of insiders, accept the Joint Plan. No Classes of Claims or interests are impaired by the Joint Plan and thus no Class of Claims or interests were solicited to vote on the Joint Plan.  Because there are no impaired Classes of Claims or Interests, all Classes of Claims or Interests are deemed to have accepted the Joint Plan or have accepted pursuant to the Amended and Restated Restructuring Support Agreement.

67.     Thus, Section 1129(a)(10) is not applicable.

## XI.     <u>THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(11)</u><br><u>OF THE BANKRUPTCY CODE.</u>

68.     Section 1129(a)(11) of the Bankruptcy Code requires a finding that the Joint Plan is feasible. Specifically, the Bankruptcy Court must determine that:

> [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1123(a)(11).  As described below, and in the Goldwasser Declaration and in the Disclosure Statement, the Joint Plan is feasible.

69.    The feasibility test requires the Bankruptcy Court to make an independent determination as to whether the Joint Plan is workable and has a reasonable likelihood of success.  *See United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *Johns-Manville Corp.*, 68 B.R. at 635.  The purpose of the feasibility test is to protect against visionary or speculative plans.  It does not require certainty of success.   *See In re Adelphia Bus. Sol., Inc.*, 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003) ("In making determinations as to feasibility . . . a bankruptcy court does not need to know to a certainty, or even a substantial probability, that the plan will succeed.  All it needs to know is that the plan has a reasonable likelihood of success.").

70.    In determining feasibility, courts consider (i) the adequacy of the capital structure; (ii) the earning power of the business; (iii) economic conditions; (iv) the ability of management; (v) the probability of the continuation of the same management; and (vi) any other related matters which will determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.  *See, e.g.*, *In re Young Broad., Inc.,* 430 B.R. 99, 129 (Bankr. S.D.N.Y. 2010).

71.    Here, the Joint Plan has more than a reasonable likelihood of success and thus is feasible.  The Joint Plan is funded by a cash contribution of up to $124,000 from the Hagler Parties.  Moreover, the Plan Administrator shall use the

21

$150,000 Plan Fund to pay 16792 Holdings LLC's $100,000 and the debtor's counsel up to the aggregate amount of $50,000, provided that (i) such payment, fees and expenses are approved by the Bankruptcy Court, and (ii) the Joint Plan is confirmed.

72.      Based upon the foregoing, there is more than a reasonable likelihood that Debtor will be able to consummate the Joint Plan, and that confirmation of the Joint Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor.   Therefore, the Joint Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

## XII.    THE JOINT PLAN COMPLIES WITH SECTION 1129(A)(12) OF THE BANKRUPTCY CODE.

73.      Section 13.1 of the Joint Plan provides that all fees and charges assessed under 28 U.S.C. § 1930 and accrued interest thereon shall be paid in cash in full as required by statute until the earlier of closing, conversion or dismissal of the bankruptcy case.   Accordingly, the Joint Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

## XIII.   SECTIONS 1129(A)(13) THROUGH (15) OF THE BANKRUPTCY CODE ARE INAPPLICABLE.

74.      Section 1129(a)(13) of the Bankruptcy Code states that a plan shall provide for the "continuation after its effective date of payment of all retiree benefits . . . for the duration of the period the debtor has obligated itself to provide such benefits."    There are no existing retiree benefits that require funding by the Reorganized Debtor.    Accordingly, section 1129(a)(13) of the Bankruptcy Code is

22

inapplicable in this Chapter 11 case.

75.     Section 1129(a)(14) of the Bankruptcy Code addresses domestic support obligations of a debtor.  Debtor is not required by a judicial or administrative order, or by statute, to pay any domestic support obligations.

76.     Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

77.     Section 1129(a)(15) of the Bankruptcy Code pertains to cases in which the debtor is an individual.  Debtor is not an individual.  Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in this Chapter 11 case.

## XIV.   SECTION 1129(A)(16) OF THE BANKRUPTCY CODE IS INAPPLICABLE.

78.     Section 1129(a)(16) of the Bankruptcy Code provides that applicable non-bankruptcy law will govern all transfers of property under a plan to be made by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust."  Section 1129(a)(16) does not apply in this case.

## XV.    THE PLAN COMPLIES WITH SECTION 1129(C) OF THE BANKRUPTCY CODE.

79.     Section 1129(c) of the Bankruptcy Code provides that the Bankruptcy Court may confirm only one plan.  Because no other chapter 11 plan of reorganization has been confirmed or proposed in this Chapter 11 case, and indeed the current Joint Plan is the only chapter 11 plan presently scheduled for confirmation, the Joint Plan

23

does not violate the requirements of section 1129(c) of the Bankruptcy Code.

## XVI.    THE PLAN COMPLIES WITH SECTION 1129(D) OF THE BANKRUPTCY CODE.

80.    Section 1129(d) of the Bankruptcy Code states that "…on request of a party in interest that is a governmental unit, a court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933." The record in this case is clear that the principal purpose of the Joint Plan is not the avoidance of taxes or the avoidance of the requirements of section 5 of the Securities Act of 1933.

81.    The Amended and Restated Restructuring Support Agreement, which forms the basis of the Joint Plan, was the result of significant negotiations between the Debtor and the Hagler Parties.  The transactions contemplated by the Amended and Restated Restructuring Support Agreement and Joint Plan and are necessary for the consummation of the Joint Plan and the Plan Proponents requests that the Confirmation Order contain such a finding. In addition, there is no request by a governmental unit for such a finding.

## XVII.    SECTION 1129(E) OF THE BANKRUPTCY CODE IS INAPPLICABLE.

82.    Section 1129(e) of the Bankruptcy Code is applicable to small business cases.  This Chapter 11 case is not a small business case, as that term is defined in the Bankruptcy Code, nor is Debtor a small business debtor.  Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

## THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS OF THE PLAN SHOULD BE APPROVED

83.     Sections 11.6, 11.7 and 11.8 of the Joint Plan set forth the Joint Plan's injunction, limitation of liability and release provisions.  As discussed below, these provisions are fair and reasonable, and each provision is integral to the Joint Plan and necessary to its implementation.  These provisions are well within the parameters of applicable Second Circuit precedent and should be approved.

## I.    <u>DEBTOR'S RELEASES SHOULD BE APPROVED.</u>

84.     Claims held by a debtor against third parties are property of the estate which may be released by a debtor if the decision to release such claims is within Debtor's reasonable business judgment. *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 33 (2d Cir. 1995).

85.     Debtor may settle and release its own claims against third parties. *See* 11 U.S.C. §1123(b)(3)(A).  Further, a debtor may release claims that could be asserted on its behalf, or that are derivative of its rights.  Claims subject to release, therefore, encompass all claims belonging to an estate or that may be brought by a debtor, including shareholder or creditor derivative actions, fraudulent conveyance claims, preference actions, and other similar types of actions subject to settlement by the debtor. *See, e.g., In re PWS Holding Corp.*, 303 F.3d 308, 315 (3d Cir. 2002), *cert. denied*, 538 U.S. 924 (2003).

86.     A plan that proposes to release a debtor's claim is considered a "settlement" for purposes of satisfying section 1123(b)(3)(A) of the Bankruptcy Code. *In re Best Prods. Co.*, 68 F.3d 26, 33 (2d Cir. 1995) (the release and injunction provisions of the plan were deemed submitted for approval of the court pursuant to

25

section 1123(b)(3)(A) and Bankruptcy Rule 9019(a)). When considering releases by a debtor of non-debtor third parties pursuant to Section 1123(b)(3)(A), the appropriate standard is whether the release is a valid exercise of the debtor's business judgment and is fair, reasonable, and in the best interests of the estate. Claims held by a debtor against third parties are property of the estate and may be released in exchange for settlement. *See* 11 U.S.C. § 541(a)(1); *see also MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville) (Manville I),* 837 F.2d 89, 91-92 (2d Cir. 1988). Debtor has "considerable leeway in issuing releases" of its own claims, and such releases are considered "uncontroversial." *See In re Adelphia Commc'ns Corp.,* 368 B.R. 140, 263 n.289 (Bankr. S.D.N.Y. 2007). Here, proceeds from the Amended and Restated Restructuring Support agreement will be used in part to satisfy Allowed Claims pursuant to the Joint Plan. The Administrative Expenses are paid by the Plan Fund. Therefore, the Debtor is resolving any existing potential Claims pursuant to the Joint Plan.

## II. THE EXCULPATORY PROVISIONS SHOULD BE APPROVED.

87. Section 11.7 of the Joint Plan (the "Exculpation") provides that none of the Exculpated Parties nor any of their respective officers, directors or employees (acting in such capacity), nor any professionals employed by them shall have or incur any liability related to actions taken or omitted to be taken in connection with the Chapter 11 case. The Exculpation (i) does not apply to fraud, willful misconduct, gross negligence, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or other *ultra vires* acts, and (ii)

26

does not limit the liability of professionals of Debtor/ Reorganized Debtor pursuant to Rule 1.8(h)(1) of the New York State Rule of Professional Conduct.

88.    As recognized by the Second Circuit, where a debtor's plan of reorganization requires the settlement of numerous, complex issues, protection of third parties against legal exposure may be a key component of the settlement. *See In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 293 (2d Cir. 1992). Furthermore, the Exculpation is appropriately limited to a qualified immunity for acts of negligence but does not relieve any party of liability for gross negligence, willful misconduct, or fraud. *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (similar exculpation provision reflecting Bankruptcy Code's limitation of liability did not violate third party release prohibition of section 524(e)).

89.    The Plan provides a customary exculpation for the Exculpated Parties, which includes Debtor, the Seller and the Purchaser, and Debtor's present officers, directors, employees, and any professionals retained by them. (*See* Plan § 11.7.)

90.    The Exculpation is appropriately tailored to protect the Exculpated Parties from inappropriate litigation and does not relieve any party of liability for gross negligence, willful misconduct, or fraud. (*See* Plan § 11.7.) Such exculpatory provisions are typical in consensual chapter 11 plans and should be approved here. During this Chapter 11 case, the Exculpated Parties have contributed substantial value to Debtor, the management of this case, and the negotiation and formulation of the Joint Plan. The Exculpated Parties' efforts in negotiating and ultimately formulating the Joint Plan enabled Debtor to file and hopefully obtain confirmation

27

of the Joint Plan and provide a 100% recovery to holders of General Unsecured Claims. As noted above, the Joint Plan's implementation was negotiated by the key constituencies.

91.    Here, the scope of the Exculpation, the composition of the Exculpated Parties, and the role that those parties played in this Chapter 11 case, are entirely consistent with the exculpations routinely approved in this District. See, e.g., *In re Veteran Holdings NY LLC*, Case No. 22-40052 (Bankr. E.D.N.Y. Feb. 25, 2022) (ECF Doc. No. 56); *In re 123 Grand*, Case No. 18-45824 (Bankr. E.D.N.Y. Nov. 26, 2018) (ECF Doc. No. 31); *In re Ditech Holding Corp.*, 606 B.R. 544 (Bankr. S.D.N.Y. 2019).

92.    Accordingly, the Exculpation should be approved.

## III.    THE DISCHARGE AND RELATED INJUNCTIVE RELIEF SHOULD BE GRANTED.

93.    Sections 1141 and 524 of the Bankruptcy Code grant a chapter 11 debtor a discharge of all Claims. Section 11.5 of the Joint Plan provides for a comprehensive discharge and injunction. These provisions are necessary to implement the Joint Plan, allowing the Debtor to reorganize and to continue to exist as the Post-Effective Date Debtor unencumbered by its pre-petition debts. The discharge and injunction are tailored, however, to the limits of section 1141 of the Bankruptcy Code. Accordingly, because they are reasonable, necessary, and customary, such provisions should be approved.

## CONCLUSION

For the reasons set forth herein, Debtor respectfully requests that this Court approve the Disclosure Statement on a final basis and enter the Confirmation Order, substantially in the form filed prior to the Confirmation Hearing, confirming

the Joint Plan and granting such other and further relief as may be just and proper

under the circumstances.

 Dated:  New York, New York
         April 28, 2023

                                        Respectfully Submitted

                                        **LEECH TISHMAN ROBINSON BROG,
                                        PLLC**

                                        By:  /s/ Fred B. Ringel
                                              Fred B. Ringel
                                              Steven B. Eichel

                                        875 Third Avenue, 9th Floor
                                        New York, New York 10022
                                        Telephone: (212) 603-6300
                                        Facsimile: (212) 956-2164
                                        *Counsel to 960 Franklin LLC and Daryl
                                        Hagler*

                                        **BACKENROTH FRANKEL & KRINSKY
                                        LLP**

                                        By: /s/ Mark Frankel
                                             Mark Frankel, Esq.

                                        488 Madison Avenue, Floor 23
                                        New York, New York 10022
                                        Tel. No.: 212-593-1100
                                        *Attorneys for the Debtor*