LEECH TISHMAN
ROBINSON BROG, PLLC
875 Third Avenue
New York, New York 10022
Fred B. Ringel, Esq.
Steven Eichel, Esq.
Clement Yee, Esq.
*Attorneys for Daryl Hagler and 960 Franklin LLC*

Hearing Date: May 3, 2023
Hearing Time: 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re:

960 FRANKLIN OWNER LLC,

Debtor.
--------------------------------------------------------X

Chapter 11

Case No: 22-42760 (JMM)

# PLAN PROPONENT'S RESPONSE TO KAHAN'S RESERVATION OF RIGHTS AND OBJECTION TO APPROVAL/CONFIRMATION AMENDED JOINT DISCLOSURE STATEMENT AND JOINT PLAN OF REORGANIZATION

TO THE HON. JIL MAZER-MARINO
UNITED STATED BANKRUPTCY JUDGE:

960 Franklin Owner LLC, 960 Franklin LLC ("960 Franklin"), and Daryl Hagler (together, "Plan Proponents"), by their attorneys Leech Tishman Robinson Brog, PLLC and Backenroth Frankel & Krinsky, LLP submit this response[1] ("Response") to Haim Kahan's Reservation of Rights and Objection to Approval/Confirmation of Amended Joint Disclosure Statement and Joint Plan of

[1] The City of New York previously filed an objection on behalf of the Department of Finance. ECF Doc. No. 41. That objection has been resolved by amendments to the Plan, being filed contemporaneously with this response, and as a result, the City will withdraw its objection.

Reorganization ("Kahan Objection"). In support of its Response, the Plan Proponents respectfully sets forth and alleges as follows:

## Preliminary Statement

1. The Kahan Objection is a last ditch "hail mary" objection by a stranger to this chapter 11 case who has potential claims against another stranger to the proceeding, Cheskie Weiz ("Weisz"). This fact was made clear in the Kahan Objection, where Kahan recounts his involvement with Weisz who he claims an oral understanding for a proposed partnership between Weisz and Kahan to allegedly buy a controlling membership interest in 960 Franklin. At the time, 960 Franklin was in contract to purchase premises designated as Block 1192, Lots 41 and 46 and Block 1192, Lot 40, in Kings County, New York ("Property"). Objection at ¶8-10.

2. Kahan claims Weisz induced him to provide $4,500,000 for Weisz to use in conjunction with his purchase of a 49% membership interest in 960 Franklin[2]. *Id.* When Kahan realized Weisz was a "flipper," Kahan claims the non-disclosure constituted a fraud by Weisz on Kahan.

3. What is notable about Kahan's story is that there is no allegation that 960 Franklin Owner LLC, the Debtor in this chapter 11 case, did anything to Kahan, much less defraud him. When Kahan had an opportunity to assert a claim against the Debtor, after receiving notice of the bar date, he failed to file a claim

[2] A copy of the Agreement of Sale of Membership Interests ("Sale Agreement") between Daryl Hagler and 960 Franklin Owner LLC date August 10, 2022 is attached hereto as **Exhibit A**. The Sale Agreement was for a purchase of membership interests in an entity that had a contract to acquire the underlying properties.

against the Debtor or its estate. Similarly, Kahan also fails to allege that 960 Franklin, or the owner of the membership interests at issue, Daryl Hagler ("Hagler"), made any representations to Kahan or had any involvement with Kahan at any time. Tellingly, there is no written agreement between Kahan and the Debtor, or between Kahan and 960 Franklin or between Kahan and Hagler.

4. Although Kahan has no claim against the Property, since Weisz, at best, was in contract to buy a 49% membership interest in 960 Franklin and not the Property, and Kahan is in privity only with Weisz individually, not the Debtor, 960 Franklin or Hagler. Kahan filed a baseless *lis pendens* against 960 Franklin's Property to attempt to leverage his weak claims against Weisz and cloud title on the Property, so presumably, he could extract some "hold-up" value from the Debtor and not have to go against the alleged defrauder, Weisz, the only party he was involved with.[3]

Background Facts:

5. The Debtor is a New York limited liability company, which was recently formed on July 11, 2022.

6. On July 11, 2022, Hagler formed 960 Franklin as a single purpose entity and was the sole owner of 100% of the issued and outstanding membership interests ("Membership Interests") in 960 Franklin.

6. Subsequently, 960 Franklin entered into two contracts, as

[3] Weisz never paid for the 51% interest the Debtor purported to acquire or the 49% membership interest held by Hagler. Neither Kahan nor Weisz have ever paid the purchase price for the membership interests the Debtor had contracted with Hagler to acquire, which was $53,500,000.

amended, for the purchase of the following two properties:

A. Premises 1 - Block 1192, Lots 41 and 46: 960 Franklin executed a contract of sale dated July 19, 2022, as amended by First Amended to Contract of Sale on or about August 9, 2022 (as amended, "Contract 1") with HPG Associates, Inc. ("Underlying Seller 1"), whereby 960 Franklin had the right to purchase the premises designated as Block 1192, Lots 41 and 46, in Kings County, New York ("Premises 1"); and

B. Premises 2 - Block 1192, Lot 40: 960 Franklin executed a contract of sale dated July 19, 2022, as amended by First Amendment to Contract of Sale dated on or about August 9, 2022 (as amended, "Contract 2", together with Contract 1, collectively referred to herein as the "Contracts") with Brooklyn 122A Montgomery LLC ("Underlying Seller 2", together with Underlying Seller 1, collectively referred to herein as the "Underlying Sellers"), whereby 960 Franklin had the right to purchase the premises designated as block 1192, Lot 40, in Kings County, New York ("Premises 2").

7. On August 10, 2022, Hagler, as assignor ("Assignor")[4], and the Debtor, as assignee ("Assignee"), entered into the Sale Agreement pursuant to which Assignee was to acquire from Assignor all his right, title and interest in the Membership Interests in 960 Franklin on the terms set forth in the Sale Agreement. The parties also entered into an Assignment and Assumption of Membership Interest Agreement ("Assignment Agreement")[5], pursuant to which Hagler (as Assignor), agreed to convey to the Debtor, as Assignee, 51% of the Membership Interests in 960 Franklin on the Effective Date of the Assignment Agreement

8. However, as plainly and expressly set forth in Section 3(B) of the Sale Agreement, the Sale Agreement was subject to Section 3(B) -- as was subsequently

[4] The Assignment Agreement refers to Hagler as Assignor and the Debtor 960 Franklin Owner LLC as Assignee. A copy of the Assignment Agreement is attached as **Exhibit B**.

amended by agreement between counsel for the Assignor and Assignee. Section 3(B) provided, in relevant part that "as a material inducement for Assignor to enter into this [Sale] Agreement, Assignee shall wire $10,000,000.00 to Escrowee on or before November 1, 2022, to be held in escrow and applied toward the balance of the Purchase Price at Closing. . . In the event Assignee fails or refuses to wire such additional $10,000,000.00 to Escrowee on or before November 1, 2022, Assignee shall be deemed to have defaulted, Assignor's Reversionary Right shall be deemed exercised, Assignee shall have no further right in the Membership Interests, any prior assignment of the Membership Interests shall be deemed null and void. . ." Sale Agreement at ¶3(B)(emphasis added). When the Debtor did not wire the funds on November 1, 2022, counsel for the Assignor and the Debtor exchanged a series of email which unequivocally established new contractual deadline ("November 1st Extension Agreement") for the $10 million payment, extending the time for performance from a date certain, November 1, 2022, to a **time certain**, 11:00 a.m. on November 2, 2022, with 11:00 a.m. payments being a time of the essence ("TOE") obligation of the Debtor.

9. In addition, upon the execution of the Sale Agreement on August 10, 2022, Weisz cause $4,500,000 to be wired to Hagler's attorneys at Abrams Fensterman to be held in escrow in accordance with the Sale Agreement. There was no indication that the $4,500,000 wire had any association with Kahan. It was wired by an entity and the Debtor understood that Weisz indicated he caused the

funds to be sent on behalf of 960 Franklin Owner LLC.[6]

10. When the Debtor failed to make the payment on November 2, 2022 and instead by sending an email stating that the closing would not take place, 960 Franklin contended that the Sale Agreement between the Assignor and the Debtor was at an end after the 11:01 a.m. TOE deadline for the payment had passed and that the Debtor's as a consequence of the default in failing to make the payment, the automatic, self-executing exercise of the Reversionary Right transferring the 51% of 960 Franklin back to the Assignor and the automatic voiding of the Debtor's interest was self-executing and had occurred. The Debtor, 960 Franklin Owner disputed this contention, and resolving this dispute is the centerpiece of the Plan.

<u>Kahan Is Not a Creditor of the Estate and Has No Standing to Object</u>

11. Kahan chose not to file a claim in this bankruptcy case and thus is not treated as a creditor under the Plan. ,Similarly, he also did not have any claims against 960 Franklin's real property. At best, he could only have a claim against Weisz, the person he dealt with and was in privity with. Still, Kahan has objected to confirmation masquerading as a party in interest in this case asserting objections that do not impact him, since he holds no claims here. Kahan asserts, however, that (i) the Disclosure Statement[7] does not contain adequate information and should not

[6] As evidence of this fact, on November 18, 2022, the Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs. In Schedule A/B, the Debtor scheduled as an asset its a 51% membership interest in 960 Franklin LLC and a deposit of $4,500,000 under the Sale Contract asserting the $4,500,000 was property of the Debtor's estate. This claim is also resolved by the Plan.

[7] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Joint Plan.

be finally approved and (ii) the Joint Plan, which pays all creditors in full and in cash, is not feasible.[8]

12. Neither objection has any merit. Although the *Kahan v. 960 Franklin* state court litigation, pending in the Supreme Court of the State of New York, County of Kings, Index No. 536153/2022 ("Kahan Litigation"), was mentioned at page 47 of the original Disclosure Statement, the Plan Proponents have revised Disclosure Statement to include additional disclosures taken directly from the Kahan Objection to the Kahan Litigation, and thus Kahan's Disclosure Statement objection is moot. *See* Disclosure Statement (ECF Doc. 51) at p. 47-48.

13. Of more significance, Kahan asserts that the Joint Plan is not feasible because it depends on the Plan Administrator's authority to sell or otherwise dispose of the Property and the Debtor's disputed membership interest without regard to Kahan's claimed interest in the Property. Kahan Objection at ¶26. There is no valid basis for this objection.

14. Section 1129(a)(11), known as the Code's "feasibility" requirement, provides that, as a prerequisite to confirmation, the bankruptcy court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed by the plan.

[8] The Kahan Objection also claims that it reached out to Plan Proponents' counsel regarding its objection. However, neither counsel to the Plan Proponents received any communication from Kahan's counsel, by phone or by email.

15. Feasibility is a relatively low threshold. *See In re Sagewood Manor Assocs., Ltd. P'ship*, 223 B.R. 756, 762 (Bankr. D. Nev. 1998) ("only 'a relatively low threshold of proof [is] necessary to satisfy the feasibility requirement'") (quoting *Berkeley Fed. Bank & Tr. v. Sea Garden Motel & Apts. (In re Sea Garden Motel & Apts.)*, 195 B.R. 294, 305 (D.N.J. 1996)); *In re Applied Safety, Inc.*, 200 B.R. 576, 584 (Bankr. E.D. Pa. 1996) (noting that feasibility requirement is not generally viewed as rigorous). In essence, a court must analyze a proposed plan carefully to determine whether it has a reasonable likelihood of success, whether it has the necessary cash resources for payment due at confirmation and for future operations, and whether projections support the debtor's plan obligations. Success, however, need not be guaranteed. *See In re Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed.").

16. Here, the immediate cash needed to fund the Joint Plan consists of $205,000[9] which must be made available to pay Debtor's counsel, its unsecured creditors and its equity holder. These funds will be deposited into Leech Tishman's IOLA account before commencement of the Confirmation Hearing and transferred to the Plan Administrator upon his appointment post-confirmation. This satisfies any feasibility concern.

17. Importantly, Kahan in his state law action asserts claims only against 960 Franklin – not the Debtor. The allegations in his complaint cement the fact

---

[9] It is 960 Franklin's understanding that two of the three creditors scheduled as unsecured creditors by the Debtor have waived their claims and the filed waivers are on the ECF docket.

that there is no privity or relationship between Kahan and 960 Franklin. Kahan fails to assert claims in his complaint against the Debtor or against Cheskie Weisz, the person who allegedly defrauded him. Further, Kahan's failure to file a proof of claim in the Debtor's bankruptcy case, even though he was given notice of the bar date order, is substantial evidences a lack of standing . See Affidavit of Service (ECF No. 21), attached as **Exhibit C**. As a result, he has no claim against the Debtor or its property, including the Debtor's membership interest in 960 Franklin, let alone a basis to object to the irrevocable assignment of the Debtor's 51% membership interest in 960 Franklin to the Plan Administrator, or the Plan Administrator's subsequent sale or transfer of that 51% membership interest to either (i) Hagler or his designee or (ii) a third-party purchaser.

18. Moreover, the Plan Administrator, on behalf of the Debtor, may sell the Debtor's membership interests free and clear of liens or interests if they are in bona fide dispute under section 363(f)(4) of the Bankruptcy Code.[10] "The court is not required to resolve the underlying dispute as a condition to authorizing the sale under this provision, but must determine that it exists." A. Resnick & H. Sommer, *Collier on Bankruptcy*, at ¶363.06[5] at p. 363-55 (16th ed.). For example, in *In Balco Equities LTD, Inc.*, the chapter 7 trustee was authorized to sell property free and clear of all liens, claims, and encumbrances, despite allegations that the property was fraudulently conveyed and a counterclaim against the debtor that

[10] The Plan Proponents assert that, even if there was a dispute, Kahan's dispute is against the property of 960 Franklin and not the Debtor's property. Nevertheless, even if there was a dispute against the Debtor's property, they can still be sold free and clear of all liens, claims, and encumbrances pursuant to section 363(f)(4) of the Bankruptcy Code.

there was a constructive trust on the property. 323 B.R. 85, 91-92 (Bankr. S.D.N.Y. 2005). The bankruptcy court found that because the constructive trust was the subject of a "bona fide dispute" the property could be sold free and clear of "constructive trust claims or equitable lines so long as they attach to the proceeds of sale"). *Id.* at 92 (citations omitted); *see also In re Eastman Kodak Co.*, 2012 WL 2255719 at *3 (Bankr. S.D.N.Y. June 15, 2012) (determining ownership prior to sale is "inconsistent with the plain meaning of § 363(f)(4) of the Bankruptcy Code, which permits a sale free and clear of a third party's interest in property if the interest is in bona fide dispute").

19. In addition, as there is no writing and thus no enforceable lien or interest, a sale may be made free and clear of Kahan's purported lien or interest to the extent he could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest under section 363(f)(5) of the Bankruptcy Code.

20. Thus, as stated in the complaint, Kahan's only claims are against 960 Franklin – not the Debtor – and there is no basis in the Kahan Objection to prevent the Plan Administrator from performing his duties under the Joint Plan.

21. As discussed above, the only claims set forth in the complaint are against 960 Franklin for (i) unjust enrichment/quantum meruit for "using Plaintiff's funds to purchase the Property", (ii) conversion of "Plaintiff's assets by failing to return the Deposit to Plaintiff, failing to allow Plaintiff to purchase the Property, and …. using the Deposit to purchase the Property", (iii) an equitable lien or mortgage "on the Property for the full amount of the Deposit", (iv) a constructive

trust in the assets of the of the defendants, including ownership of the Property, (v) a declaratory judgment "ordering and adjudicating that [Plaintiff] is the owner of the Property", and (vi) a permanent injunction enjoining 960 Franklin "from exercising any management over the Property or selling, conveying, mortgaging or encumbering the Property." *See* Complaint at ¶¶ 18,25,29,35,40 and 45.

22. None of these allegations are a basis to prevent confirmation of the Joint Plan for lack of feasibility because they all lack merit. For example, there is no basis for the causes of action for unjust enrichment and conversion and both causes of action are refuted by the Sale Agreement and Assignment Agreement. Kahan neither provided a reason why 960 Franklin's retention of the deposit was wrongful nor alleged any misconduct on its part. Moreover, the Sale Agreement specifically provides that if Weisz's entity fails to wire the $10 million on or before November 1st, it is deemed to have defaulted.

23. Moreover, Kahan's claim for unjust enrichment fails because (i) there was nothing unjust about Hagler or 960 Franklin retaining the deposit that they were contractually entitled to and which was not paid by Kahan but was paid by the Debtor, 960 Franklin Owner LLC , (ii) there is no allegation of privity between Kahan and 960 Franklin or that it has any notice that Kahan wired the funds to 960 Franklin on his own behalf, rather than on behalf of the 960 Franklin Owner LLC entity[11], and (iii) the unjust enrichment claim is based on same facts and seeks same damages and is thus duplicative.

---

[11] Or that notice, if it had been given, would have changed Hagler or 960 Franklin's rights to retain the funds.

24. There is also no basis for conversion because 960 Franklin did not possess the funds without authority as its actions were authorized under the Sale Agreement.

25. Since Kahan had no agreement with 960 Franklin that provides him with a right or interest in the Property, his claim of an equitable lien is frivolous. Similarly, there is no basis for him to claim a constructive trust because (i) there is no allegation of a fiduciary or confidential relationship with 960 Franklin, (ii) there is no allegation that 960 Franklin promised Kahan anything or that Kahn relied on such a promise, and (iii) the Debtor was not unjustly enriched. Thus, Kahan failed to allege any of the elements of a constructive trust. As to his claim for a constructive trust against the "ownership of the Property" (Complaint at ¶35), the claim fails because he does not allege and cannot demonstrate that he held an interest in the subject property before it was transferred in reliance on a promise.

26. Kahan also failed to state a claim for a declaratory judgment and a permanent injunction. Because Kahan does not even allege that he was a party to any contract by which he acquired an interest in the Property, he cannot be entitled to a declaration that he is the owner of the Property. Accordingly, Kahan cannot be irreparably harmed if he cannot take control and ownership of the property.

27. Furthermore, Kahan's claims cannot support the filing of a Notice of Pendency because the filing is based on his claims for "an equitable lien and constructive trust"', both of which have no merit for the reasons discussed above. [12]

[12] Hagler and 960 Franklin reserve all there rights to assert claims against Kahan for, inter alia, slander or title for the wrongly filed lis pendens.

Without any alleged contractual privity with 960 Franklin or the sellers, or any alleged promise by those entities which could support claims to the Property, Kahan's Notice of Pendency lacks any basis in law or fact. Moreover, even if the basis of his claim is based on his alleged proposed partnership with Weisz, the claim fails because (i) Kahan lacks standing to enforce the Sale Agreement because he was not a party to it, (ii) the Weisz entity failed to pay the $10,000,000 and no longer has right to acquire an interest in 960 Franklin, and (iii) a party's claim that it is entitled to an ownership of a membership interest in an entity which owns real property does not affect title to the real property, and thus cannot support the filing of a notice of pendency.

28. A fuller explanation of the above arguments on why all these claims lack merit is set forth in 960 Franklin's Memorandum of Law in Support of Motion to Dismiss the Verified Complaint, Cancel the Notice of Pendency and Sanction Plaintiff, filed on February 10, 2023 in the Kahan Litigation, which is incorporated by refence and a copy of which is **Exhibit D**.

29. Finally, in addition to the above, the complaint fails to allege that there is an instrument in writing showing an ownership in the Property. Without such a writing, Kahan cannot claim an ownership in the Property as it would violate the statute of frauds.

30. Ultimately, the Kahan Objection lacks standing to object to confirmation of the Joint Plan let alone assert that the Joint Plan is not feasible.

Accordingly, the Kahan Objection should be overruled, and the Disclosure Statement should be approved on a final basis and the Joint Plan confirmed.

**WHEREFORE**, the Plan Proponents submit that the Kahan Objection should overruled in its entirety and that the Disclosure Statement be approved on a final basis and the Joint Plan confirmed and for such other relief as the Court deems just and proper.

Dated: New York, New York
April 28, 2023

LEECH TISHMAN
ROBINSON BROG, PLLC
*Counsel to Daryl Hagler and 960 Franklin LLC*
875 Third Avenue, 9th Floor
New York, New York 10022
Tel: No.: 212-603-6300

By: /s/ Fred B. Ringel
Fred B. Ringel